UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TONEY ANTHONEY WHITE,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CLARK NEVADA et al.,<br><br>Defendants. | Case No. 2:16-cv-00734-RFB-VCF<br><br>SCREENING ORDER ON<br>THIRD AMENDED COMPLAINT<br>(ECF No. 38) |

Plaintiff, who is a pretrial detainee in the custody of the Clark County Detention Center ("CCDC"), has submitted a third amended civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 38). Plaintiff has paid the filing fee in full. (ECF No. 27). The Court now screens Plaintiff's third amended civil rights complaint pursuant to 28 U.S.C. § 1915A.

## I.  SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

(1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF THIRD AMENDED COMPLAINT

In the third amended complaint ("TAC"), Plaintiff sues multiple defendants for events that took place while Plaintiff was a pretrial detainee incarcerated at the Henderson Detention Center ("HDC") and Clark County Detention Center ("CCDC"). (ECF No. 38 at 5, 8). Plaintiff sues Defendants County of Clark County Nevada ("COCN"), Naphcare, City of Henderson ("COHN"), Henderson Police Department ("HPD"), Henderson Detention Center Medical Administration ("HDCMA"), City of Las Vegas ("CLV"), Las Vegas Metropolitan Police Department ("LVMPD"), Joseph Lombardo, Patrick Moers, H. Coker, Delacruz, D. Hardin, M. Smith, M. Hogan, V. Goins, L. Williamson, F. Cadet, C. Smith, John Gregg, Pollard, Acevedo, J. Chavez, R. Robinson, Ryan Adams, Anthony Niswonger, Arthur (last name unknown), Ashley (last name

unknown), and M. Alvarado.[1]  (*Id.* at 3-4).  Plaintiff alleges seven counts and seeks monetary damages and declaratory judgment.  (*Id.* at 33, 36).

The TAC alleges the following:  Before September 3, 2015, Plaintiff suffered from dual addictions, epilepsy, valley fever, hearing impairments, partial paralysis/immobility of the left wrist, and mental health issues.  (*Id.* at 4).  On September 3, 2015, Plaintiff was in a motor vehicle accident that caused Plaintiff to suffer from chronic head, spine, and neck injury, post-traumatic stress disorder, chronic debilitating pain, and mental illness.  (*Id.*)  Without his prescription glasses, Plaintiff suffered from blurred vision and severe headaches when he tried to read or write.  (*Id.*)  Between September 3, 2015 and January 22, 2016, Plaintiff received ongoing treatment and pain management from several doctors and received prescription glasses.  (*Id.* at 5).  Plaintiff also had used a medically-necessary left hand brace for over ten years.  (*Id.*)

On January 22, 2016, Plaintiff was "subject to arrest by" COCN, COHN, HPD, CLV, LVMPD, Moers, and Lombardo.  (*Id.*).  Officer Gregg transported Plaintiff to the HDC.  (*Id.*)  After his arrest, Adams, Gregg, and Niswonger switched Plaintiff's handcuffs from LVMPD to HPD.  (*Id.*)  Adams and Niswonger directed Gregg to seize Plaintiff's hand brace.  (*Id.*)

At HDC, Plaintiff underwent a medical screening by HDCMA.  (*Id.*)  During the screening, Plaintiff reported that he had a seizure disorder, drug and nicotine withdrawal, valley fever, PTSD, paranoid schizophrenia, a hearing impairment, left hand/wrist immobility, severe head, neck, and back injury, chronic debilitating pain, and mental health concerns.  (*Id.*)  Plaintiff also stated that he needed his left wrist brace and his prescription eyeglasses.  (*Id.*)  Plaintiff identified his current prescriptions and provided a list of his prescribing pharmacies.  (*Id.* at 6).

COCN, HDCMA, and Moers had a no narcotic policy and, thus, HDCMA Does refused to honor Plaintiff's pre-arrest prescriptions.  (*Id.*)  This caused Plaintiff to suffer from "disabling/excruciating pains," drug withdrawal, and sleep deprivation for 12 days.

---

[1]  The Court uses the same abbreviations that Plaintiff uses in his TAC.

- 4 -

(*Id.*). Jail officials deprived Plaintiff of his wrist brace and seizure medication. (*Id.* at 7). As a result, Plaintiff had two seizures between January 27 and January 30, 2016. (*Id.*) During the second seizure, Plaintiff suffered a partial stroke. (*Id.*) M. Smith and Acevedo deprived Plaintiff of his seizure medication even though Plaintiff had informed them of his need for it. (*Id.*)

Without legitimate cause, Chavez and Robinson, under the orders of Adams and Niswonger, put Plaintiff in punitive segregation after booking. (*Id.*) Plaintiff stayed there for 12 days. (*Id.*) On January 27, 2016, Niswonger and Adams sought to interview Plaintiff. (*Id.*) Prior to being interviewed, Plaintiff asked for his prescription glasses because the strain in his eyes caused him to have headaches. (*Id.*) Plaintiff also asked for his wrist brace. (*Id.*) Niswonger and Adams refused the requests. (*Id.*)

Plaintiff complained to M. Smith and Acevedo about his medical needs. (*Id.*) HDCMA Does only gave Plaintiff ibuprofen and failed to address Plaintiff's need for his brace and prescription eyeglasses. (*Id.*)

On February 3, 2016, HPD officials transported Plaintiff into the custody of COCN, Naphcare staff, CLV, LVMPD, Lombardo, Coker, Delacruz, Hogan, Goins, Williamson, Cadet, and C. Smith. (*Id.*) At CCDC, Plaintiff reported all of his medical needs to Naphcare Does and requested a lower bunk accommodation. (*Id.* at 8). Based on a no narcotic policy, Williamson and Naphcare Does prescribed Plaintiff ibuprofen even though they knew it was ineffective. (*Id.*)

At the approval of COCN, CLV, Naphcare Does, LVMPD, and Lombardo's policy, jail officials assigned Plaintiff a hard cell furnished with concrete slabs and hard wood benches despite Plaintiff's substantial head, spine, and neck injuries. (*Id.*) Jail officials did not provide Plaintiff with any bedding, including a mattress, and kept Plaintiff in the hard cell for three days. (*Id.* at 8-9). These conditions aggravated Plaintiff's head, spine, and neck injuries. (*Id.* at 8).

Doe jail officials denied Plaintiff's request for grievances and writing instruments and told Plaintiff to wait until he moved upstairs. (*Id.* at 9). On February 6, 2016, jail

1  officials rehoused Plaintiff but did not give him his left hand brace, eye glasses, or any
2  pain management. (*Id.*)

3  Jail officials assigned Plaintiff an upper bunk. (*Id.*) On February 10, 2016, Plaintiff
4  had a seizure. (*Id.*) Williamson refused to provide Plaintiff with adequate pain
5  management. (*Id.*) Coker, Hogan, Delacruz, Goins, Cadet and C. Smith refused to move
6  Plaintiff to a lower bunk. (*Id.*)

7  Prior to April 20, 2016, C. Smith assigned Plaintiff to an upper bunk even though
8  Plaintiff was a seizure patient. (*Id.* at 10). Plaintiff made several requests to be moved
9  to a lower bunk but Lombardo, Coker, Delacruz, Hogan, Goins, Williamson, Cadet, and
10 C. Smith refused to move Plaintiff and told Plaintiff that inmates could not choose housing
11 because housing was based on the needs of the facility. (*Id.*)

12 On April 20, 2016, Plaintiff attempted to climb onto his upper bunk using his
13 mobility-impaired-left-hand and his right hand. (*Id.*) While attempting to climb, Plaintiff
14 retracted his left hand due to the pain and fell, struck his head, lost consciousness, and
15 sustained injuries to his head, back, neck, wrist, and left shoulder. (*Id.*) Plaintiff's cell
16 mate attempted to summon Hogan three times over the emergency light but Hogan had
17 turned off the light in order to train cadets. (*Id.*)

18 On April 21, 2016, Plaintiff suffered from a "terrifying asthma attack" and had
19 activated his emergency call light. (*Id.*) Goins responded and found Plaintiff in distress.
20 (*Id.*) Goins called the on-duty nurse at 1:05 a.m. (*Id.*) That nurse stated that she did not
21 have an order for an inhaler for Plaintiff and would ask Williamson the next day. (*Id.*)
22 Plaintiff panicked and fell unconscious from the inability to breath. (*Id.*)

23 On April 22, 2016, Williamson met with Plaintiff. (*Id.*) At the meeting, Plaintiff tried
24 to discuss all of his injuries and medical issues but Williamson told Plaintiff that he was
25 only there to discuss the asthma issue. (*Id.*) Williamson told Plaintiff to submit a medical
26 request. (*Id.*) Although Plaintiff submitted the request, Williamson did not treat Plaintiff's
27 injuries. (*Id.*)

28 Between April 20, 2016 and May 10, 2016, COCN, Naphcare, LVMPD, Coker,

Hogan, Goins, Williamson, and C. Smith knew about the dangers associated with housing a seizure patient on a top bunk. (*Id.* at 11). Williamson told Plaintiff that "this is jail and that's the luck of the draw." (*Id.*) On May 10, 2016, Plaintiff had a seizure on the top bunk. (*Id.*) On May 12, 2016, Plaintiff informed Naphcare Does that he was in "paralyzing pain and agony," that his valley fever had progressed due to a lack of medicine, that he had had a seizure two days before, and had suffered injuries. (*Id.*) Naphcare Does responded that Plaintiff had seen a physician on February 9, 2016, February 15, 2016, April 7, 2016, and April 22, 2016, that he had no history of the disease, and that he should fill out a form identifying the clinic or doctor who had diagnosed the condition. (*Id.*) On May 13, 2016, Plaintiff submitted another medical request and stated that he needed to see a doctor and get an MRI for new injuries to his back, head, and neck. (*Id.* at 11-12). Naphcare Does responded that "medications [had been] ordered for above medical issue," "continue current treatment," and "activity as tolerated." (*Id.* at 12).

On May 23, 2016, Plaintiff told Williamson that he had disabilities of "seizure disorder, left wrist condition, and neck and back." (*Id.*) Williamson rejected these conditions as disabilities. (*Id.*) Plaintiff asked Williamson to reinstate his pre-jail pain management plan and medication as prescribed by Plaintiff's specialists. (*Id.*) Williamson told Plaintiff, "medically this is my jail what I say goes. The hell with your specialists' orders, they don't work here." (*Id.*) In response to Plaintiff's seizure disorder and top bunk assignment, Williamson told Plaintiff that it was between Plaintiff and custody and that if he had "pissed them off, live with it." (*Id.*)

On May 23, 2016, Plaintiff asked Hogan to move him to a lower bunk but Hogan said no. (*Id.*) On May 24, 2016, Cadet also refused to move Plaintiff to a lower bunk. (*Id.* at 13). Cadet took Plaintiff's legal materials because Plaintiff and his fiancé, Amanda Sexton, had been attempting to assist each other and litigate together. (*Id.*) Cadet told Plaintiff to stop attempting to litigate together or "things would certainly get ugly." (*Id.*) Cadet would not give Plaintiff back his legal materials. (*Id.*)

On May 24, 2016, Plaintiff told Hogan that he was experiencing auras which were

an early indication of an on-coming seizure. (*Id.*) Plaintiff asked Hogan to assign him to a lower bunk to "no avail." (*Id.*) White suffered another seizure on the upper bunk. (*Id.*) Due to verbalizing the early indicators, Plaintiff's cell mate successfully prevented Plaintiff from falling off the upper bunk. (*Id.*) Nonetheless, Plaintiff split his head on the steel ledge and badly bit his lip and tongue. (*Id.*) Plaintiff filed a medical request that night and listed his injuries. (*Id.*) Jail officials responded to him 10 days later, on June 3, 2016, and told him to file a grievance. (*Id.*) Nobody provided him care for his injuries. (*Id.*) On June 1, 2016, Nurse Arthur looked at Plaintiff's healing injuries and "fraudulently claimed not to observe any injuries." (*Id.*)

On June 3, 2016, Plaintiff mailed his second amended complaint to this Court. (*Id.*) On June 6-7, 2016, Plaintiff asked Doe officer to move him to a lower bunk due to his seizure condition. (*Id.* at 14). Doe officer responded, "I ain't moving shit." (*Id.*) Plaintiff told Doe officer of his intent to include Doe officer as a defendant in Plaintiff's ongoing civil rights lawsuit. (*Id.*) Doe officer stated, "I don't give a fuck" and put Plaintiff "on a 24." (*Id.*) A "24" was a lockdown in a cell for 24 hours. (*Id.*) Doe officer returned to Plaintiff's cell and told Plaintiff to sit at a table, called Plaintiff a "little bitch," and stated, "what you gonna do punk, come on give me a reason." (*Id.*) Before leaving the cell, Doe officer slapped the left side of Plaintiff's face and caused further injury to Plaintiff's neck. (*Id.*) Plaintiff informed Lombardo of the force but Lombardo failed to reply. (*Id.*)

On June 30, 2016, Williamson instructed Plaintiff to complete release of information forms to acquire Plaintiff's medical history from his outside treating physicians. (*Id.* at 15). Williamson alleged that he could not treat Plaintiff because he lacked Plaintiff's medical history. (*Id.*) Plaintiff completed the papers on July 1, 2016. (*Id.*) Nurse Arthur told Plaintiff that he would not accept Plaintiff's release of information forms due to Plaintiff and Sexton's lawsuits. (*Id.*)

On July 20, 2016, Plaintiff's chest x-rays revealed irregular activity in his lungs according to Naphcare doe physician and Nurse Ashley. (*Id.*) Doe physician documented Plaintiff's history of valley fever and complaints of neck, back, left shoulder pain, left wrist

pain, and Plaintiff's brace. (*Id.*) Doe physician told Plaintiff that he would follow up with Plaintiff but he has not. (*Id.*) On July 22, 2016, jail officials took an x-ray of Plaintiff's left wrist. (*Id.*)

On July 29, 2016, Plaintiff suffered another seizure in his upper bunk and struck his right elbow and broke his right hand. (*Id.* at 16). From that date to August 4, 2016, Plaintiff submitted numerous kites and grievances to Nurse Arthur. (*Id.*) On July 30, 2016, Nurse Arthur inspected Plaintiff's "severely swollen and obviously broken right hand" but ignored the break and told Plaintiff, if it were broken, he would not be able to move it. (*Id.*) Naphcare doe nurse concluded that the pain in Plaintiff's right hand was from an old fracture and not a new break but did not take an x-ray. (*Id.*) On August 4, 2016, jail officials x-rayed Plaintiff's right hand and confirmed a break. (*Id.*) Williamson knew of the break but did nothing to treat Plaintiff's hand. (*Id.*)

On August 25, 2016, after numerous complaints about his right hand, Williamson spoke to Plaintiff and told Plaintiff that his hand was not broken. (*Id.*) Williamson told Plaintiff that the x-rays failed to show that anything was wrong with Plaintiff's hand. (*Id.*) When Plaintiff complained about being housed in an upper bunk, Williamson "fraudulently reported" that Plaintiff was on a lower bunk. (*Id.*) A follow-up x-ray indicated that Plaintiff's hand was broken. (*Id.*) Williamson refused to order Plaintiff's left hand brace. (*Id.*) On September 23, 2016, jail officials assigned Plaintiff to a lower bunk. (*Id.* at 15).

On October 25, 2016, Alvarado, in the presence of Hardin, grabbed the back of Plaintiff's injured neck and pushed Plaintiff's face into a concrete wall while yelling racial epithets. (*Id.* at 17). Plaintiff told Alvarado that he was hurting Plaintiff. (*Id.*) The pressure on Plaintiff's neck caused a popping sound and a burning sensation in Plaintiff's neck. (*Id.*) Hardin did not intervene or report the use of force. (*Id.*)

On October 29, 2016, Pollard instructed Plaintiff to "roll it up." (*Id.*) When Pollard returned after 90 seconds, Plaintiff had not finished packing up his items due to his left-hand disability. (*Id.*) Pollard said he would do it, cuffed Plaintiff up, and warned Plaintiff of the prospects of being punished for a rule violation. (*Id.*) Plaintiff responded "with court

action." (*Id.*) Pollard replied by handcuffing Plaintiff "excessively tight" and permitting the cuffs to cut into Plaintiff's swollen, left hand. (*Id.*)

Plaintiff remains without his brace and prescription eyewear. (*Id.*) Plaintiff suffered from drug, medication, and narcotic withdrawals. (*Id.* at 19). Plaintiff requested a vaporizer, or "assistive device," to accommodate his addictions and disabilities but jail officials at HDC and CCDC denied the accommodation. (*Id.*)

COCN, COHN, HPD, Lombardo, Moers, Williamson, HDCMA, Naphcare, CLV, and LVMPD maintained policies, procedures, and customs which ratified the violations against Plaintiff. (*Id.* at 21-24). COHN, COCN, HPD, HDCMA, CLV, LVMPD, Lombardo, Moers, and Naphcare implemented said policies, knew they existed, and reasonably could have foreseen that they would harm Plaintiff. (*Id.* at 24).

### A. Count I

In Count I, Plaintiff alleges First Amendment violations for retaliation and the right to send and receive mail.[2] The Court will address each violation in turn.

#### i. Retaliation

Plaintiff alleges First Amendment retaliation against Defendants COCN, CLV, Naphcare, LVMPD, Lombardo, Pollard, Williamson, Cadet, Arthur, and Does. (ECF No. 38 at 25). Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

To state a viable First Amendment retaliation claim in the prison context, a plaintiff

---

[2] In this count, Plaintiff also appears to be attempting to allege constitutional violations against defendants for not identifying Doe defendants and for failing to provide him with his medical records. (*See* ECF No. 38 at 27). To the extent that Plaintiff is attempting to state a constitutional claim based on these allegations, Plaintiff has failed to do so.

must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68.

The Court finds that Plaintiff states a colorable retaliation claim. Based on the allegations, Cadet warned Plaintiff to stop litigating or "things would certainly get ugly"; Doe officer locked Plaintiff in his cell for 24 hours after Plaintiff told the officer that he was going to add the officer as a defendant to his lawsuit; Nurse Arthur refused to process Plaintiff's release of information forms because Plaintiff had filed a lawsuit; and Pollard handcuffed Plaintiff excessively tight after Plaintiff vowed to add Pollard to the instant lawsuit. These allegations are sufficient to state a colorable retaliation claim. As such, this claim will proceed against Defendants Cadet, Nurse Arthur, Pollard, and Doe officer (when Plaintiff learns his identity).[3]

The Court dismisses Defendant Lombardo from this count because there are no allegations in the TAC that Lombardo knew of or authorized the retaliation. Additionally, the Court dismisses Defendant Williamson from this count because there are no allegations that he knew that Nurse Arthur would reject Plaintiff's forms.

*See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983"). The Court also dismisses Defendant Naphcare because there are no allegations in the TAC to support a retaliation claim against it.

With respect to COCN, CLV, and LVMPD, the Court finds that Plaintiff fails to

---

[3] As a general rule, the use of "Doe" pleading to identify a defendant is not favored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). However, the Court recognizes that there are situations "where the identity of alleged defendants will not be known prior to the filing of a complaint." *Id.* "In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*

- 11 -

allege a colorable retaliation claim against them based on municipal liability. A municipality may be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). To state a claim for municipal or county liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit. *City of Canton*, 489 U.S. at 385. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipalities are not vicariously liable under § 1983 for their employees' actions. *Id.* at 60. There are no allegations in the TAC that support a retaliation claim based on municipality liability. As such, the Court dismisses, without prejudice, Defendants COCN, CLV, and LVMPD from this count.

### ii. Inmate-to-Inmate Mail Correspondence Policy

Plaintiff challenges the constitutionality of the policy prohibiting inmate-to-inmate correspondence at the CCDC unless inmates are married, related, or a court order is issued. (ECF No. 38 at 26). The Court interprets this as a First Amendment mail claim.

Generally, prisoners have a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). The court analyzes prison regulations concerning incoming mail under the factors outlined in *Turner v. Safley*, 482 U.S. 78, 89 (1987). *See Thornburgh v. Abbott*, 490 U.S. 401, 411-13 (1989).

The Court will permit this claim to proceed on screening against Defendant Lombardo.

### B. Count II

In Count II, Plaintiff alleges due process violations against COCN, COHN, HPD, Moers, Chavez, Robinson, LVMPD, Lombardo, and CLV for putting Plaintiff in disciplinary/punitive segregation without cause. (ECF No. 38 at 28-29).

The Fourteenth Amendment's Due Process Clause prohibits jail and prison

officials from "punishing" a pretrial detainee without a due process hearing. *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996). "[P]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule." *Id.*

The Court finds that Plaintiff states a colorable due process violation. Based on the allegations, while at the HDC, Chavez and Robinson put Plaintiff in punitive segregation after booking, without a hearing, based on the orders of Adams and Niswonger. This claim will proceed against Defendants Chavez, Robinson, Adams, and Niswonger. However, the Court dismisses Defendants COCN, COHN, HPD, Moers, LVMPD, Lombardo, and CLV, without prejudice, from this claim.

### C. Counts III and IV

In Count III, Plaintiff alleges deliberate indifference to serious medical needs against COCN, Naphcare, COHN, HPD, Williamson, Moers, HDCMA, CLV, LVMPD, Lombardo, Adams, Niswonger, Gregg, Arthur, Ashley, Coker, Hogan, and Cadet. (ECF No. 38 at 29). In Count IV, Plaintiff sues COCN, Naphcare, CLV, LVMPD, Lombardo, Coker, Delacruz, Hogan, Goins, Williamson, Cadet, C. Smith, Arthur, and Ashley for violations related to housing a seizure inmate in an upper bunk. (*Id.* at 30-31). The Court interprets both counts as claims for deliberate indifference to serious medical needs.

A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pretrial detainees. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). Although the U.S. Supreme Court and the Ninth Circuit have started to apply an objectively reasonable standard to determine whether a pretrial detainee's rights have been violated, those courts have not fully addressed the new standard for medical claims and pretrial detainees. *See generally Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015) (holding that an objectively reasonable standard applies to a pretrial detainee's excessive force claims); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (holding that an objectively reasonable standard applies to a pretrial

detainee's failure to protect claims).  For screening purposes, the Court analyzes Plaintiff's claims under the traditional Eighth Amendment deliberate indifference standard.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).  To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.*  "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  *Id.* (internal quotations omitted).  When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

The Court finds that Plaintiff states a colorable claim for deliberate indifference to serious medical needs.  Based on the allegations, while at the HDC, Plaintiff informed jail officials of his need for his wrist brace, eyeglasses, pain medication, and seizure medication.  Jail officials appeared to ignore those needs resulting in Plaintiff suffering

1 from disabling/excruciating pain, drug withdrawal, seizures, and partial stroke. This part of the claim will proceed against Defendants M. Smith, Acevedo, Niswonger, Adams, HDCMA, and HDCMA Does (when Plaintiff learns their identities).

Based on the allegations, Plaintiff informed CCDC officials of his various injuries, pain needs, seizures, etc. Jail officials appeared to have ignored Plaintiff's needs while prescribing him ibuprofen which was ineffective and assigning him to a top bunk. Jail officials ignored Plaintiff's injuries related to his seizure attacks and asthma attack. After multiple seizures and seizure-related injuries, jail officials waited 8 months before assigning Plaintiff to a lower bunk despite Plaintiff's multiple requests to be moved to a lower bunk. Plaintiff also remains without his medically-necessary wrist brace and eyeglasses. This claim will proceed against Defendants Williamson, Coker, Hogan, Delacruz, Goins, Cadet, C. Smith, Lombardo, Nurse Arthur, Nurse Ashley, Naphcare, and Naphcare Does (when Plaintiff learns their identities). However, the Court dismisses Defendants COCN, COHN, HPD, Moers, CLV, and LVMPD without prejudice from this claim.

**D. Count V**

In Count V, Plaintiff sues Defendants COCN, Naphcare, LVMPD, Lombardo, and CLV for Fifth and Fourteenth Amendment claims for housing critically-injured inmates in hard cells without bedding for three days. (ECF No. 38 at 31).

The Court interprets this count as a municipal liability claim based on a policy to house critically-injured inmates in a hard cell, without bedding, for three days regardless of the inmate's medical situation. In Plaintiff's case, the policy of staying in the hard cell exacerbated Plaintiff's head, spine, and neck injuries.

The Court addresses this claim under the Fourteenth Amendment's Due Process Clause which prohibits jail and prison officials from "punishing" a pretrial detainee without a due process hearing. *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996). The Court finds that Plaintiff has stated sufficient allegations to implicate a due process violation based on the policy of placing critically-injured inmates in hard cells. This claim will

proceed against Defendants COCN, Naphcare, LVMPD, Lombardo, and CLV.

### E. Count VI

In Count VI, Plaintiff alleges Fourth, Fifth, and Fourteenth Amendment claims for excessive force against COCN, CLV, LVMPD, and Lombardo based on a "de facto policy, without fear of discipline." (ECF No. 38 at 32). Plaintiff specifically references Doe officer's actions on June 6-7, 2016; Alvarado's actions on October 25, 2016 which took place in the presence of Hardin; and Pollard's actions on October 29, 2016. (*Id.*)

In *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), the Supreme Court held that a pretrial detainee states a claim for excessive force under the Fourteenth Amendment if: (1) the defendant's use of force was used purposely or knowingly, and (2) the force purposely or knowingly used against the pretrial detainee was objectively unreasonable. *Id.* at 2472-73.

As an initial matter, the Court finds that Plaintiff fails to allege a claim for municipal liability against COCN, CLV, LVMPD, and Lombardo. Plaintiff conclusively states that there was a de facto policy but does not allege anything else. As such, these defendants are dismissed, without prejudice, from this claim.

With respect to the actions of the individual officers, the Court finds that Plaintiff states a colorable claim for excessive force. Based on the allegations, Doe officer slapped Plaintiff's face and caused further injury to Plaintiff's neck; Alvarado grabbed Plaintiff's injured neck and pushed Plaintiff into a wall while Hardin watched; and Pollard handcuffed Plaintiff's injured hand excessively tight. Based on the allegations, it appears that these officers used force purposely and knowingly in a manner that was objectively unreasonable. The excessive force claim will proceed against Defendants Alvarado, Hardin, Pollard, and Doe officer (when Plaintiff learns his identity).

### F. Count VII

In Count VII, Plaintiff alleges violations of the American with Disabilities Act and Rehabilitation Act against Lombardo, Moers, Naphcare, HDCMA, COCN, LVMPD, CLV, HPD, COHN, Gregg, Hogan, Pollard, Goins, Cadet, Williamson, C. Smith, Ashley, and

Arthur. (ECF No. 38 at 33-34). The TAC alleges the following: Plaintiff had disabilities of nicotine addiction, right ear deafness, seizure disorder, asthma disorder, PTSD, paranoid schizophrenia, valley fever infection, head trauma/concussion, neck and spinal sprain/trauma, left-wrist-mobility impairment, bi-polar condition, left-shoulder-mobility impairment, and a broken right hand. (*Id.* at 33). These disabilities substantially limited Plaintiff's ability to perform manual tasks, see, hear, eat, sleep, lift, bend, and concentrate. (*Id.* at 34). Defendants denied Plaintiff benefits of services, programs, and/or activities by denying Plaintiff: a lower bunk, a vaporizer, visits with medical specialists, adequate pain management, left-hand brace, medication for his left-hand cocci infection, and an asthma inhaler. (*Id.* at 34-35).

Both the American with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794 or Section 5, apply in the prison context. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Pursuant to the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A prison inmate states a colorable claim under both the ADA and RA if he alleges that he was "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997).

The Supreme Court has held that a prisoner may state an ADA claim based on the "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs." *United States v. Georgia*, 546 U.S. 151, 157 (2006). Courts

apply the same analysis to claims brought under the ADA and RA. *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

The Court finds that Plaintiff states a colorable claim for violations of the ADA and RA. Based on the allegations, Plaintiff did not receive medical care accommodations for his disabilities. This claim will proceed against Defendants Lombardo, LVMPD, Moers, HPD, Naphcare, HDCMA, Gregg, Hogan, Pollard, Goins, Cadet, Williamson, C. Smith, Ashley, and Arthur. However, the Court dismisses the claim, without prejudice, against Defendants COCN, CLV, and COHN because there are no allegations about a specific custom or policy.

## III. CONCLUSION

For the foregoing reasons, it is ordered that the operative complaint is the third amended complaint (ECF No. 38).

It is further ordered that the portion of Count I, alleging retaliation, will proceed against Defendants Cadet, Nurse Arthur, Pollard, and Doe officer (when Plaintiff learns his identity). Defendants County of Clark County Nevada, City of Las Vegas, Naphcare, LVMPD, Williamson, and Lombardo are dismissed, without prejudice, from the retaliation claim.

It is further ordered that the portion of Count I, challenging the inmate-to-inmate-correspondence policy, will proceed against Defendant Lombardo.

It is further ordered that Count II, alleging due process violations, will proceed against Defendants Chavez, Robinson, Adams, and Niswonger. Defendants County of Clark County Nevada, City of Henderson, Henderson Police Department, Moers, LVMPD, Lombardo, and City of Las Vegas, are dismissed, without prejudice, from this claim.

It is further ordered that Counts III and IV, alleging deliberate indifference to serious medical needs, will proceed against Defendants M. Smith, Acevedo, Niswonger, Adams, Henderson Detention Center Medical Administration, HDCMA Does (when Plaintiff learns their identities), Williamson, Coker, Hogan, Delacruz, Goins, Cadet, C. Smith, Lombardo, Nurse Arthur, Nurse Ashley, Naphcare, and Naphcare Does (when Plaintiff learns their

identities). Defendants County of Clark County Nevada, City of Henderson, Henderson Police Department, Moers, City of Las Vegas, and LVMPD are dismissed, without prejudice, from this claim.

It is further ordered that Count V, alleging due process violations, will proceed against Defendants County of Clark County Nevada, Naphcare, LVMPD, Lombardo, and City of Las Vegas.

It is further ordered that Count VI, alleging excessive force, will proceed against Defendants Alvarado, Hardin, Pollard, and Doe officer (when Plaintiff learns his identity). Defendants County of Clark County Nevada, City of Las Vegas, LVMPD, and Lombardo are dismissed without prejudice from this claim.

It is further ordered that Count VII, alleging ADA and RA violations, will proceed against Defendants Lombardo, LVMPD, Moers, Henderson Police Department, Naphcare, Henderson Detention Center Medical Administration, Gregg, Hogan, Pollard, Goins, Cadet, Williamson, C. Smith, Nurse Ashley, and Nurse Arthur. Defendants County of Clark County Nevada, City of Las Vegas, and City of Henderson are dismissed, without prejudice, from this claim.

It is further ordered that Defendant City of Henderson is dismissed from the entirety of this case without prejudice.

It is further ordered that the Clerk of Court **SHALL ISSUE** summonses for Defendants County of Clark County Nevada, Naphcare, Henderson Police Department, Henderson Detention Center Medical Administration, City of Las Vegas, Las Vegas Metropolitan Police Department, Joseph Lombardo, Patrick Moers, H. Coker, Delacruz, D. Hardin, M. Smith, M. Hogan, V. Goins, L. Williamson, F. Cadet, C. Smith, John Gregg, Pollard, Acevedo, J. Chavez, R. Robinson, Ryan Adams, Anthony Niswonger, Nurse Arthur (last name unknown), Nurse Ashley (last name unknown), and M. Alvarado, **AND DELIVER THE SAME**, to the U.S. Marshal for service. The Clerk **SHALL SEND** to Plaintiff **twenty-seven (27)** USM-285 forms. The Clerk also **SHALL SEND** a copy of the third amended complaint (ECF No. 38) and a copy of this order to the U.S. Marshal for

service on Defendant(s).  Plaintiff shall have **thirty (30) days** within which to furnish to the U.S. Marshal the required USM-285 forms with relevant information as to each Defendant on each form.  Within **twenty (20) days** after receiving from the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying which Defendant(s) were served and which were not served, if any.  If Plaintiff wishes to have service again attempted on an unserved Defendant(s), then a motion must be filed with the Court identifying the unserved Defendant(s) and specifying a more detailed name and/or address for said Defendant(s), or whether some other manner of service should be attempted.

It is further ordered that henceforth, Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon the attorney(s), a copy of every pleading, motion or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the Defendants or counsel for the Defendants.  The Court may disregard any paper received by a district judge or magistrate judge which has not been filed with the clerk, and any paper received by a district judge, magistrate judge or the clerk which fails to include a certificate of service.

DATED THIS 8th day of December 2017.

_____
UNITED STATES MAGISTRATE JUDGE