UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

TONEY ANTHONEY WHITE,

Plaintiff,

v.

COUNTY OF CLARK NEVADA (COCN), *et al.*,

Defendants.

Case No. 2:16-cv-00734-RFB-VCF

**ORDER**

I. **INTRODUCTION**

Before the Court is Plaintiff's seven motions: (1) Motion for Temporary Restraining Order (ECF No. 71); (2) Motion for Preliminary Injunction (ECF No. 72); (3) Motion to Issue and Serve Subpoena (ECF No. 85); (4) Motion for Service of Document by Defendants (ECF No. 86); (5) Motion for Sanctions re: Discovery (ECF No. 87); (6) Motion for Sanctions (ECF No. 97); and Motion for Court Action (ECF No. 134).

Also, before the Court are three motions to dismiss. Defendants Las Vegas Metropolitan Police Department ("LVMPD") Sheriff Joseph Lombardo, Marco Alvardo, Valyon Goins, Franc Cadet, Michael Pollard, Efren Delacruz, Marlon Hogan, and Darren Hardin ("the LVMPD Defendants") bring a Motion to Dismiss (ECF No. 115). Defendant Henderson Police Department ("HPD") brings a Motion to Dismiss (ECF No. 117). Defendants J. Chavez, R. Robinson, Ryan Adams, Anthony Niswonger, M. Smith and Acevedo ("the HPD Defendants") bring a Motion to Dismiss (ECF No. 126).

II. **FACTUAL BACKGROUND**

The Court summarizes the facts alleged in Plaintiff's Third Amended Complaint (the

"TAC") that are relevant to the pending motions. Before September 3, 2015, Plaintiff suffered from dual addictions, epilepsy, valley fever/cocci, hearing impairments, partial paralysis/immobility of the left wrist, and mental health issues. On September 3, 2015, Plaintiff was in a motor vehicle accident that caused Plaintiff to suffer from chronic head, spine, and neck injury, post-traumatic stress disorder, chronic debilitating pain, and mental illness. Without his prescription glasses, Plaintiff suffered from blurred vision and severe headaches when he tried to read or write. Between September 3, 2015 and January 22, 2016, Plaintiff received ongoing treatment and pain management from several doctors and received prescription glasses. Plaintiff also had used a medically-necessary left hand brace for over ten years.

On January 22, 2016, Plaintiff was arrested by COCN, COHN, HPD, CLV, LVMPD, Moers, and Lombardo. Officer Gregg transported Plaintiff to the HDC. After his arrest, Adams, Gregg, and Niswonger switched Plaintiff's handcuffs. Adams and Niswonger directed Gregg to seize Plaintiff's hand brace.

At HDC, Plaintiff underwent a medical screening by HDCMA. During the screening, Plaintiff reported that he had a seizure disorder, drug and nicotine withdrawal, valley fever, PTSD, paranoid schizophrenia, a hearing impairment, left hand/wrist immobility, severe head, neck, and back injury, chronic debilitating pain, and mental health concerns. Plaintiff also stated that he needed his left wrist brace and his prescription eyeglasses. Plaintiff identified his current prescriptions and provided a list of his prescribing pharmacies.

COCN, HDCMA, and Moers had a no narcotic policy and, thus, HDCMA Does refused to honor Plaintiff's pre-arrest prescriptions. This caused Plaintiff to suffer from "disabling/excruciating pains," drug withdrawal, and sleep deprivation for 12 days. Jail officials deprived Plaintiff of his wrist brace and seizure medication. As a result, Plaintiff had two seizures between January 27 and January 30, 2016. During the second seizure, Plaintiff suffered a partial stroke. M. Smith and Acevedo deprived Plaintiff of his seizure medication even though Plaintiff had informed them of his need for it.

Without legitimate cause, Chavez and Robinson, under the orders of Adams and Niswonger, put Plaintiff in punitive segregation after booking. Plaintiff stayed there for 12 days.

On January 27, 2016, Niswonger and Adams sought to interview Plaintiff. Prior to being interviewed, Plaintiff asked for his prescription glasses because the strain in his eyes caused him to have headaches. Plaintiff also asked for his wrist brace. Niswonger and Adams refused the requests.

On February 3, 2016, HPD officials transported Plaintiff into the custody of COCN, Naphcare staff, CLV, LVMPD, Lombardo, Coker, Delacruz, Hogan, Goins, Williamson, Cadet, and C. Smith. At CCDC, Plaintiff reported all of his medical needs to Naphcare Does and requested a lower bunk accommodation. Based on a no narcotic policy, Williamson and Naphcare Does prescribed Plaintiff ibuprofen even though they knew it was ineffective.

At the approval of COCN, CLV, Naphcare Does, LVMPD, and Lombardo's policy, jail officials assigned Plaintiff a hard cell furnished with concrete slabs and hard wood benches despite Plaintiff's substantial head, spine, and neck injuries. Jail officials did not provide Plaintiff with any bedding, including a mattress, and kept Plaintiff in the hard cell for three days. These conditions aggravated Plaintiff's head, spine, and neck injuries.

Jail officials assigned Plaintiff an upper bunk. On February 10, 2016, Plaintiff had a seizure. Williamson refused to provide Plaintiff with adequate pain management. Coker, Hogan, Delacruz, Goins, Cadet and C. Smith refused to move Plaintiff to a lower bunk.

Prior to April 20, 2016, C. Smith assigned Plaintiff to an upper bunk even though Plaintiff was a seizure patient. Plaintiff made several requests to be moved to a lower bunk but Lombardo, Coker, Delacruz, Hogan, Goins, Williamson, Cadet, and C. Smith refused to move Plaintiff and told Plaintiff that inmates could not choose housing because housing was based on the needs of the facility.

On April 20, 2016, Plaintiff attempted to climb onto his upper bunk using his mobility-impaired-left-hand and his right hand. While attempting to climb, Plaintiff retracted his left hand due to the pain and fell, struck his head, lost consciousness, and sustained injuries to his head, back, neck, wrist, and left shoulder. Plaintiff's cell mate attempted to summon Hogan three times over the emergency light but Hogan had turned off the light in order to train cadets.

On May 23, 2016, Plaintiff asked Hogan to move him to a lower bunk but Hogan refused.

On May 24, 2016, Cadet also refused to move Plaintiff to a lower bunk. Cadet took Plaintiff's legal materials because Plaintiff and his fiancé, Amanda Sexton, had been attempting to assist each other and litigate together. Cadet told Plaintiff to stop attempting to litigate or "things would certainly get ugly." Cadet would not give Plaintiff back his legal materials.

On July 29, 2016, Plaintiff suffered another seizure in his upper bunk and struck his right elbow and broke his right hand. From that date to August 4, 2016, Plaintiff submitted numerous kites and grievances to Nurse Arthur. On July 30, 2016, Nurse Arthur inspected Plaintiff's "severely swollen and obviously broken right hand" but ignored the break and told Plaintiff, if it were broken, he would not be able to move it. Naphcare Doe nurse concluded that the pain in Plaintiff's right hand was from an old fracture and not a new break but did not take an x-ray. On August 4, 2016, jail officials x-rayed Plaintiff's right hand and confirmed a break. Williamson knew of the break but did nothing to treat Plaintiff's hand.

On August 25, 2016, after numerous complaints about his right hand, Williamson spoke to Plaintiff and told Plaintiff that his hand was not broken. Williamson told Plaintiff that the x-rays failed to show that anything was wrong with Plaintiff's hand. When Plaintiff complained about being housed in an upper bunk, Williamson "fraudulently reported" that Plaintiff was on a lower bunk. A follow-up x-ray indicated that Plaintiff's hand was broken. Williamson refused to order Plaintiff's left hand brace. On September 23, 2016, jail officials assigned Plaintiff to a lower bunk.

On October 25, 2016, Alvarado, in the presence of Hardin, grabbed the back of Plaintiff's injured neck and pushed Plaintiff's face into a concrete wall while yelling racial epithets. Plaintiff told Alvarado that he was hurting Plaintiff. The pressure on Plaintiff's neck caused a popping sound and a burning sensation in Plaintiff's neck. Hardin did not intervene or report the use of force.

On October 29, 2016, Pollard instructed Plaintiff to "roll it up." When Pollard returned after 90 seconds, Plaintiff had not finished packing up his items due to his left-hand disability. Pollard said he would do it, cuffed Plaintiff up, and warned Plaintiff of the prospects of being punished for a rule violation. Plaintiff threatened to add Pollard to his pending litigation. Pollard replied by handcuffing Plaintiff "excessively tight" and permitting the cuffs to cut into Plaintiff's

swollen left hand.

### III. PROCEDURAL BACKGROUND

Plaintiff filed an amended complaint with Amanda Sexton on May 9, 2016. ECF No. 4. Plaintiff filed a second amended complaint with Amanda Sexton on June 7, 2016. ECF No. 13. On September 29, 2016, the Court severed the claims of Plaintiffs White and Sexton. ECF No. 31. Plaintiff White filed a Third Amended Complaint with Jury Demand on December 6, 2016. ECF No. 38. The Court filed a Screening Order on December 8, 2017. ECF No. 92. Plaintiff filed a Motion for Temporary Restraining Order and Motion for Preliminary Injunction on September 27, 2017. ECF Nos. 71 and 72. The Court held a hearing on these motions on October 13, 2017, and took these motions under submission. ECF No. 84. The LVMPD Defendants filed a Motion to Dismiss on January 29, 2018. ECF No. 115. The HPD filed a Motion to Dismiss on January 30, 2018. ECF No. 117. The HPD Defendants filed a Motion to Dismiss on February 7, 2018. ECF No. 126.

### IV. LEGAL STANDARD

#### a. Motion to Dismiss

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Security Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

In addition, documents filed by a plaintiff who is proceeding without counsel must be liberally construed, and a pro se complaint must be "held to less stringent standards than formal

pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (citations and internal quotation marks omitted); see also Butler v. Long, 752 F.3d 1177, 1180 (9th Cir. 2014).

### b. Section 1983 Claim

For a plaintiff to assert a violation Section 1983 by state actors, he must establish an underlying constitutional violation. "Section 1983 does not create substantive rights but merely is a device for enforcing certain constitutional provisions or federal statutes." See Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979). The elements of a § 1983 claim are: (1) violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting "under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

Local governments can be held liable under Section 1983 for deprivations of federal rights only if the violation is caused by action taken pursuant to official municipal policy or custom; municipalities may not be held liable under a theory of *respondeat superior*. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978). There are four ways to establish municipal liability: 1) official decision by policymaking body (Monell); 2) action by one with final policymaking authority (Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)); 3) failure to train (City of Canton v. Harris, 489 U.S. 378, 388 (1989); and 4) custom (Gillete v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992)). "When an individual sues a local government for violation of a constitutional right, the municipality is liable if the individual can establish that the local government 'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered.'" Galen v. County of L.A., 477 F.3d 652, 667 (9th Cir.2007) (quoting Monell, 436 U.S. at 694–95). To allege municipal liability under Monell, a plaintiff must provide more than a bare allegation that a policy exists. AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012)

## V. DISCUSSION

### A. Plaintiff's Motions

The Court first addresses Plaintiff's outstanding motions. Plaintiff filed a Motion for Temporary Restraining Order and Motion for Preliminary Injunction on September 27, 2017, claiming that the Defendants continued to deprive him of his wrist brace and that their mail policies were preventing him from effectively litigating his cases. ECF Nos. 71 and 72. When the Court held a hearing on October 13, 2017, Plaintiff stated that the Defendants had provided him with a wrist brace and so that portion of his requested relief was no longer necessary. Plaintiff filed a Motion for Court Action on February 22, 2018, claiming that the Defendants were continuing to hinder his ability to send legal mail necessary to litigate his cases. Based upon the current record, the Court does not find that the Plaintiff is being substantially impaired in his ability to litigate this case such that irreparable harm would result. If the Plaintiff continues to experience difficulties, he can file another motion and bring this to the Court's attention. At this time, the Court denies these motions without prejudice. The Court also denies Plaintiff's request to have inmate-to-inmate contact with Amanda Sexton, as the Court finds no basis to make an exception to this policy at this time. ECF No. 86. White and Sexton do not have a legal right to be able to communicate with each other. Further, the Court denies Plaintiff's Motions for Sanctions and Motion to Issue and Serve Subpoena without prejudice as moot, as significant discovery has subsequently taken place in this case and the Court does not find a basis to impose sanctions at this time. ECF Nos. 85, 87, 97. Plaintiff can file another motion if he has any outstanding discovery related issues.

**B. ECF No. 117**

The Court first considers HPD's argument that it lacks the capacity to be sued under FRCP 17(b). FRCP 17(b) provides that for parties other than individuals or corporations, the capacity to sue or be sued is determined by state law. Fed. R. Civ. P. 17(b)(3). The Nevada Supreme Court has held that "a department of the municipal government may not, in the department name, sue or be sued" without statutory authorization. Wayment v. Holmes, 112 Nev. 232, 237–38, 912 P.2d 816, 819 (1996) (dismissing Washoe County District Attorney's Office, holding it was a department of the municipal government rather than a political subdivision). Thus, COHN is the proper party to sue when challenging HPD conduct. Because the Plaintiff names both HPD and

COHN as Defendants, the Court construes his claims against HPD as claims against COHN. The Court therefore dismisses HPD from this matter accordingly.

### C. ECF No. 115

The LVMPD Defendants filed this Motion to Dismiss, arguing that the Plaintiff has not satisfied the pleading standard for certain claims.

#### *1. Claim 1: First Amendment Retaliation*

##### *a. Legal Standard*

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Id. To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567-68. The Court may consider the timing of an allegedly retaliatory action as circumstantial evidence of retaliatory intent, particularly where a punishment comes soon after an inmate plaintiff airs a grievance. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (citing Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)). Decisions that are "retaliatory and…arbitrary and capricious" are "not a reasonable exercise of prison authority and [do] not serve any legitimate correctional goal." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

##### *b. Discussion*

Defendants argue that the First Amendment retaliation claim against Defendant Cadet fails

to state a claim because Plaintiff has not alleged acts that would cause him more than minimal harm or chill his protected speech. Plaintiff alleged in his TAC that in response to viewing legal papers that indicated he was pursuing civil rights claims against LVMPD, Defendant Cadet made veiled threats to him and advised Plaintiff to stop litigating or "things would certainly get ugly" and subsequently confiscated Plaintiff's legal material without cause. The Court finds these allegations sufficient to state a claim against Cadet.

Defendants also argue that the Court must dismiss the retaliation claim against Defendant Pollard because his actions served a legitimate correctional purpose. Plaintiff alleged that after he "vowed" to add Defendant Pollard to his pending suit, Defendant Pollard deliberately tightened his handcuffs excessively tight, causing him pain and numbness, and deliberately abandoned a portion of his belongings. Although handcuffing a pretrial detainee can at times serve a legitimate correctional purpose, Plaintiff alleges that Defendant Pollard deliberately caused him unnecessary pain and discomfort and lost or destroyed Plaintiff's property. Pollard's alleged retaliatory conduct is arbitrary and does not serve a legitimate correctional purpose. Rizzo, 778 F.2d at 532. The First Amendment retaliation claim shall proceed against both Defendant Pollard and Defendant Cadet.

### 2. *Claim 1: Inmate-to-inmate Mail Policy*

Plaintiff challenges an alleged policy that prohibits inmate-to-inmate correspondence. Generally, prisoners have a First Amendment right to send and receive mail. Witherow v. Paff, 52 F.3d 264 (9th Cir. 1995). But "a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.'" Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). The LVMPD Defendants argue that the alleged policy is constitutional because it is reasonably related to legitimate penological interests of preventing criminal activity and promoting safety. "Legitimate penological interests include security, order, and rehabilitation." Id.; see also Turner, 482 U.S. at 93 (holding limitation on inmate-to-inmate correspondence was reasonably related to the valid goals of institutional

security and safety). Because the alleged policy reasonably relates to legitimate penological interests as identified in Turner, the Court dismisses Plaintiff's mail claim accordingly.

### 3. *Claims 3 and 4: Inadequate Medical Care*

#### a. *Legal Standard*

A pretrial detainee's claims regarding inadequate medical care fall under the Fourteenth Amendment's Due Process Clause, which imposes an objective deliberate indifference standard. Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). Such a claim requires four elements: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." Id. The third element requires the court to consider if the defendant's conduct is "objectively unreasonable." Id. The inquiry is case specific, turning on the particularities of the facts and circumstances in a case. Id. A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id.

#### b. *Discussion*

The LVMPD Defendants argue that Plaintiff has not alleged a claim for inadequate medical treatment because he concedes that he received at least four medical visits, an x-ray, and medication. Further, he alleges that he voluntarily remained in the upper bunk that he was assigned to, even when the bottom bunk in his cell was empty. Plaintiff alleges that while at CCDC, he informed the LVMPD Defendants of his various injuries, that he needed his wrist brace, eyeglasses, and pain management, and that he needed to be assigned to a lower bunk due to the possibility of seizures. He alleges that despite these complaints, the Defendants failed to provide

- 10 -

him with his eyeglasses or wrist brace or to adequately treat his pain and that he was assigned to an upper bunk for several months. The fact that the Plaintiff concedes that the Defendants did provide him with *some* medical treatment is insufficient to prove as a matter of law that they provided him with adequate medical treatment as required by the Fourteenth Amendment for pretrial detainees. Plaintiff has sufficiently alleged that his medical needs where deliberately disregarded by Defendants and that he suffered medical and emotional injury as a result of their reckless disregard for his specific medical needs. Claims 3 and 4 shall proceed against the LVMPD Defendants.

### *4. Claim 5: Due Process*

#### *a. Legal Standard*

Correctional officers are prohibited under the Fourteenth Amendment Due Process Clause from "punishing" a pretrial detainee without a due process hearing. Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996).

#### *b. Discussion*

In Claim Five, Plaintiff alleges that the LVMPD Defendants violated due process under the Fourteenth Amendment based on a policy of punishing critically-injured detainees who claimed of improper treatment by housing them in hard cells. Defendants argue the claim fails the plausibility standard of FRCP 12(b)(6). But Defendants' argument ignores the history of this matter. Plaintiff originally filed his claims with a related matter before the Court. Sexton v. County of Clark Nevada, Case No. 2:16-cv-02289-RFB-VCF (D. Nev. Filed April 11, 2016). Plaintiffs in both matters allege that they were subjected to a policy or practice of housing critically-injured detainees in hard cells. When the Court takes judicial notice of earlier filings and the related case

before the Court, the claim "contain[s] sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." AE ex rel. Hernandez, 666 F.3d at 637 (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)). Thus, the Court denies the LVMPD Defendants' Motion to Dismiss as it relates to Claim Five.

### 5. Claim 6: Excessive Force

#### a. Legal Standard

A pretrial detainee states a claim for excessive force under the Fourteenth Amendment if: (1) the defendant's use of force was used purposely or knowingly, and (2) the force purposely or knowingly used against the pretrial detainee was objectively unreasonable. Kingsley v. Hendrickson, 135 S.Ct. 2466, 2472-73 (2015).

#### b. Discussion

The excessive force Monell claim was dismissed against Defendants COCN, CLV, LVMPD, and Lombardo in the Screening Order. ECF No. 92 at 16. The LVMPD Defendants argue that this claim should be dismissed against the individual officers as well because "the alleged actions were objectively reasonable as they were undertaken to further maintain order and safety within CCDC." ECF No. 115 at 16. In the TAC, Plaintiff alleges that Doe officer slapped Plaintiff's face and caused further injury to Plaintiff's neck; Alvarado grabbed Plaintiff's injured neck and pushed Plaintiff into a wall while Hardin watched; and Pollard handcuffed Plaintiff's injured hand excessively tight. No objectively reasonable basis for such force can be gleaned from the TAC. Therefore, the excessive force claim shall proceed against the individual LVMPD Defendants.

### 6. Claim 7: Americans with Disabilities Act and Rehabilitation Act

### a. Legal Standard

"There is no significant difference in analysis of the rights and obligations created by the ADA and the RA." Zurkle v. Regents of Univ. of California, 166 F.3d 1041, 1045, fn. 11 (9th Cir. 1999). Courts therefore "[apply] the same analysis to claims brought under both statutes[.]" Id. Both the ADA and the RA prohibit discrimination against individuals with disabilities on the basis of their disabilities. Updike v. Multnomah Cty., 870 F.3d 939, 949 (9th Cir. 2017) (outlining the elements for an ADA claim and an RA claim). "A public entity may not disregard the plight and distress of a disabled individual." Id. at 951. "The failure to provide reasonable accommodation can constitute discrimination" under the ADA and the RA." Id. (internal quotations omitted).

### b. Discussion

The LVMPD Defendants move to dismiss Claim 7, arguing the ADA and the RA were satisfied because Plaintiff concedes that he received medical evaluations, an x-ray, and medication. However, these allegations are insufficient to prove as a matter of law that the Defendants satisfied their obligations under the ADA and RA. Although the Defendants provided Plaintiff with some level of medical treatment, Plaintiff has alleged plausible claims under the ADA and RA based on his allegations that the level and extent of his treatment was deliberately and knowingly inadequate in relation to his medical disabilities. The Court denies the LVMPD Defendants' Motion to Dismiss as to Claim 7 accordingly.

### D. ECF No. 126

The HPD Defendants filed this Motion to Dismiss, arguing that the claims against them have not been sufficiently plead. The Court incorporates by reference the legal standards discussed previously in its analysis of the instant claims.

#### 1. Claim 2: Due Process

The HPD Defendants argue that Plaintiff's due process claim is conclusory and fails to include sufficient factual allegations. Plaintiff alleges that on January 22, 2016, Defendants Chavez

and Robinson put Plaintiff in punitive segregation at HDC, without a hearing, based on the orders of Defendants Adams and Niswonger. At this stage in the proceeding, Plaintiff does not need to describe in detail the specific circumstances of this punitive segregation, as the Defendants suggest. Claim 2 shall proceed against the individual HPD Defendants.

### 2. *Claim 3: Inadequate Medical Care*

The HPD Defendants argue that Claim 3 must be dismissed, as nothing in the TAC establishes that the individual HPD Defendants (M. Smith, Acevedo, Niswonger and Adams) were deliberately indifferent to a serious medical need. However, Plaintiffs' allegations occurred while Plaintiff was a pretrial detainee. Thus, a more liberal standard under the Fourteenth Amendment governs Plaintiff's claims. See Gordon, 888 F.3d at 1125 (9th Cir. 2018). Plaintiff alleges that Niswonger and Adams deprived him of his wrist brace and M. Smith and Acevedo deprived him of his seizure medication, despite being informed that Plaintiff would experience significant pain and could experience serious bodily harm without these medical items. The HPD Defendants further argue that Plaintiff has not stated a claim because he has not alleged that they were involved with providing Plaintiff with medical care. However, Plaintiff has alleged that he complained to them of medical conditions, which they ignored. Plaintiff does not have to allege that the Defendants' job duties included medical care to allege a deliberate indifference claim. Claim 3 shall proceed against the individual HPD Defendants.

### 3. *Claim 4: Inadequate Medical Care*

The Court agrees with the HPD Defendants that the actions alleged in Claim 4 took place at CCDC and no specific allegations were made against the HPD Defendants in that claim. Therefore, Claim 4 is dismissed with prejudice against the HPD Defendants.

**VI.     CONCLUSION**

**IT IS ORDERED** that Plaintiff 's Motion for Temporary Restraining Order (ECF No. 71), Motion for Preliminary Injunction (ECF No. 72), Motion to Issue and Serve Subpoena (ECF No. 85), Motion for Service of Document by Defendants (ECF No. 86), Motion for Sanctions re:

Discovery (ECF No. 87), Motion for Sanctions (ECF No. 97), and Motion for Court Action (ECF No. 134) are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the LVMPD Defendants' Motion to Dismiss (ECF No. 115) is **GRANTED in part** and **DENIED in part.** The Court dismisses the inmate-to-inmate mail policy theory in Claim 1. The Court denies the Motion as to all other claims.

**IT IS FURTHER ORDERED** that HPD's Motion to Dismiss (ECF No. 117) is **GRANTED**. The Court dismisses HPD from this case and substitutes the City of Henderson into all claims in its place.

**IT IS FURTHER ORDERED** that the HPD Defendants' Motion to Dismiss (ECF No. 126) is **GRANTED in part** and **DENIED in part.** The Court dismisses Claim 4 against the HPD Defendants. The Court denies the Motion as to all other claims.

DATED: September 19, 2018.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**