ORIGINAL

```
                                      ┌─────────────────────────────┐
                                      │ ___ FILED      ___ RECEIVED │
                                      │ ___ ENTERED         SERVED ON│
                                      │         COUNSEL/PARTIES OF RECORD│
                                      │   ┌──────────────────┐       │
                                      │   │   JUN 12 2019    │       │
                                      │   └──────────────────┘       │
                                      │      CLERK US DISTRICT COURT │
                                      │        DISTRICT OF NEVADA    │
                                      │ BY:_____ ___DEPUTY│
                                      └─────────────────────────────┘
```

TONEY ANTHONEY WHITE 1214172
HDSP
POST OFFICE BOX 650
INDIAN SPRINGS, NV, 89070

PLAINTIFF IN PRO SE


## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TONEY ANTHONEY WHITE, | CIVIL ACTION NUMBER 2:16-CV-00734 RFB VCF |
| PLAINTIFF, | |
| | (PROPOSED) FOURTH AMEN-DED COMPLAINT FOR VIO-LATION OF CIVIL RIGHTS |
| VS. | UNDER COLOR OF STATE LAWS (42 U.S.C. § 1983); VIOLATION OF THE REHAB-ILITATION ACT (RA) AND |
| COUNTY OF CLARK NEVADA (COCN), A MUNICIPALITY INCORPOR-ATED UNDER THE STATE OF NEVADA; NAPHCARE, AN ALABAMA CORPORATION QUALIFIED TO DO BUSINESS IN THE STATE OF NEVADA; CITY OF HENDER-SON NEVADA (COHN), A MUNICIPAL-ITY INCORPORATED UNDER THE STATE OF NEVADA AND COUNTY OF CLARK; PATRICK MOERS, CHIEF OF HENDERSON POLICE DEPARTMENT (HPD), INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF HPD; CORIZON HEALTH, INC. AN TENNESSEE CORPORA-TION QUALIFIED TO DO BUSINESS IN THE STATE OF NEVADA; LAS VEGAS MET-ROPOLITAN POLICE DEPARTMENT (LVMPD), A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, CITY OF LAS VEGAS AND COUNTY OF CLARK; HENRY COKER, EFREN DELACRUZ, MARLON HOGAN, MICHAEL POLLARD, DARREN HARDIN, MARCO ALVARDO, VALYON GOINS, CHERI SMITH, D.JONES, AND DOE CORRECTION OFFICERS 1 THRU 10, IN-CLUSIVE, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS CORRECTION OFFICERS EMPLOYED BY LVMPD AT CLARK COUNTY DETENTION CENTER (CCDC); | THE AMERICANS WITH DISABILITIES ACT (ADA) (29 U.S.C. § 794, 42 U.S.C. § 12101, ET. SEQ.); DEMAND FOR JURY TRIAL. |

1

FRANK CADET, UNKNOWN CLARK,
UNKNOWN PERRY, UNKNOWN MENDOZA,
UNKNOWN HOPKINS, UNKNOWN COLEMAN,
INDIVIDUALLY AND IN THEIR OFFI-
CIAL CAPACITIES AS CORRECTIONS
SERGEANTS AT CCDC; J. CHAVEZ,
JOHN GREGG, MARC SMITH, SALVIDAR
RAUL ACEVEDO, R. ROBINSON AND
DOE-OFFICERS 11 THRU 20, INCLUSIVE,
INDIVIDUALLY AND IN THEIR OFFI-
CIAL CAPACITIES AS OFFICERS OF
COHN, HPD AND HENDERSON DETENTION
CENTER (HDC); RYAN ADAMS AND AN-
THONY NISWONGER, INDIVIDUALLY AND
IN THEIR OFFICIAL CAPACITIES AS
DETECTIVES OF HPD AND COHN; NAPH-
CARE LICENSED PRACTICAL NURSES
(LPN) ARTHUR EALITA, LOVELLA MALC-
DEM, KODY CARDNER, MESERET GEBREY,
ROCHELLE PEOPLES, ANABELLE EVANGEL-
ISTA, MARISSA PLAYER, ELIZABETH
AKHTAR, LAWANDA McCLAIN, MICHAEL
VU, RUBELLETA YADAO, ELIZABETH
ACEVEDO, MICHELLE GONZALES,
AMANDA VERTNER, DEBORAH CANTO,
MARIAN MURRIEL, QUINITA JACKSON,
DEBRA VANDERWAAG, MARINA ALBERIO,
CRYSTAL GONZALEZ, REMIELYN MANDING,
MESTAWOTE TILAHUN, LARRY HALL AND
FREDERICK LAITA; NAPHCARE REGISTERED
NURSES ASHLEY ELIZABETH KOMACSAR
AND HORACE TADEO; NAPHCARE PHYSI-
CIANS LARRY DEAN WILLIAMSON AND
DOES 12 THRU 14; CORIZON PHYSICIANS
RUBIN SAAVEDRA AND TERESA CALD-
WELL; CORIZON NURSES DOES 15 THRU
20; AND DOES 21 THRU 35, INCLUSIVE,

DEFENDANTS.

## INTRODUCTION

1. THIS IS A FOURTH AMENDED CIVIL RIGHTS ACTION
FILED BY PLAINTIFF TONEY ANTHONY WHITE PURSUANT TO THE
REHABILITATION ACT (29 U.S.C. § 794), THE CIVIL RIGHTS ACT
(42 U.S.C. § 1983) AND THE AMERICANS WITH DISABILITIES ACT
(42 U.S.C. § 12101, ET. SEQ.) ALLEGING A LITANY OF CONSTITU-
TIONAL VIOLATIONS UNDER THE 1ST, 4TH, 5TH, 8TH AND 14TH
AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## JURISDICTION AND VENUE

2. THIS COURT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS OF FEDERAL CONSTITUTION VIOLATIONS UNDER 28 U.S.C. § 1331 (1) AND 1343.

## CONDITIONS PRECEDENT

3. ALL CONDITIONS PRECEDENT HAVE BEEN PERFORMED, EXECUTED AND/OR EXHAUSTED BY PLAINTIFF TO THE EXTENT LAWFULLY REQUIRED PRIOR TO THE INSTALLATION AND COMMENCEMENT OF THIS ACTION.

## PARTIES

4. PLAINTIFF TONEY ANTHONEY WHITE, III, IS A NATURAL BORN U.S. CITIZEN. AT ALL TIMES RELEVANT TO THIS AMENDED COMPLAINT, HE RESIDED AND REMAINED A RESIDENT OF CLARK COUNTY, STATE OF NEVADA.

5. DEFENDANT COCN IS A COUNTY MUNICIPALITY AND/OR SUBDIVISION INCORPORATED UNDER THE STATE OF NEVADA. IT IS SUED IN IT'S OFFICIAL CAPACITY.

6. DEFENDANT COHN IS A CITY MUNICIPALITY AND/OR POLITICAL SUBDIVISION INCORPORATED UNDER THE STATE OF NEVADA.

7. DEFENDANT NAPHCARE, INC. IS AN ALABAMA CORPORATION QUALIFIED TO DO BUSINESS IN THE STATE OF NEVADA AND OF WHICH, AT ALL TIMES RELEVANT, WAS THE CONTRACTED HEALTH CARE PROVIDER OF CCDC AND WAS RESPONSIBLE FOR THE MEDICAL CARE AND TREATMENT OF INMATES AT CCDC.

8. DEFENDANT CORIZON HEALTH, INC. IS AN TENNESSEE CORPORATION QUALIFIED TO DO BUSINESS IN THE STATE OF NEVADA AND OF WHICH, AT ALL TIMES RELEVANT, WAS THE CONTRACTED HEALTH CARE PROVIDER OF HDC AND WAS RESPONSIBLE FOR THE MEDICAL CARE AND TREATMENT OF INMATES AT HDC.

9. DEFENDANT LVMPD IS A DEPARTMENT AND/OR OTHER POLITICAL SUBDIVISION/AGENCY INCORPORATED UNDER COCN AND THE STATE OF NEVADA.

10. DEFENDANT PATRICK MOERS IS/WAS THE CHIEF OF HPD AND WAS THE INDIVIDUAL RESPONSIBLE FOR THE OPERATION OF HPD AND HDC, AND FOR THE HIRING, FIRING, TRAINING AND DISCIPLINE OF ALL EMPLOYEES UNDER HIS EMPLOY AND CHARGE. HE WAS ALSO RESPONSIBLE FOR THE POLICIES OF HPD AND HDC. HE IS SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITY.

11. DEFENDANTS HENRY COKER, EFREN DELACRUZ, MARLON HOGAN, MICHAEL POLLARD, DARREN HARDIN, MARCO ALVARDO, VALYON GOFNS, CHERI SMITH, D. JONES, FRANC CADET, CLARK, FERRY, MENDOZA, HOPKINS, COLEMAN, J. CHAVEZ, JOHN GREGG, MARC SMITH, SALVIDAR RAUL ACEVEDO, R. ROBINSON, RYAN ADAMS, ANTHONY NISWONGER, ARTHUR GALICIA, LOVELLA MALCDEM, KODY CARDNER, MESERET GEBREY, ROCHELLE PEOPLES, ANABELLE EVANGELISTA, MARISSA PLAYER, ELIZABETH AKHTAR, LAWANDA MCCLAIN, MICHAEL VU, RUBELLETA YADAO, ELIZABETH ACEVEDO, MICHELLE GONZALES, AMANDA VERTNER, DEBORAH CANTO, MARIAN MURRIEL, QUINITA JACKSON, DEBRA VANDERWAAG, MARINA ALBERTO, CRYSTAL GONZALEZ, REMICLYN MANDING, MESTAWOTE TILAHUN, LARRY HALL, FREDERICK LAITA, ASHLEY ELIZABETH KOMACSAR, HORACE TADEO, LARRY DEAN WILLIAMSON, RUBIN SAAVEDRA, TERESA CALDWELL AND DOES 1 THRU 35 ARE INDIVIDUALS, PHYSICIANS, OFFICERS, DETECTIVES, ADMINISTRATIVE STAFF, CUSTODY, CLASSIFICATION, NURSES AND/OR MEDICAL EMPLOYEES EMPLOYED BY DEFENDANTS LISTED IN PARAGRAPHS 5 THRU 10. DOES 1 THRU 35'S IDENTITIES ARE UNKNOWN TO PLAINTIFF. AS A RESULT, PLAINTIFF ENLISTS THESE PARTIES BY FICTICIOUS NAMES UNTIL SUCH TIME AS THEIR IDENTITIES ARE ASCERTAINED. UPON DILIGENT DISCOVERY OF DOES IDENTITIES, PLAINTIFF ANTICIPATES AMENDING THE PLEADINGS TO REFLECT SUCH.

12. EACH DEFENDANT LISTED IN PARAGRAPH 11 WAS EMPLOYED BY AND/OR CONTRACTED WITH ONE OR MORE OF THE INDIVIDUALS, DEPARTMENTS OR MUNICIPALITIES LISTED IN PARAGRAPHS 5 THRU 10. EACH OF THESE DEFENDANTS ARE SUED INDIVIDUALLY AND IN EACH'S OFFICIAL CAPACITY. AT ALL TIMES RELEVANT TO THIS ACTION EACH DEFENDANT ACTED UNDER COLOR OF STATE LAW OR AUTHORITY.

## FACTS

13. PRIOR TO SEPTEMBER 03, 2015, PLAINTIFF HAD BEEN REGARDED AS SUFFERING DISABLING CONDITIONS (IE., DUAL ADDICTIONS, EPILEPSY, VALLEY FEVER, HEARING IMPAIRMENT, LEFT WRIST PARTIAL PARALYSIS/IMMOBILITY, MENTAL HEALTH, ECT.). ON SEPTEMBER 03, 2015, PLAINTIFF INCURRED ADDITIONAL INJURIES REGARDED AS DISABLING CONDITIONS.

14. AS THE RESULT OF A VEHICLE ACCIDENT, PLAINTIFF INCURRED AND SUFFERS FROM CHRONIC HEAD, SPINE AND NECK INJURY, PTSD, CHRONIC DEBILITATING PAIN AND MENTAL ILLNESS. PLAINTIFF'S INCURRED HEAD DAMAGE/TRAUMA CAUSED EXTENSIVE BLURRED VISION AND INTENSE HEADACHES WHEN STRAINING HIS EYES TO WRITE OR READ ABSENT UTILIZATION OF PRESCRIPTION GLASSES.

15. BETWEEN SEPTEMBER 03, 2015 AND JANUARY 22, 2016, PLAINTIFF RECEIVED ON-GOING TREATMENT, THERAPY AND PAIN MANAGEMENT FOR THE SEVERITY OF HIS CONDITIONS, INJURIES AND ALL OTHER MEDICAL CONDITIONS. THIS TREATMENT WAS PROVIDED BY FAROOZ MASHOOD, M.D., PAIN MANAGEMENT SPECIALIST, EVARISTA NNADI, M.D. AND OTHER MEDICAL PRO-VIDERS. HE WAS FURTHER SCHEDULED FOR SPECIALTY CLINIC CONSULTS PRIOR TO ARREST. DUE TO BLURRING VISION CAUSED FROM HEAD TRAUMA, PLAINTIFF WAS PRESCRIBED EYE GLASSES BY MEDICAL PROVIDERS.

16. ON JANUARY 22, 2016, PLAINTIFF WAS SUBJECT TO ARREST BY COCN, COHN, LVMPD, MOERS AND CERTAIN DOES. ON JANUARY 22, 2016 AND FEBRUARY 03, 2016 AND THRU MARCH 29, 2019, COCN, COHN, LVMPD, NAPHCARE, CORIZON HEALTH AND CERTAIN DOES WERE ALL PUBLIC ENTITIES UNDER THE AMBIT OF THE ADA AND RA RECEIVING FEDERAL FUNDING.

17. FOLLOWING ARREST, HE WAS TRANSPORTED TO HDC BY GREGG, AN OFFICER EMPLOYED BY COHN, HPD, MOERS, COCN AND CERTAIN DOES. PRIOR TO ARREST HOWEVER, PLAINTIFF RETAINED HIS LEFT HAND BRACE, AS PRESCRIBED BY U.C. DAVIS M.D.s ROBERT ALLEN AND VERA 60, COCCI SPECIALISTS, INFECTIOUS DISEASE, SACRAMENTO, CALIFORNIA. SAID BRACE RETAINED A MEDICAL NECESSITY FOR OVER 10 YEARS TO STABALIZE HIS LEFT WRIST, SITE OF DISSEMINATED COCCI AND SURGERIES AND FOR THE VERY PURPOSE OF PREVENTING EXCRUCIATING PAIN AND THE AGGRAVATION/SPREAD OF HIS INFECTION.

18. AFTER PLAINTIFF'S ARREST, ADAMS, GREGG AND NISWONGER RESPONDED TO THE ARREST LOCATION. UPON ARRIVAL AND SWITCHING HANDCUFFS FROM LVMPD TO HPD, ADAMS AND NISWONGER INSISTED THAT GREGG SEIZE PLAINTIFF'S HAND BRACE OVER OBJECTION PENDING DETERMINATION OF "NECESSITY" AND IN THE PRESENCE OF WITNESSES. AS A RESULT, PLAINTIFF WAS TIGHTLY AND PAINFULLY CUFFED OVER THE DORSAL OF HIS LEFT HAND. ADAMS, GREGG AND NISWONGER WERE MADE AWARE AND KNEW OF PLAINTIFF'S PHYSICAL AILMENT OF COCCI IN HIS WRIST REQUIRING HIS BRACE AND WHICH MADE TIGHT CUFFS ESPECIALLY PAINFUL FOR HIM. HE WAS MADE TO ENDURE A EXCRUCIATING AND PAINFUL RIDE TO HDC DESPITE HIS COMPLAINTS.

19. AS A DETAINEE, UPON HIS ARRIVAL TO HDC, HE UNDERWENT ADMISSION PROCESS INCLUDING MEDICAL SCREENING BY CORIZON HEALTH STAFF AND CERTAIN DOES. DURING SCREENING PLAINTIFF CONVEYED MEDICAL CONDITIONS AND PRESCRIPTIONS IN EFFECT PRIOR TO ARREST. NAMELY, MEDICAL CONDITIONS INCLUDED SEIZURE DISABILITY, DRUG WITHDRAWAL, VALLEY FEVER, PTSD, PARANOID SCHIZOPHRENIA, HEARING IMPAIRMENT, LEFT HAND/WRIST IMMOBILITY, SEVERE HEAD, NECK AND BACK INJURY, CHRONIC DEBILITATING PAIN IN ADDITION TO MENTAL HEALTH CONCERNS AND HIS NEED TO BE ACCOMMODATED WITH HIS WRIST BRACE AND PRESCRIPTION EYE GLASSES.

20. AS CURRENT PRESCRIPTIONS PLAINTIFF CONVEYED:

(1) DIFLUCAN;
(2) GABAPENTIN;
(3) LORATAB;
(4) HALDOL;
(5) COGENTIN;
(6) ORTHO WRIST BRACE; AND,
(7) PRESCRIPTION EYE GLASSES.

21. WITH RESPECT TO UNKNOWN MEDICATIONS, PLAINTIFF PROVIDED CORIZON HEALTH STAFF A HISTORY OF PRESCRIBING PHARMACIES PRIOR TO HIS ARREST, WHICH INCLUDED:

(1) ISLAND DRUGS, OAK HARBOR, WA;
(2) WALMART, LAS VEGAS, NV;
(3) CVS, LAS VEGAS, NV;
(4) SUNRISE OAK HARBOR, WA; AND,
(5) SUNRISE, MT. VERNON, WA.

22. PLAINTIFF'S PROVISION OF THE HISTORY OF PRESCRIBING PHARMACIES WAS AT CORIZON HEALTH STAFF'S REQUESTS TO CONFIRM HIS LEGITIMATE MEDICAL NEEDS FOR THE MANY LISTED PRESCRIPTIONS BEFORE, AS BELIEVED BY PLAINTIFF, CORIZON HEALTH STAFF RE-PRESCRIBING THEM AT HDC.

23. PLAINTIFF ADVISED CORIZON HEALTH DOES OF RESULTING HEAD, BACK AND NECK INJURIES FROM THE VEHICLE ACCIDENT AND OF THE FACT, PRIOR TO HIS ARREST, OF HIS TREATMENTS WITH PHYSICAL THERAPISTS, NEUROLOGISTS, PAIN MANAGEMENT SPECIALTY SPINE/NECK DOCTORS AND COCCI SPECIALISTS WERE MEDICALLY NECESSARY AND CONTINUING

24. AT NO TIME PRIOR TO, CONTEMPORANEOUS WITH NOR SUBSEQUENT TO HIS BOOKING AT HDC WAS PLAINTIFF CITED FOR DISCIPLINE BY ROBINSON, CHAVEZ OR ANYONE. NOR DID PLAINTIFF ENGAGE IN CONDUCT OR ACTIVITY THAT WOULD JUSTIFY DISCIPLINARY METHODS BEING IMPOSED SUCH AS PUNITIVE SEGREGATION.

25. BASED ON A UNSPECIFIED BLANKET "NO NARCOTIC" POLICY OF CCN, CORIZON HEALTH MOERS AND DOES, CORIZON HEALTH DOES REFUSED TO HONOR PRE-ARREST PRESCRIPTIONS OF PLAINTIFF SUBJECTING HIM TO PROLONGED, WANTON, PREVENTABLE, DISABLING/EXCRUCIATING PAINS AND SUFFERING FOR EXTENDED DURATION AND DRUG WITHDRAWAL. PLAINTIFF WAS DEPRIVED OF ADEQUATE SLEEP, SUBJECTED TO WANTON INFLICTION OF PAIN FOR A EXTENDED DURATION OF 12 AGONIZING DAYS.

26. DURING THE INTERIM, PLAINTIFF WAS DEPRIVED OF SEIZURE MEDICATION RESULTING IN 2 SEIZURES COLLECTIVELY ON JANUARY 29TH AND 30TH, 2016. HE WAS DENIED HIS BRACE AS WELL. ALTHOUGH M. SMITH, S.R. ACEVEDO AND CERTAIN CUSTODY AND CORIZON HEALTH DOES WERE ADVISED OF PLAINTIFF'S NEED FOR HIS MEDICATIONS PRIOR TO SEIZURES, THEY DID OR SAID NOTHING TO ENSURE THAT HE RECEIVED THEM TIMELY. SIMPLY ADVISING A CORIZON HEALTH MEDICAL SUPERVISOR WOULD HAVE BROUGHT SUCH RESULTS. IT IS PLAINTIFF'S BELIEF THAT AS A RESULT OF HIS SECOND SEIZURE HE SUFFERED A PARTIAL STROKE.

27. UPON BOOKING/ADMISSION AND WITHOUT LEGITIMATE CAUSE, JUSTIFICATION OR DUE PROCESS, PLAINTIFF WAS PLACED INTO PUNITIVE SEGREGATION BY CHAVEZ AND ROBINSON PER REQUESTS OF ADAMS AND NISWONGER, AND MADE TO ENDURE SAID HARSH CONDITIONS IN ADDITION TO SUFFERING FOR 12 DAYS. ON JANUARY 27, 2016, NISWONGER AND ADAMS ENCOUNTERED PLAINTIFF. PRIOR TO INTERVIEWING PLAINTIFF SOUGHT HIS PRESCRIPTION GLASSES EXPRESSLY EXPLAINING TO ADAMS AND NISWONGER THAT HE SUFFERED POST-HEAD TRAUMA, BLURRING OF HIS EYES AND ADVISING THEM OF THE FACT THAT CAUSING HIM TO STRAIN HIS EYES IN EFFORTS TO FOCUS, MORE THAN OFTEN, CAUSED INTOLERABLE AND EXCRUCIATING HEADACHES.

28. PLAINTIFF FURTHER SOUGHT HIS BRACE TAKEN BY GREGG, ADAMS AND NISWONGER. IN RESPONSE THESE DEFENDANTS CHUCKLED AND FLAGRANTLY REFUSED INSISTING THAT IF PLAINTIFF HELPED THEM, THEY WOULD HELP PLAINTIFF, GIVEN DIRE NEED FOR THE BRACE AND NEWLY PURCHASED PRESCRIPTION GLASSES, PLAINTIFF COOPERATED WITH THE INTERVIEW. WITHHOLDING HIS GLASSES AND BRACE WORKED A MAJOR DISRUPTION IN HIS DAILY ACTIVITIES.

29. DURING THE INTERIM OF SUFFERING, PLAINTIFF CONSISTENTLY COMPLAINED TO M. SMITH, S.R. ACEVEDO AND CERTAIN CORIZON HEALTH AND CUSTODY DOES REGARDING HIS RESPECTIVE MEDICAL NEEDS TO NO AVAIL. RATHER THAN HONOR THE STANDING PRESCRIPTIONS OF PLAINTIFF AND IRRESPECTIVE OF HIS WITHDRAWALS, CORIZON HEALTH DOES SIMPLY PROVIDED PLAINTIFF IBUPROFEN IN THEIR EFFICACIOUS TREATMENT OF THE SEVERITY OF PLAINTIFF'S PAINS AND SUFFERINGS. THESE DEFENDANTS FAILED TO ADDRESS OR ACCOMMODATE PLAINTIFF'S NEED FOR HIS BRACE AND DIRE NEED FOR PRESCRIPTION GLASSES, PAIN MANAGEMENT, VALLEY FEVER AND SEIZURE DISORDER MEDICATIONS.

30. Plaintiff remained in punitive segregation absent due process until February 03, 2016, when he was transported from HDC, HPD to the custody of COCN, LVMPD, LVMPD staff and Naphcare staff.

31. Upon arrival at CCDC, again he underwent the tedious admission process. He was seen by Naphcare staff and reported his medical conditions, supra. His reports included his brace-need, his dire need for his prescription wear and the fact that he suffered severe head, spinal and neck injuries from a accident and remained under continuing care and treatment prior to his arrest. He further reiterated continuing medical necessity for pain management, specialty clinic treatments and needs of accommodation with a lower bunk.

32. In efficacious efforts to project a false impression that they provided accommodation of Plaintiff's brace and prescription wear and were attempting to treat his substantial head, spine and neck injuries, on a "no narcotic" policy Williamson and Naphcare does prescribed/ issued Ibuprofen known to be ineffective.

33. Naphcare defendants persisted in courses of treatment known to be ineffective and inadequate and their ban on providing inmates with adequate pain management demonstrates that their repeated refusal to uncover or effectively treat Plaintiff's conditions amounted to "gratuitous cruelty." The fact that Naphcare-defendants offered some treatment, no matter how insignificant, fails to shield them from culpability for deliberate indifference, said miniscule ineffective treatment does not provide Naphcare and it's staff a blank check justification for such callous indifferences to Plaintiff's serious medical needs.

34. Despite his reports of disabilities and substantial head, spine and neck injuries, he was assigned to a hard cell furnished solely with concrete slabs and hard wood benches at the bequest and approval of COCN, LVMPD, Naphcare staff, Clark, Ferry, Mendoza, Hopkins, Coleman and certain does and based on policy and custom. The presented injuries of Plaintiff at said time was a sprained neck, damaged spine, ect.

35. In placement into these congested hardcells, he wasn't provided bedding and was made to endure and remain under such cruel conditions for close to 3 days according to policy and custom and despite his seriously injured state and accident-related conditions. Plaintiff's cruel and tortuous retention under such barbaric conditions, exacerbated/aggravated his dire and serious head, spine and neck injuries and violated contemporary standards of decency.

36. DEFENDANTS HAD A DUTY TO ASSIGN PLAINTIFF TO HOUSING WHICH WAS ADEQUATE WITH APPROPRIATE FURNISHING AND PROPER BEDDING INCLUDING A MATRESS. DEFENDANTS WERE AWARE AND IT WAS REASONABLY FORESEEABLE THAT ASSIGNING ANY PERSON UNDER SIMILAR CIRCUMSTANCES TO A HARDCELL FOR CLOSE TO 3 DAYS ABSENT BED FURNISHING, A MATRESS AND APPROPRIATE BEDDING WOULD PROTRACT INJURIES AND RESULT IN WANTON SUFFERING OF MANIFEST, SIGNIFICANT, SUBSTANTIAL, PROLONGED AND AGONIZING PAIN AND SEVERE DISCOMFORT.

37. DESPITE REASONABLE PROJECTIONS, DEFENDANTS NONETHELESS AND IRRESPECTIVE OF CONSEQUENCES, WANTON SUFFERING AND AGONY OF PLAINTIFF, ASSIGNED AND RETAINED HIM IN A HARDCELL FOR CLOSE TO 3 AGONIZING DAYS CAUSING HIM EXACERBATION OF INJURIES, UNNECESSARY SUFFERING AND AGONIZING PAIN.

38. WHEN PLAINTIFF REQUESTED GRIEVANCES AND A WRITTING IMPLEMENT, CONTRARY TO FIRST AMENDMENT GUARANTEES, LVMPD AND NAPHCARE DOES BRUSHED OFF HIS CONCERNS AND REQUESTS STATING "WAIT 'TILL YOU GET UPSTAIRS." HE REMAINED UNDER SAID CRUEL CONDITIONS UNTIL FEBRUARY 06, 2016, WHEN REHOUSED. HE WAS NOT PROVIDED PROPER AND EFFECTIVE PAIN MANAGEMENT OR HIS GLASSES. HIS BRACE AND SPECIALTY CONSULTS WERE PROVIDED IN EXCESS OF 1 YEAR LATER.

39. ON FEBRUARY 06, 2016, PLAINTIFF WAS HOUSED AT CCDC WHERE HE REMAINED UNTIL HIS MARCH 29, 2019 DEPARTURE. PLAINTIFF, DESPITE HIS SEIZURES AND INJURED SPINE, WAS NOT ACCOMMODATED WITH A LOWER BUNK BUT RATHER AN UPPER BUNK ON A UPPER TIER IN CELL 7D-14U AND SUFFERED A SEIZURE EPISODE JUST 4 DAYS LATER ON FEBRUARY 10, 2016.

40. PLAINTIFF'S FEBRUARY 10, 2016, SEIZURE EPISODE EXACERBATED HIS INJURIES AND INFLICTED NEW INJURIES. THROUGHOUT HIS CCDC RESIDENCY, DESPITE EXHAUSTIVE REQUESTS AND GRIEVANCES DIRECTED TO WILLIAMSON AND OTHER NAPHCARE DEFENDANTS, PLAINTIFF HAD NOT RECEIVED ADEQUATE PAIN MANAGEMENT NOR HAD HE BEEN PROVIDED TREATMENT FROM ANY SPECIALTY DOCTOR FOR OVER A YEAR DESPITE NUMEROUS REQUESTS AND GRIEVANCES TO WILLIAMSON AND NAPHCARE DEFENDANTS.

41. PLAINTIFF HAD FURTHER BEEN HOUSED ON UPPER BUNKS AS COKER, HOGAN, DELACRUZ, GOINS, CADET, C. SMITH, GALICIA, MALCOLM, JONES, CARDNER, GEBREY, PEOPLES, EVANGELISTA, PLAYER, AKHTAR, MCCLAIN, W. YADAO, E. ACEVEDO, GONZALES, VERTNER, CANTO, MURRIEL, JACKSON, VANDERWAAG, ALBERTO, GONZALEZ, MANDING, TILAHUN, HALL, LAITA, TADEO, WILLIAMSON AND OTHER DOES REFUSED TO REHOUSE HIM SAFELY TO LOWER BUNKS DESPITE THE IMMINENT RISKS. EACH OF THESE DEFENDANTS, IN THE PROPER EXERCISE OF THEIR DUTIES, HAD THE AUTHORITY AND POWER TO REHOUSE PLAINTIFF SAFELY OR CAUSE HIS REHOUSING.

42. DESPITE PLAINTIFF'S REQUESTS, DEFENDANTS REFUSED TO TENDER ANY PURPORTED POLICIES AUTHORIZING ACTIONS AND OMISSIONS DESCRIBED AS HOGAN, COKER, CADET AND OTHER DEFENDANTS REMAINED UNWILLING TO DISCLOSE SUCH. PLAINTIFF, DESPITE THE KNOWLEDGE OF DEFENDANTS LISTED IN PARAGRAPH 41, OF HIS DISABILITIES, WAS CONVERSELY MADE TO HOUSE ON UPPER TIERS AND UPPER BUNKS CAUSING FURTHER TO HIS ALREADY DAMAGED LEFT WRIST, SPINE AND NECK.

43. PRIOR TO APRIL 20, 2016, PLAINTIFF WAS INAPPRO-PRIATELY ASSIGNED TO 5B-12U AN UPPER BUNK AS A SEIZURE PATIENT BY C. SMITH AND CERTAIN DOES. DESPITE SEVERAL REQUESTS TO BE REHOUSED IN A SAFER BED, NAMELY LOWER BUNK TO COKER, DELACRUZ, HOGAN, GOINS, WILLIAMSON, CADET, C. SMITH AND CERTAIN DOES, HE WAS MADE TO CONTINUE HOUSING ON UPPER BUNKS AS "INMATES CANNOT CHOOSE HOUSING AS HOUSING IS BASED ON THE NEEDS OF THE FACILITY," PER 1 OR MORE OF THE ABOVE DEFENDANTS.

44. ON APRIL 20, 2016, WHILE ATTEMPTING TO ASCEND TO HIS ASSIGNED BUNK USING HIS LEFT MOBILITY IM-PAIRED HAND EXTENSIVE PAIN CAUSED HIM TO RETRACT HIS HAND RESULTING IN HIS FALL AND STRIKING HIS HEAD, BACK, NECK, WRIST AND LEFT SHOULDER AND UNCONSCIOUSNESS. THIS FALL CAUSED PROTRACTED, SEVERE, SIGNIFICANT AND OTHERWISE UNBEARABLE PAINS AND EXACERBATED HIS NECK, BACK AND WRIST CONDITIONS.

45. PLAINTIFF'S ASSIGNED CELLMATE ATTEMPTED TO SUMMON HOGAN VIA EMERGENCY CALL LITE A TOTAL OF 3 TIMES TO NO AVAIL AS HOGAN TURNED THE LIGHT OFF IGNORING IT AND HIS TRAINING OF CADETS TRUMPED PLAINTIFF'S MEDICAL WEL-FARE. A SHORT TIME LATER PLAINTIFF CAME TO.

46. ON APRIL 21, 2016, PLAINTIFF EXPERIENCED A TERRIFYING ASTHMA ATTACK. HE ACTIVATED HIS CELL EMERGENCY CALL LIGHT SUCCESSFULLY AS GOINS RESPONDED TO DISCOVER PLAINTIFF IN DISTRESS. GOINS CALLED THE ON-DUTY NAPHCARE NURSE AT 1:05 A.M. WHO CONVEYED PLAINTIFF HAD NO ORDER FOR AN INHALER. RATHER THAN SECURING AN ORDER FROM A NAPHCARE-PHYSICIAN AND RESPONDING TO PLAINTIFF'S LOCATION, THE NURSE ADVISED GOINS TO INFORM PLAINTIFF THAT HE WOULD SEE WILLIAMSON "TOMMOROW." SUBSEQUENTLY PLAINTIFF PANICKED AND FELL UNCONSCIOUS FROM INABILITY TO BREATH.

47. ON APRIL 22, 2016, WHITE ENCOUNTERED WILLIAMSON. AT SAID ENCOUNTER HE ATTEMPTED TO ADDRESS ALL INCURRED INJURIES/MEDICAL ISSUES. WILLIAMSON REFUSED TO ADDRESS THEM ADVISING PLAINTIFF THAT HE WAS THERE FOR AN ASTHMA ISSUE, NOTHING ELSE. WILLIAMSON ADVISED WHITE TO SUBMIT A MEDICAL REQUEST. ALTHOUGH WHITE SUBMITTED SAID REQUEST, HIS INJURIES WERE NOT TREATED OR ATTENDED TO BY WILLIAMSON. RATHER THAN REFER WHITE FOR A MRI TO DETECT THE NERVE AND TENDON DAMAGES, WILLIAMSON CONVERSELY ORDERED A X RAY OF WHITE'S BACK KNOWING WHITES ISSUE WAS NOT SKELETOL.

48. BETWEEN APRIL 20, 2016 AND MAY 10, 2016, NUMEROUS DOES, COCH, NAPHCARE, LVMPD, COKER, HOGAN, GOINS, WILLIAMSON, C. SMITH, CARDNER, MALCDEM, GALICIA, GEBREY, YADEO, LAFFA, HALL AND TILAHUN WERE MADE AWARE INFORMALLY OR FORMALLY OF CONTINUING HOUSING RISKS OF WHITE AS A SEIZURE PATIENT ASSIGNED TO TOP BUNK. THESE PARTIES WERE ALSO AWARE OF WHITE'S DESIRE TO MOVE. EACH FAILED AND REFUSED TO MOVE HIM. SOME INSISTING THAT INMATES CANNOT REQUEST OR CHOOSE HOUSING AND NOTWITHSTANDING HIS IMMINENT RISKS. WILLIAMSON ADVISED WHITE "THIS IS JAIL AND THATS THE LUCK OF THE DRAW." ON MAY 10, 2016, WHITE SUFFERED ANOTHER SEIZURE FROM UPPER BUNK. ALTHOUGH HE ADVISED NAPHCARE DOES AND SOUGHT TREATMENT FOR INCURRED INJURIES, ESSENTIALLY HE WAS REBUFFED. IN HIS MEDICAL REQUEST DATED MAY 12, 2016, WHITE CONVEYED:

49.      "I AM IN PARALYZING PAIN AND AGONY.
         MY VALLEY FEVER IS PROGRESSING DUE TO
         LACK OF MEDICINE. I NEED TO SEE THE
         DOCTOR AND SPECIALIST TO TREAT MY INJUR-
         IES AND CONDITIONS AS THEY DEFINATELY
         ARE GETTING WORSE. IDE RATHER BE DEAD
         THEN SUFFER PAIN OF THIS MAGNITUDE
         THAT CCDC STAFF REFUSE TO EFFECTIVELY
         TREAT. I ALSO HAD ANOTHER SEIZURE
         2 DAYS AGO AND HAVE INJURIES."

50. NAPHCARE DOES RESPONSE TO THE URGENT CONCERNS AND WHITE'S INJURIES WAS AS FOLLOWS:

         "IN CUSTODY SINCE 2/3/16 SEEN BY PROVIDER
         (PHYSICIAN) 2/9/16, 2/15/16, 4/7/16, 4/22/16 NO
         HISTORY OF ABOVE DISEASE, PLEASE FILL OUT
         ATTACHED RELEASE OF INFORMATION FORM
         WITH DOCTOR OR CLINIC WHERE ABOVE
         CONDITION WAS DIAGNOSED SO WE
         MAY OBTAIN RECORDS."

51. BY FOLLOW UP REQUEST IN EFFORTS TO HAVE HIS NEW INJURIES TREATED, ON MAY 13, 2016, WHITE SUBMITTED ANOTHER REQUEST STATING:

"LIKE REALLY! I NEED TO GET IN TO SEE THE DOCTOR TO GET TESTED AND EXAMINED AND HAVE SOME RADIOLOGY (MRI) DONE. I HAVE NEW INJURIES AND MY BACK, HEAD AND NECK CONDITIONS HAVE ONCE AGAIN BEEN AGGRAVATED BY MY MAY 10, 2016, SEIZURE EPISODE. I AM IN THE WORSE PAIN ALSO AND NEED PAIN RELIEF FAR BEYOND SIMPLE NSAIDS. AT TIMES MY PAIN GETS SO INTENSE THAT I URINE AND DEFECATE ON MYSELF. PLEASE REFER (ME) TO DOCTOR IMMEDIATELY."

52. NAPHCARE DOES RESPONSE WAS SIMPLY:

"MEDICATIONS ORDERED FOR ABOVE MEDICAL ISSUE.

- CONTINUE CURRENT TREATMENT
- ACTIVITY AS TOLERATED."

53. ON MAY 23, 2016, WHITE ENCOUNTERED WILLIAM-SON AND A NAPHCARE DOE. WILLIAMSON DEMANDED "WHAT'S YOUR DISABILITY?" WHITE CONVEYED SEVERAL BUT MOST PRESSING WAS SEIZURE DISORDER, LEFT WRIST CONDITION AND NECK AND BACK. WILLIAMSON REJECTED THESE CONDITIONS AS DISABILITIES. WHITE CONVEYED THE INTENSITY OF PAIN SEEKING REINSTATEMENT OF PAIN MANAGEMENT SPECIALISTS' ORDERED PAIN MEDS AS THEY SUPPRESSED PLAINTIFF'S PAIN. WILLIAMSON ADVISED "MEDICALLY THIS IS MY JAIL WHAT I SAY GOES, THE HELL WITH YOUR SPECIAL-ISTS' ORDERS THEY DONT WORK HERE! WHEN PLAINTIFF SPOKE OF HIS SEIZURE DISORDER AND UPPER BUNK ASSIGNMENT WILLIAM-SON ADVISED "THAT IS BETWEEN YOU AND CUSTODY. IF YOU PISSED THEM OFF, LIVE WITH IT!"

54. FOLLOWING HIS ENCOUNTER WITH WILLIAMSON AND IN THE P.M. HOURS OF MAY 23, 2016, WHITE CONVEYED HIS NEED FOR A LOWER BUNK TO HOGAN WHO WAS IN HEARING DISTANCE OF WHITE. HOGAN BECAME EXTREMELY HOSTILE ASKING "WHAT THE FUCK DO YOU WANT? CANT YOU SEE IM BUSY HANDLING THIS SITUATION. DONT FUCKEN BOTHER ME IM FUCKEN BUSY. YOU CAN FUCKEN WAIT. YOU'RE PROBABLY ASKING ME THE SAME SHIT (BED MOVE). IF SO, IT'S STILL A "NO!""

55. DURING AFTERNOON DAYROOM ON MAY 24, 2016, WHITE ENCOUNTERED CADET WHO CONFRONTED HIM ON LEGAL MATERIALS BEARING BOTH PLAINTIFF AND AMANDA SEXTON (HIS FIANCE)'S NAMES SUBMITTED TO LAW LIBRARY FOR COPYING. WHITE ADMITTED AUTHORING THE LEGAL PLEADINGS. CADET ADVISED WHITE THAT NEITHER HE NOR SEXTON HAVE NO LEGAL RIGHT TO ASSIST EACH OTHER NOR TO LITIGATE TOGETHER. WHITE WAS ADVISED TO STOP OR THINGS WOULD CERTAINLY GET UGLY. WHITE ADJUSTED THE CONVERSATION TO HIS NEED TO DESPERATELY REHOUSE DUE TO SEIZURES AND UPPER BUNK ASSIGNMENT IN LIGHT OF THE FACT, THAT AS A SERGEANT, CADET WAS A SUPERVISOR. CADET ADVISED THAT HE WAS NOT HERE FOR THAT. WHITE SOUGHT THE RETURN OF HIS LEGAL MATERIAL. CADET ADVISED HE "AINT GETTING SHIT" AS ITS GOING INTO WHITE'S PROPERTY. SUCH WAS DELIBERATELY DONE AS RETALIATION AND IN EFFORTS TO SABOTAGE, OBSTRUCT AND HAMPER ACCESS TO THE COURTS.

56. IN THE EVENING OF MAY 24, 2016, DURING LAUNDRY EXCHANGE WHITE ADVISED HOGAN OF AURORAS BEING EXPERIENCED BY WHITE WHICH ARE EARLY INDICATORS THAT A SEIZURE WOULD BE ON-COMING. WHITE AGAIN PRESSED HOGAN FOR A LOWER BUNK TO NO AVAIL. AS PREDICTED WHITE SUFFERED ANOTHER SEIZURE ON UPPER BUNK. HOWEVER, DUE TO VERBALIZ- ING EARLY INDICATORS, DURING THE SEIZURE EPISODE HIS CELLIE WAS SUCCESSFUL IN PREVENTING HIM FROM FALLING FROM HIS BUNK. NONETHELESS, HE STILL MANAGED TO SPLIT HIS HEAD ON A STEEL LEDGE AND BADLY BIT HIS LIP AND TONGUE. HE FILED A MEDICAL REQUEST THAT NIGHT DETAILING HIS INJURIES. HE GOT NO RESPONSE UNTIL 10 DAYS LATER ON JUNE 03, 2016, AT WHICH POINT HE WAS ADVISED TO FILE A GRIEVANCE. HE WAS NOT PROVIDED ANY CARE FOR HIS INJUR- IES FROM ANY NAPHCARE DEFENDANT.

57. ON JUNE 01, 2016, ONE WEEK LATER OF WHITE'S SUBMISSION OF HIS MEDICAL REQUEST, GALICIA ENCOUNTERED WHITE. HE SOUGHT TO SEE WHITE'S INJURIES NOTED ON THE MEDICAL KITE. WHITE SHOWED GALICIA HIS HEALING INJUR- IES. GALICIA CLAIMED NOT TO HAD OBSERVED ANY INJURIES. WHITE GRIEVED SUCH FRAUDULENT ASSERTION.

58. ON JUNE 03, 2016, WHITE MAILED THE SECOND AMENDED COMPLAINT FOR FILING WITH THE COURT UTILIZING A COURT ENVELOPE. DOES VOIDED THE ARTICLE OF MAIL SENDING. THE CONTENTS TO THE 5TH FLOOR SERGEANT WHO OPENED AND CENSOR- ED THE DOCUMENT. ON INFORMATION AND BELIEF, PLAINTIFF BE- LIEVES THIS INDIVIDUAL TO BE SERGEANT ROGERS. THE SECOND AMENDED COMPLAINT AMONG OTHERS ENLISTED COKER, HOGAN, GOINS, CADET AND ON INFORMATION AND BELIEF BECAME THE SUBJECT OF BANTER BETWEEN DEFENDANTS AND THEIR AGENTS.

59. ON OR ABOUT JUNE 05, 2016, WHILE RECEIVING MEDICATION WHITE SOUGHT THAT JONES MOVE HIM TO A LOWER BUNK DUE TO HIS SEIZURE CONDITION. JONES CONVEYED "I AINT MOVING SHIT" TO WHICH WHITE FILED A COMPLAINT AND ADVISED JONES OF HIS INTENT TO DO SO. WHITE FURTHER VOWED TO POSSIBLY ENLIST JONES AS A PARTY DEFENDANT IN A CIVIL ACTION. JONES STATED "I DONT GIVE A FUCK." UPON RECEIVING HIS MEDICATION AND HEADING TOWARD HIS CELL JONES CONVEYED "YOU'RE ON A 24! 1/. WHITE PASSED A LEGAL DOCUMENT TO CELL 10 WHILE NEARING HIS CELL. JONES SEIZED AND DISPOSED OF SAID DOCUMENT.

60. UPON COMPLETION OF PILL PASS JONES CONFRONTED WHITE IN HIS CELL AFTER EJECTING WHITE'S CELLIE COMMANDING "GO SIT AT A TABLE." AS HE STOOD WHITE WAS CHALLENGED AS JONES CALLED HIM "A LITTLE BITCH" AND CHALLENGED HIM "WHAT YOU GONNA DO PUNK, COME ON GIVE ME A REASON," WITH HIS RIGHT HAND PRIOR TO EXITING JONES FORCEFULLY SLAPPED WHITE'S LEFT FACE CAUSING HYPER EXTENSION OF HIS ALREADY INJURED NECK. JONES AGAIN CALLED WHITE "LITTLE BITCH" BEFORE EXITING INSTRUCTING WHITE'S CELLIE TO RETURN TO THE CELL. WHITE'S NECK CONDITION REMAINED UNTREATED BY NAPHCARE DEFENDANTS THRU HIS DEPARTURE.

61. LVMPD CHIEF LOMBARDO WAS PLACED ON NOTICE OF THIS MALICIOUS, SADISTIC, ARBITRARY AND COMPLETELY UNJUSTIFIED USE OF FORCE AND WHITE SOUGHT FULL SCALE INVESTIGATION AND PROHIBITION OF FURTHER CONTACT WITH JONES. HE FURTHER SOUGHT PRESERVATION OF VIDEO FROM THIS DATE. LOMBARDO FAILED TO REPLY OR INTERCEDE ALTHOUGH WHITE SOUGHT A 5 YEAR COMPLAINT RETENTION IN JONES FILE AND THAT ONLY A CAPTAIN MAKE A REPLY, THE COMPLAINT WAS INTERCEPTED AND RESPONDED TO BY A SERGEANT. ON INFORMATION AND BELIEF WHITE BELIEVES THIS SERGEANT TO BE ROGERS AND FURTHER BELIEVES THAT JONES FAILED TO REPORT THE ABOVE INSTANCE OF USE OF FORCE.

62. ON JUNE 12, 2016, CURRAN UNOCCUPIED 5B-12L WHICH WAS REASSIGNED TO MIRANDA ON JUNE 13, 2016, UNTIL HIS JULY 27, 2016, TRANSFER TO NDOC. IN A JUNE 13, 2016 CONTACT, WHITE ADVISED A SERT SERGEANT OF MOOTNESS IN HIS HOUSING ISSUES. HOWEVER, GIVEN THE PETINESS OF RULE ENFORCEMENTS AT CCDC, WHITE RETURNED TO HIS "LEGALLY ASSIGNED" BED FEARING BEING SET UP BY CUSTODY. SEE CCDC INMATE HANDBOOK LEVEL 1, § 117; LEVEL 2 §§ 239, 245 AT PP. 39-45.

---

1. A "24" IS A SUMMARY IMPOSED PUNISHMENT WITHOUT DUE PROCESS WHERE A STAFF CONFINES A INMATE IN HIS QUARTERS FOR 24 HOURS ABSENT ANY HEARING TRIBUNAL OR OPPORTUNITY TO BE HEARD OR PRESENT EVIDENCE IN DEFENSE.

14

63. ON JUNE 30, 2016, WHITE ENCOUNTERED WILLIAM-SON WHO JUSTIFIED HIS FAILURE TO TREAT WHITE ON ALLEGED FACTS THAT HE LACKED WHITE'S MEDICAL HISTORY FROM OTHER TREATING PHYSICIANS AND SOME 4 MONTHS AFTER RECEIVING WHITE. WILLIAMSON INSTRUCTED WHITE TO COMPLETE RELEASE OF INFORMATION (ROI) FORMS FOR ALL PREVIOUS PROVIDERS TO WHICH HE COMPLIED IN THE A.M. ON JULY 01, 2016. AFTER DINNER OFFICER PHILLIPS ESCORTED GALICIA TO WHITE'S CELL. GALICIA CONVEYED THAT DUE TO WHITE AND HIS FIANCE SEXTON SUING, HE WAS NOT ACCEPTING THE ROI'S DESPITE WILLIAMSON'S ORDER. IN LIGHT OF THE 4TH OF JULY WEEKEND, GALICIA'S ACT OF RETALIATION EFFEC-TIVELY INTERFERRED WITH AND DELAYED WHITE'S TREAT-MENT FOR SERIOUS AND LIFE-THREATENING CONDITIONS AND DELAYED PRESCRIPTION OF VALLEY FEVER MEDICA-TION. NOT THAT PLAINTIFF HADN'T SUFFERED ENOUGH GRIEF AND MISERY UP TILL SAID POINT.

64. ON JULY 13, 2016, UPON REPORTING TO DUTY AT APPROXIMATELY 5:30 P.M., HOGAN CONVEYED:

"IF I HEAR NOISE COMING OUT OF ANY OF THESE CELLS, I'M NOT LETTING NOONE OUT FOR RECREATION. I DON'T GIVE A FUCK ABOUT VIOLATING YOUR CONSTITUTIONAL RIGHTS. IF YOU WANT ME TO CALL MY SER-GEANT TO BACK ME I WILL. I DON'T HAVE TO GIVE YOU SHIT!"

HOGAN WAS INSINUATING EITHER WHITE OR MERILL SMITH (5B-13L) WHOM'S DIRECTION HE STARED.

65. ON JULY 20, 2016, WHITE WAS PROVIDED A CHEST X RAY REVEALING IRREGULAR ACTIVITIES IN HIS LUNGS. ACCORDING TO DOE-12 AND KOMACSAR. DOE-12 PURPORTED TO DOCUMENT WHITE'S HISTORY OF VALLEY FEVER AND HIS COMPLAINTS OF PAIN TO HIS NECK, BACK, LEFT SHOULDER AND LEFT WRIST AND HIS BRACE. DOE-12 ADVISED WHITE THAT HE WOULD FOLLOW UP TO NO AVAIL AS PLAINTIFF WAS NOT PROVIDED HIS BRACE DESPITE CONSISTENT REQUESTS AND COMPLAINTS UNTIL APRIL 19, 2017.

66. A LEFT WRIST X RAY OF WHITE WAS TAKEN ON JULY 22, 2016 GIVEN THE FACT THAT MIRANDA UNOCCUPIED 5B-12 LOWER BUNK, INMATE WESLEY KNG WAS ASSIGNED TO SUCH UNTIL HIS DEPARTURE WHEREIN INMATE DAVID PEARL-STEIN OCCUPIED SUCH UNTIL WHITE WAS OFFICIALLY ASSIGN-ED TO THE LOWER BUNK ON SEPTEMBER 20, 2016. ALL LPN DEFENDANTS WERE AWARE OF WHITE'S UPPER BUNK ASSIGNMENT FROM APRIL 18, 2016 THRU SEPTEMBER 20, 2016 AND CHOSE TO IGNORE IT.

67. ON JULY 29, 2016, WHITE AGAIN SUFFERED ANOTHER SEIZURE FROM HIS UPPER BUNK (5B-12U) RESULTING IN STRIKING HIS RIGHT ELBOW AND BREAKING HIS RIGHT HAND. HE SUBMITTED NUMEROUS KITES AND GRIEVANCES FROM JULY 29, 2016 THRU AUGUST 04, 2016. UPON RECEIVING THE INITIAL KITES/GRIEVANCES RECEIVED BY GALICIA ON JULY 30, 2016, HE INSPECTED WHITE'S SEVERELY SWOLLEN AND OBVIOUSLY BROKEN RIGHT HAND AND IGNORED THE BREAK CONVEYING THAT IF IT WERE BROKEN WHITE WOULD NOT BE ABLE TO MOVE IT. DEFENDANT TADEO ALSO EXAMINED WHITE'S RIGHT HAND CONCLUDING WITHOUT ANY X RAY THAT WHITE'S PAIN WAS BEING CAUSED FROM A "OLD FRACTURE AND NOT A NEW BREAK." NEITHER TADEO OR GALICIA ARE M.D.s, ORTHOPEDIC DOCTORS NOR X RAY TECHNICIANS AND THEIR OPINIONS AMOUNTED TO MERE SPECULATION. GIVEN ITS EXCESSIVE SWELLING IT WAS READILY APPARENT THAT WHITE'S HAND WAS BROKEN AS HE CONTINUED TO INSIST.

68. FINALLY AND SOME 6 DAYS LATER ON AUGUST 04, 2016, AND AFTER MOUNTING COMPLAINTS, WHITE RECEIVED AN X RAY OF HIS RIGHT HAND CONFIRMING INDEED THAT IT WAS BROKEN. DESPITE SAID BREAK AND KNOWLEDGE, NO NAPHCARE DEFENDANT WITH MEDICAL AUTHORITY PERMITTED WHITE TO SEE A ORTHO OR PHYSICIAN IN WHICH TO SPLINT OR CAST THE BREAK. DESPITE SIGNIFICANT SWELLING, WILLIAMSON, TADEO, GALICIA AND OTHER NAPHCARE DOES DELIBERATELY IGNORED THE SERIOUS AND READILY APPARENT BREAK INJURY. GIVEN IT'S SIGNIFICANT SWELLING AND AFTER READING THE X RAY RESULTS WILLIAMSON KNEW OF AND FAILED TO TREAT WHITE'S BROKEN HAND. RATHER, DESPITE KNOWLEDGE OF ITS TOTAL INEFFECTIVENESS AS MADE APPARENT BY A APRIL 13, 2016 MEDICAL KITE SUBMITTED BY WHITE, WILLIAMSON IRRESPECTIVE PRESCRIBED NAPROXYN FOR THE BONE BREAK. WHITE WAS MADE TO LANGUISH IN INTOLERABLE WANTON PAIN UNTIL SUCH SERIOUS MEDICAL CONDITION SUBSIDED WITH WHITE'S BONE FUSING BACK TOGETHER.

69. FOR CLOSE TO A MONTH, ON AUGUST 25, 2016, FOLLOWING PERSISTENT COMPLAINTS RELATING TO HIS RIGHT HAND, WHITE WAS SUMMONED TO SICK CALL BY WILLIAMSON WHO CONTINUED TO PERSIST THAT WHITE'S HAND WAS NOT BROKEN AS HE JUST "SEEN WHITE AT THE KIOSK." WILLIAMSON FALSELY ADVISED WHITE THAT THE X RAYS FAILED TO INDICATE THAT THERE WAS ANYTHING WRONG WITH WHITE'S HAND. WHITE FURTHER CONTINUED HIS COMPLAINTS OF UPPER BUNK HOUSING AND CONTINUED PRESSURE ON BOTH HANDS. WILLIAMSON FRAUDULENTLY REPORTED THAT WHITE WAS ON A LOWER BUNK AND LOWER TIER ALTHOUGH RECORDS DEMONSTRATED TO THE CONTRARY. ANOTHER X RAY WAS TAKEN CONFIRMING THE BREAK. DESPITE SUCH NO NAPHCARE STAFF WITH AUTHORITY REFERRED WHITE TO ORTHO FOR EXAM, SPLINT OR CASTING.

70. IN EFFORTS TO APPEASE WHITE, WILLIAMSON OR-
DERED WHITE'S ANTI-FUNGAL DIFLUCAN GIVEN WHITE'S
EXCESSIVELY SWOLLEN LEFT DORSAL FROM INFECTION. WILLIAMSON
REFUSED TO ORDER WHITE'S LEFT HAND BRACE.

71. ON OCTOBER 25, 2016, IN BEING SUMMONED TO
COURT, ALVARDO IN THE PRESENCE OF HARDIN, WITHOUT NEED OR
JUSTIFICATION, ACCOSTED PLAINTIFF FORCEFULLY GRABBING THE
BACK OF HIS ALREADY INJURED NECK AND PUSHED HIS FACE INTO
THE CONCRETE WALL WITH SUBSTANTIAL PRESSURE WHILE YELLING
AT PLAINTIFF USING RACIAL EPITHETS. WHITE IMMEDIATELY
CONVEYED TO ALVARDO THAT HE WAS HURTING HIM TO NO AVAIL.
THE CONTINUED PRESSURE ON WHITE'S NECK PRODUCED A MUFFLED
POP SOUND AND INTENSE BURNING SENSATION TO WHITE'S
NECK. ALTHOUGH HARDIN HAD OPPORTUNITY TO INTERVENE OR
REPORT THE INSTANCE OF FORCE, HE FAILED TO DO SO AND DE-
LIBERATELY OMITTED THE USE OF FORCE OUT OF HIS CAB
REPORT TO COVER UP AND CONCEAL ALVARDO'S UNWARRANTED
FORCE AND RACIAL EPITHETS.

72. ON OCTOBER 29, 2016, POLLARD INSTRUCTED
PLAINTIFF TO "ROLL IT UP" PROVIDING A MERE 90 SECONDS.
WHEN POLLARD RETURNED PLAINTIFF HAD NOT COMPLETED. DUE TO HIS
LEFT HAND DISABILITY WHITE EXPLAINED TO POLLARD THAT HE
WAS INCAPABLE OF MOVING AS QUICK AS POLLARD WOULD LIKE.
POLLARD CONVEYED THAT HE WOULD PACK IT AND SOUGHT THAT
PLAINTIFF CUFF UP. POLLARD CONVEYED THAT WHITE DOESN'T LIS-
TEN AND CONVEYED PROSPECTS OF WHITE BEING OVER PUNISHED
FOR A RULE VIOLATION. IN RETURN WHITE VOWED TO RESPOND
WITH COURT ACTION PROTECTED BY HIS 1ST AMENDMENT. IN WHICH
TO PUNISH WHITE AND RETALIATE, POLLARD MALICIOUSLY, DELIBERATELY
AND SADISTICALLY APPLIED THE HANDCUFFS EXCESSIVELY TIGHT
CUTTING INTO WHITE'S LEFT SWOLLEN HAND. WHITE COMPLAINED
AND REQUESTED LOOSENING OF THE CUFFS IN THE PRESENCE OF SEV-
ERAL INMATES AND WAS DELIBERATELY IGNORED BY POLLARD. POLLARD
DELIBERATELY KEPT WHITE UNDER SAID EXTREMELY PAINFUL CONDI-
TIONS FOR APPROXIMATELY 20-30 MINUTES.

73. CONTEMPORANEOUS WITH AND SUBSEQUENT TO THE ABOVE
PLED VIOLATIONS, PLAINTIFF DIRECTED A LITANY OF GRIEVANCES AND
REQUEST FORMS ON EACH OF THE ABOVE PLED SUBJECTS. THESE GRIEV-
ANCES AND REQUESTS WERE DIRECTED TO CLASSIFICATION DOES,
LIEUTENANTS, CAPTAINS, LVMPD CHIEF LOMBARDO, NAPHCARE AND IT'S
STAFF, WILLIAMSON, KOMACSAR, GALICIA, COKER, HOGAN, CHIEF DEP-
UTY FACILITY OPERATIONS, AND OTHER PARTIES. MANY GRIEVANCE RE-
QUESTS HAVE REMAINED UNANSWERED. THOSE OF A MORE SENSI-
TIVE NATURE WERE DESTROYED, HIDDEN OR DISCARDED. PLAINTIFF
RECEIVED NO CORRECTIVE ACTION FROM DEFENDANTS TO RE-
SOLVE THE ISSUES NOR HAD THE GRIEVANCES OR KITES BEEN
RETURNED IN EFFORTS TO CONCEAL CULPABILITY AND AS RE-
TALIATION.

74. PLAINTIFF HAD CONTINUED PAINFULLY TO BE WITHOUT HIS BRACE, HE STILL WASN'T PROVIDED PAIN MANAGE- MENT OR HIS PRESCRIBED EYEWEAR CAUSING SIGNIFICANT PAIN. WHILE AT CCDC HE REMAINED UNDER STATE OF TORTURE, HE WASN'T PROVIDED HIS BRACE UNTIL APRIL 19, 2017, SOME 15 MONTHS AFTER HIS CCDC ARRIVAL.

75. PLAINTIFF SUFFERS SIGNIFICANT, SEVERE, CON- STANT AND RECURRENT PAINFUL MIGRAINS WHICH BECOME SO INTENSE AND SEVERE TO CAUSE NOSE BLEED AND HEARING LOSS. THIS IS THE DIRECT CAUSES OF LACKING PRESCRIPTION GLASSES AND CONSTANT STRAIN OF HIS EYES IN ADDITION TO HISTORY OF HEAD TRAUMA.

76. PLAINTIFF INCURRED PROLONGED, MANIFEST, AGONIZ- ING, SUBSTANTIAL AND WANTON CHRONIC PAIN TO HIS NECK, BACK, HEAD, LEFT SHOULDER AND WRIST/HANDS WHICH CONSTITUTED GRAT- UITOUS CRUELTY. NAPHCARE DOES, WILLIAMSON, CORIZON HEALTH DOES, SAAVEDRA, CALDWELL AND OTHER DOES REFUSED AND RETAIN- ED ADOPTED POLICY AND CUSTOM REFUSING ALL NARCOTIC BASED MEDICATIONS DESPITE HOW SERIOUS/ SEVERE THE CONDITION AND DESPITE AND IRRESPECTIVE OF HOW SEVERE THE PAIN.

77. VARIOUS NAPHCARE EMPLOYEES INCLUDING KOMACSAR, GALICIA, WILLIAMSON, CARDNER, GEBREY, PEOPLES, EVAN- GELISTA, PLAYER, AKHTAR, McCLAIN, VU, YADAO, E. ACEVEDO, GONZALES, VERTNER, CANTO, MURRIEL, JACKSON, VANDERLAAG, ALBERTO, GONZALEZ, MANDING, TILAHUN, HALL, LAITA, TADEO AND CERTAIN DOES WHOLLY INDIFFERENCED PLAINTIFFS MEDICAL CARE, TREATMENT AND SAFETY AS DESCRIBED AND FOR EXTENDED DURATION. THIS IS NOT THE TYPE OF THING THAT GOES UNNOTICED BY SUPERVISORS AND POLICY MAKING OFFICIALS. ADEQUATE MEDI- CAL CARE REQUIRES TREATMENT BY "QUALIFIED" PERSONNEL WHO PROVIDE SERVICES THAT ARE OF A QUALITY ACCEPTABLE WHEN MEASURED WITH PRUDENT PROFESSIONAL STANDARDS IN THE COMMU- NITY, TAILORED TO A INMATE'S "PARTICULAR NEEDS" AND THAT ARE BASED ON MEDICAL CONSIDERATIONS NOT BLANKET POLIC- IES.

78. DEFENDANTS RULES, CUSTOMS, POLICIES AND PRACTICES RESTRICTING MEDICAL CARE ON GROUNDS UNRELATED TO PLAINTIFF'S MEDICAL NEEDS, HOLDING AND ABRUPTLY DISCONTINUING PLAINTIFF'S PAIN MEDICATIONS WITHOUT EXPLANATION, EXAMINATION OR REVIEW OF PERTINENT RECORDS CONSTITUTED DELIBERATE INDIFFERENCE. ALL DEFENDANTS, WHETHER CUSTODY, MEDICAL OR OTHERWISE HAD REASON TO KNOW OF THE FACTS CREATING HIGH DEGREE OF RISKS OF PHYSICAL HARM TO PLAINTIFF (I.E., UPPER BUNKS, HARD CELL, LACK OF PAIN MANAGEMENT, DELAY IN PROVIDING HIS BRACE AND ACCESS TO A COCCI SPECIALIST, DELAY IN PRESCRIBING HIS ANTI- FUNGAL DIFLUCAN, ETC.) AND ACTED IN CONSCIOUS DISREGARD OR INDIFFERENT TO THE RISKS.

79. NAPHCARE, WILLIAMSON AND OTHER DOES' RETAINED ADOPTED CUSTOMS AND POLICY OF REFUSING TO MAKE SPECIALTY REFERRALS FOR PLAINTIFF TO NECESSATED SPECIALISTS REQUIRED BY HIS CONDITIONS INCLUDING BUT NOT LIMITED TO NEUROLOGISTS, PAIN MANAGEMENT SPECIALISTS, ORTHO, VALLEY FEVER SPECIAL-IST, PHYSICAL THERAPY SPECIALIST, SPINAL AND NECK SPECIAL-IST, ETC. THESE CUSTOMS AND POLICIES CAUSED THE UNJUSTI-FIED DELAY IN REFERRING PLAINTIFF TO HAND AND COCCI SPECIALISTS AND THE NEUROLOGISTS. EVEN AFTER THESE SUCCESSFUL REFERRALS. WILLIAMSON REFUSED TO IMPLEMENT AND ADHERE TO THE ORDERS OF SAID SPECIALISTS.

80. ALTHOUGH WHITE CONTINUED TO HAVE MEDICAL NECESS-ITY FOR HIS BRACE, IT WAS NOT GIVEN UNTIL APRIL 19, 2017 SOME 439 DAYS AFTER BEING PLACED INTO COCN, COHN, HPD, LVMPD, NAPHCARE, MOERS, KOMAC SAR, GALICIA, WILLIAMSON, CORIZON HEALTH, SAAVEDRA, CALDWELL, NISWONGER, ADAMS AND GREGGIS CUSTODY. THEY PERSISTED IN REFUSING TO PROVIDE IT. FOR SOME 200+ DAYS AND DESPITE NECESSITY AND OBVIOUS PAINFUL MOUNTING INFECTION, DEFENDANTS REFUSED TO ISSUE WHITE HIS ANTI-COCCI MEDICATION UNTIL AUGUST 25, 2016. AS A GENERAL PHYSICIAN WILLIAMSON REMAINED UNQUALIFIED AS A SPECIALIST IN EIT-HER FIELDS OF MEDICINE AND REMAINED FULLY AWARE OF PLAINTIFF'S DIRE NEED TO BE REFERRED TO A COCCI SPECIAL-IST AND DELIBERATELY, WRECKLESSLY AND CONSCIOUSLY REFUSED TO DO SO IN ACCORDANCE WITH POLICY AND IN WHICH TO MINIMIZE COUNTY AND NAPHCARE COSTS, WHICH SUBSTANTIALLY DELAYED SPECIALTY REFERRALS BEFORE THEY FINALLY WERE ORDERED.

81. BETWEEN JANUARY 22, 2016 AND DECEMBER 06, 2016, COMBINED PLAINTIFF SUBMITTED IN EXCESS OF 100 MEDICAL RE-QUESTS/GRIEVANCES AND CUSTODY REQUESTS/GRIEVANCES WHICH SOUGHT RELIEF ON TOPICS AS INADEQUATE MEDICAL CARE, ADA ACCOMMODATIONS, HARD CELL PLACEMENT, PAIN MANAGEMENT, CLASSIFICATION, WRIST BRACE, PAIN MANAGEMENT THERAPY, PAIN AND SUFFERING, GLASSES, CUFFING OVER LEFT DORSAL, LOSS OF ROM IN NECK AND WRIST, HOUSING ASSIGNMENT, UPPER BUNK DANGER, COCCI, USE OF FORCE, SPECIALTY CONSULTS, MEDICAL RECORDS, POLICY, IN-CELL INHALER POSSESSION, LEGAL SUPPLIES, GRIEVANCE INTERFERENCES, IDENTIFYING DOES, PHYSICAL THERAPY, EQUAL PROTECTION, RETALIATION, HOLE PLACEMENT AND BROKEN BONES. MANY HAVE BEEN OBFUSCATED AND/OR SELECTIVELY IGNORED AND UNADDRESSED AND PLAINTIFF TREATED AS A MERE NUISANCE. NONETHELESS, EACH OF THE ABOVE SUBMISSIONS PLACED DEFENDANTS ON NOTICE.

82. FOR A SUBSTANTIAL AMOUNT OF TIME PRIOR TO, CONTEMPORANEOUS WITH AND SUBSEQUENT TO EACH PLED VIOLATION, COCN, COHN, HPD, MOERS, LVMPD, WILLIAMSON, SAAVEDRA, CALDWELL, NAPHCARE, CORIZON HEALTH, PERRY, COLEMAN, CLARK, MENDOZA, HOPKINS AND CERTAIN DOES MAINTAINED, TOLERATED, EMBRACED, ACQUIESCED IN, RATIFIED AND CONDONED THE FOLLOWING DEFICIENT AND CONSTITUTIONALLY OFFENSIVE DE FACTO POLICIES, RULES, REGULATIONS, PROCEDURES AND CUSTOMS, AMONG OTHERS:

A). ACTIVELY AND EFFECTIVELY INTERFERRING WITH MEDICAL PRESCRIPTIONS/PROVISION BY RETAINING, UNNECESSARILY AND ARBITRARILY SEIZING MEDICALLY INDICATED AND PRESCRIBED APPARATUS' AS LEVERAGE AND PUNISHMENT WITHOUT JUST MEDICAL CAUSE;

B). RECEIVING FEDERAL FUNDING WHILE OPERATING SERVICES, PROGRAMS, ACTIVITIES AND OPPORTUNITIES IN CONTRAST TO ADA/RA MANDATES, OPENLY DISCRIMINATING AGAINST AND EXCLUDING DISABLED PERSONS FROM THE ENJOYMENT OF SERVICES, BENEFITS, PROGRAMS AND ACTIVITIES GUARANTEED THEM UNDER THE ADA/RA AND REFUSING TO ACCOMMODATE SAID PERSONS;

C). PERMITTING, WITHOUT FEAR OF REPRISAL OR ACCOUNTABILITY, ARBITRARY USE OF FORCE AND COVERING UP BY PERSONNEL AND ACTIVELY CONCEALING FORCE BY FAILING TO REPORT IT TO SUPERVISORY AUTHORITY;

D). FAILING TO TRAIN SUBORDINATE STAFF WITH RESPECT TO HONORING AND NOT SEIZING/CONFISCATING OR INTERFERRING WITH MEDICALLY RELIED ON APPARATUS' AND APPLIANCES POSSESSED BY ARRESTED PERSONS AND DETAINEES WHO ARE REGARDED AS BEING DISABLED UNDER THE ADA/RA;

E). REFUSING TO HONOR ACTIVE VALID PRESCRIPTIONS OF ARRESTEES AND DETAINEES AND PRACTICE OF A BLANKET "NO NARCOTIC" POLICY;

F). FAILING TO HOUSE MEDICALLY INJURED AND OBVIOUSLY ENTITLED INMATES/DETAINEES (IE., SEIZURE PATIENTS, DAMAGED SPINE PATIENTS, ETC.) TO LOWER LEVEL/LOWER BUNK HOUSING TO ACCOMMODATE RESPECTIVE MEDICAL RESTRICTIONS AND DISABILITIES;

20

6). REFUSING TO MAINTAIN A ACTIVE AND TIMELY MEDICAL IDENTIFICATION SYSTEM TO ENSURE LIFE SUSTAINING MEDICATIONS OF ARRESTEES AND DETAINEES PRESCRIBED WHILE FREE ARE PROVIDED AND DELIVERED IN THE INSTITUTIONAL ENVIRON- MENT IN A ADEQUATELY TIMELY FASHION;

H). REFUSING TO HONOR PRE-ARREST ORDERS OF ARRESTEES AND DETAINEES FOR SPECIALTY CLINICS THAT WERE OBVIOUSLY SUBJECT OF PRIVATE PHYSICIANS AND WHICH WERE INDEED MEDICALLY INDICATED;

I). PLACING DETAINEES IN PUNITIVE SEGREGATION DESPITE DISABILITY AND ABSENT ANY FORM OF DUE-PROCESS;

J). PRESCRIBING ALL PAIN PATIENTS THE "CURE ALL" PAIN PILL IBUPROFEN/TYLENOL/NAPROXEN DESPITE SEVERITY OF THEIR PAINS AND MEDICAL NEED FOR STRONGER PAIN MANAGEMENT ALTER- NATIVES;

K). ARBITRARILY, MALICIOUSLY AND CAPRICIOUSLY PLACING INJURED, DISABLED AND CRITICALLY HURT DETAINEES IN OVER-POPULATED/CONGESTED HARD CELLS FOR PROLONGED PERIODS OF CLOSE TO 3 DAYS ABSENT BEDDING, MATRESS, CUSHIONING, ECT., AND BASED ON A POLICY AND CUSTOM;

L). REFUSING TO PROVIDE DETAINEES AGGRIEVED BY HARD CELL PLACEMENT MEANS, ABILITY AND OPPOR- TUNITY TO GRIEVE BY ACTIVELY REFUSING TO PROVIDE FORMS AND WRITTING IMPLEMENTS WHILE IN HARD CELLS;

M). FAILING TO MONITOR AND RETAINING TROUBLESOME ABUSIVE STAFF WHO RETAIN ABUSIVE PROPENSITY AND WHO IGNORE RULES AND LAWFUL ENTITLEMENTS RETAINED BY DETAINEES UNDER THEIR CARE;

N). FOSTERING A CODE-OF-SILENCE AMONGST THE RANKS OF COCN, NAPHCARE, CORIZON HEALTH, COHN, LVMPD, ADAMS, GREGG, NISWONGER, WILLIAMSON, SAAVEDRA, CALDWELL, MOERS, CADET, FERRY, COLEMAN, HOPKINS, CLARK, MENDOZA, ROBINSON AND CER- TAIN DOES TO SUCH EXTENT THAT ABUSIVE PER- SONNEL'S CONDUCTS REMAINED UNREPORTED AS A PRACTICE;

21

O). ACTIVELY RETAINING STAFF WHO RETALIATE THROUGH VARIOUS FORMS OF CONDUCT INCLUDING PROPERTY SEIZURE, ASSAULT, GRIEVANCE LOSES, MEDICAL REFUSAL/DELAY/DENIALS/IN-TERFERENCE, ECT., FOR DETAINEES' ENGAGE-MENT IN FIRST AMENDMENT PROTECTED ACTIVITIES;

P). FAILING TO MAINTAIN AN EFFECTIVE COMPU-TERIZED IDENTIFICATION IN HOUSING SYS-TEM WHICH IMMEDIATELY ALERTS DEFENDANTS OF AN INMATE'S HOUSING RESTRICTIONS BASED ON DISABILITY AND WHICH FURTHER WOULD REFUSE TO PROCESS A MOVE OF A DISABLED INMATE TO A RESTRICTED HOUSING ASSIGN-MENT; AND,

Q). MINIMIZING COUNTY, NAPHCARE AND CORIZON HEALTH MEDICAL COSTS AND REMAINING LOYAL TO THEIR PRACTICES AND PERSISTENCE IN PROVISION OF COURSES OF TREATMENT KNOWN TO BE COMPLETELY INEFFECTIVE, INADEQUATE AND DELIBERATELY AND CONSCIOUSLY FAILING TO UNCOVER OR EFFECTIVELY TREAT DETAINEES' CONDITIONS PURPOSEFULLY SUBJECTING THEM TO GRATUITOUS CRUELTY AND RESTRICTING OTHERWISE EFFECTIVE MEDICAL CARE ON GROUNDS COMPLETELY UNRELATED TO DETAINEE MEDICAL NEEDS.


83. DEFENDANTS COHN, COCN, LVMPD, MOERS, NAPH-CARE AND CERTAIN DOES IMPLEMENTED SAID POLICIES, KNEW THEY EXISTED AND REASONABLY COULD FORESEE THAT THESE POLICIES, PRACTICES AND CUSTOMS WOULD INDEED HARM PLAIN-TIFF AS A DETAINEE AND VIOLATE HIS RIGHTS. PLAINTIFF INCURRED INJURIES AS A PROXIMATE RESULT OF DEFENDANTS ACTIONS, CUSTOMS AND POLICIES. THE ABOVE SET FORTH ACTS CONSTITUTED ROUTINE DE FACTO POLICIES OF DEFENDANTS. THESE POLICIES OF THE ABOVE DEFENDANTS DIRECTLY CONTRIBUTED TO, WERE THE PROXIMATE CAUSE AND MOVING FORCE BEHIND PLAIN-TIFF'S PAIN, SUFFERING, INJURIES, HARMS AND CONSTITUTIONAL VIOLATIONS. IN RETAINING AND ENFORCING SAID POLICIES WITH KNOWLEDGE THAT THEY WOULD CAUSE PLAINTIFF HARM, EACH ABOVE DEFENDANT WAS DELIBERATELY INDIFFERENT TO PLAINTIFF'S INJURIES FORESEEABLE TO MATERIALIZE.

84. THE ABOVE POLICIES WERE SO DEFICIENT THAT THE POLICIES THEMSELVES WERE REPUDIATIONS OF CONSTITUTIONAL RIGHTS AND WERE THE MOVING FORCE OF THE CONSTITUTIONAL VIOLATIONS. THESE DE FACTO POLICIES WERE CUSTOMS AND USAGES THAT WERE SO PERSISTENT, WIDE-SPREAD, LONG STANDING, PERMANENT, TOLERATED, MAINTAINED, EMBRACED, DEEPLY EMBEDDED AND WELL-SETTLED THAT THEY CONSTITUTED POLICY AND HAD THE FORCE OF LAW.

85. DEFENDANTS CONDUCTS, ACTIONS, INACTIONS AND OMISSIONS AS ALLEGED, VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE 1ST, 4TH, 5TH, 8TH AND 14TH AMENDMENTS AND WERE ALSO OFFENSIVE OF THE ADA/RA.

86. DEFENDANTS ACTIONS WERE CALCULATED, CALLOUS, MALICIOUS, SADISTIC AND WICKED. DEFENDANTS' ACTIONS AND/OR INACTIONS WERE COMPLETELY UNWARRANTED WITH CALLOUS INDIFFERENCE TO PLAINTIFF'S WELFARE AND WERE OBVIOUSLY SOLELY GEARED TO MINIMIZE COSTS WHILE PLAINTIFF UNNECESSARILY SUFFERED.

## LEGAL CLAIMS

## CLAIM 1
### 42 U.S.C. §1983

FIRST AMENDMENT U.S. CONSTITUTION, RETALIATION FOR ENGAGING IN 1ST AMENDMENT ACTIVITIES.

87. PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1 THRU 86, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A FIRST CLAIM FOR RELIEF, ALLEGES:

88. COCN, NAPHCARE, LVMPD, JONES, POLLARD, WILLIAMSON, CADET, GALICIA AND CERTAIN DOES KNOWINGLY ENGAGED IN AND WILLINGLY IMPLEMENTED, RATIFIED, ENFORCED, CONDONED, MAINTAINED OR ACQUIESCED IN POLICY RESULTING IN ADVERSE ACTS THEY KNEW VIOLATED PLAINTIFF'S RIGHTS.

A). ON MAY 24, 2016, CADET CONFRONTED PLAINTIFF RELATING TO LEGAL MATERIALS HE INTERCEPTED PERTAINING TO PLAINTIFF AND HIS FIANCÉ SEXTON. ON INFORMATION AND BELIEF, CADET READ THE CONTENTS OF THE SEIZED DOCUMENTS. ACKNOWLEDGING THAT PLAINTIFF WAS ENGAGED IN PROTECTED ACTIVITIES AND IN RETALIATION FOR DOING SO, CADET DIRECTED VEILED THREATS TO PLAINTIFF ADVISING PLAINTIFF TO STOP (LITIGATING) OR "THINGS WOULD CERTAINLY GET UGLY."

B). IN RESPONSE TO ORDERS OF WILLIAMSON PLAIN-
TIFF SUBMITTED NUMEROUS 'RELEASE OF INFORMATION' FORMS
FOR ALL OF HIS PREVIOUS MEDICAL PROVIDERS AS SET FORTH
AT PARAGRAPH 63, SUPRA. BASED SOLELY ON THE FACT THAT
PLAINTIFF WAS SUING NAPHCARE, IT'S EMPLOYEES AND CCDC
STAFF, GALICIA ON JULY 01, 2016, RETURNED THE FORMS RE-
FUSING TO PROCESS THEM AND IN RETALIATION FOR THE
CURRENT ACTION.

C). ON AND ABOUT JUNE 05, 2016, PLAINTIFF SOUGHT
A MEDICALLY NECESSATED BED MOVE FROM THE UPPER TO THE LOWER
BUNK DUE TO SEIZURE DISORDER. THESE CONCERNS WERE
DIRECTED TO JONES WHO CONVEYED HE "AINT MOVING SHIT."
PLAINTIFF VOWED TO FILE A ADMINISTRATIVE COMPLAINT AND
ADD JONES TO HIS PENDING SUIT. AS RETALIATION JONES
DISCIPLINED PLAINTIFF WITH LOCK UP (A "24") AND WITH
A SERIOUS ASSAULT AFTER UNSUCCESSFULLY CHALLENGING
PLAINTIFF.

D). FOLLOWING A OCTOBER 29, 2016, INCIDENT AND
ADVERSE INTERACTION WITH POLLARD, PLAINTIFF VOWED TO ADD
THIS PARTY TO THE PENDING SUIT DUE TO POLLARD'S CONDUCT.
IN RETALIATION THIS DEFENDANT DELIBERATELY PLACED PLAIN-
TIFF INTO HANDCUFFS DELIBERATELY TIGHTENING THEM EX-
CESSIVELY TIGHT CUTTING INTO PLAINTIFF'S LEFT HAND AND
CAUSING EXCESSIVE PAIN AND NUMBNESS. AS RETALIATION IN
ADDITION, POLLARD ABANDONED A PORTION OF PLAINTIFF'S
BELONGINGS.

89. PLAINTIFF REMAINED IN DEFENDANT'S CUSTODY
AS A PRE-TRIAL DETAINEE THRU MARCH 29, 2019.

A). PRIOR TO COMMENCEMENT OF THIS ACTION, PLAIN-
TIFF EXHAUSTIVELY SET OUT GOOD FAITH EFFORTS IN ATTEMPTS
LOCATING AND IDENTIFYING THE MANY DOES AND THEIR
CAPACITIES UTILIZING LOCAL RESOURCES AVAILABLE TO HIM.
HIS GOOD FAITH EFFORTS WERE RESISTED BY DEFENDANTS IN CON-
TINUING ATTEMPTS AND EFFORTS AT DISCOURAGING PLAINTIFF
AND CONCEALING THE RELEVANT DEFENDANTS FROM CULPABILITY.

1. NAMELY, PLAINTIFF SPECIFICALLY SOUGHT THE
IDENTITIES AND IDENTIFICATION/BADGE NUMBERS OF ALL DOES
ACTING IN THE PLED MANNERS AND WAS SPECIFIC IN HIS REQUESTS.
DEFENDANTS ELECTED TO CHERRY-PICK RESPONSES WHICH OBFUSCA-
TED THE REQUESTS INTENTIONALLY FOR THE VERY PURPOSE OF INTER-
FERING WITH AND OBSTRUCTING EFFECTIVE PRESENTATION AND
PROSECUTION OF THIS ACTION.

B). PLAINTIFF INITIATED THIS ACTION ON APRIL 01,
2016. IN NUMEROUS KITES AND GRIEVANCES PLAINTIFF ALERTED
DEFENDANTS OF THE EXISTENCE AND PENDENCY OF THIS ACTION.

1. ON MAY 24, 2016, JUNE 03, 2016, JUNE 05, 2016 AND AUGUST 31, 2016, DEFENDANTS CADET, JONES AND CERTAIN DOES AND THEIR AGENTS SEIZED AND/OR CENSORED CONTENTS OF THE ALLEGATIONS AND INITIATED THEIR CAMPAIGN OF HARASSMENT AND RETALIATION AGAINST PLAINTIFF IN EFFORTS TO DISCOURAGE HIM. DISCOVERING THE SENSITIVE NATURE OF SOME ALLEGATIONS, DEFENDANTS ENGAGED IN BANTER AND DIALOGS RELATING TO THIS ACTION AND SPARKING AN AVALANCHE OF HARASSMENT AND RETALIATION. THIS WAS ALSO THE CASE WITH RESPECT TO PLAINTIFF'S MANY GRIEVANCES.

90. PLAINTIFF SUFFERED RETALIATION ON MANY FRONTS INCLUDING HARASSMENT, BEING SINGLED OUT, DENIAL OF EQUAL PROTECTION, USE OF FORCE, LOSS OF SENSITIVE GRIEVANCES, DENIAL AND INTERFERENCE WITH MEDICAL PROVISION, LIBRARY SUBMISSION INTERCEPTIONS, THREATS AND CENSORSHIPS.

91. SAID ADVERSE ACTIONS WERE SOLELY IN RESPONSE TO THE ABOVE PROTECTED ACTIVITIES ENGAGED IN BY PLAINTIFF AND WERE INDEED CALCULATED AND DESIGNED TO HINDER, FRUSTRATE, HAMPER, OBSTRUCT AND DISCOURAGE PLAINTIFF FROM OTHERWISE ENGAGING IN SAID ACTS AND TO PUNISH HIM.

92. SAID ACTIVITIES AND POLICIES OF DEFENDANTS AS A RESULT OF PLAINTIFF'S PROTECTED ACTIONS EFFECTIVELY CHILLED PLAINTIFF'S 1ST AMENDMENT RIGHTS AND CAUSED PLAINTIFF HARM AND WERE SUFFICIENT TO DETER ANY PERSON OF ORDINARY FIRMNESS FROM EXERCISING THEIR 1ST AMENDMENT RIGHTS.

93. DEFENDANTS ACTIONS, OMISSIONS, INACTIONS, CUSTOMS AND/OR POLICIES WERE THE DIRECT CAUSE AND MOVING FORCE BEHIND THE INJURIES TO PLAINTIFF AND HIS FIRST AMENDMENT GUARANTEES.

## CLAIM II
### 42 U.S.C. § 1983

FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; PUNITIVE SEGREGATION PLACEMENT ABSENT DUE PROCESS OF LAW.

94. PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1 THRU 93, INCLUSIVE, AS IF CONTAINED HERE AT FULL LENGTH AND AS A SECOND CLAIM FOR RELIEF, ALLEGES:

95. COCN, COHN, MOERS, CHAVEZ, ROBINSON AND CERTAIN DOES THROUGH THEIR DIRECT ACTIONS, OMISSIONS AND/OR CUSTOMS, DEPRIVED PLAINTIFF OF DUE PROCESS OF LAW IN EFFECTIVELY IMPOSING DISCIPLINARY/PUNITIVE SEGREGATION AND SANCTIONS UPON HIM WITHOUT ANY LEGITIMATE CAUSE OR ABILITY OF PLAINTIFF TO CHALLENGE AND/OR EXPRESS HIS VIEWS TO A FAIR HEARING TRIBUNAL. NAMELY, ON JANUARY 22, 2016, DEFENDANTS PLACED PLAINTIFF INTO PUNITIVE SEGREGATION AT HDC AT THE BEQUEST OF ADAMS, NISWONGER AND CERTAIN DOES. HE WAS NOT PROVIDED NOTICE, DUE PROCESS OR OPPORTUNITY TO BE HEARD.

96. PLAINTIFF WAS HARMED BY PLACEMENT AND RETENTION UNDER SAID HARSH CONDITIONS. PLAINTIFF SUFFERED GREAT MENTAL ANGUISH, STRESS, HIGH LEVELS OF ANXIETY, EMOTIONAL BREAKDOWNS, SUICIDAL THOUGHTS, EXTREME DEPRESSION AND A SENSE OF UNWORTHINESS AND HOPELESSNESS.

97. THE ACTIONS AND/OR CUSTOMS OF DEFENDANTS WERE THE ACTUAL AND PROXIMATE CAUSE OF PLAINTIFF'S INJURIES.

## CLAIM III
### 42 U.S.C. § 1983

FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, INTERFERRING WITH MEDICAL TREATMENT ONCE PRESCRIBED.

98. PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1 THRU 97, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A THIRD CLAIM FOR RELIEF, ALLEGES:

99. COCN, NAPHCARE, COHN, WILLIAMSON, SAAVEDRA, CALDWELL, JONES, MOERS, ADAMS, NISWONGER, GREGG, GALICIA, KOMACSAR, COKER, HOENN, CADET AND CERTAIN DOES WERE INDIFFERENT TO THE SERIOUS MEDICAL NEEDS OF PLAINTIFF. INDEED PLAINTIFF PRESENTED A SERIOUS MEDICAL CASE. HE RETAINED A SPRAINED NECK, DAMAGED SPINE, ACCIDENT-RELATED CONCUSSION, SEIZURE DISORDER, IMMOBILE LEFT WRIST, POTENTIALLY FATAL COCCI INFECTION, BLURRED VISION RESULTING IN INTENSE MIGRAINS, A BROKEN RIGHT HAND, INJURED LEFT SHOULDER AND OTHER SEIZURE-RELATED INJURIES AND HAD A DIRE NEED FOR INTENSE PAIN MANAGEMENT AND PHYSICAL THERAPY.

26

100. NAPHCARE AND CORIZON HEALTH STAFF AND OTHER DEFENDANTS INITIALLY AND FOR SOME 6 MONTHS REFUSED TREATMENT OF WHITE'S POTENTIALLY FATAL COCCI INFECTION / CONDITION. FOR 4 WEEKS NAPHCARE STAFF REFUSED TO TREAT WHITE'S OBVIOUSLY BROKEN RIGHT HAND. THEY CONTINUED TO REFUSE TO PROVIDE HIM ADEQUATE PAIN MANAGEMENT AND ESSENTIAL SPECIALTY CONSULTS. DEFENDANTS REFUSED TO CONSULT MEDICALLY NECESSATED SPECIALISTS FOR TREATMENT OF PLAINTIFF'S PRE-INCAR-CERATION INJURIES AND AILMENTS STEMMING FROM A NEAR FATAL AUTO ACCIDENT AND OTHER SERIOUS NEEDS INCLUDING BROKEN BONES. HE WASN'T PROVIDED HIS LEFT WRIST BRACE UNTIL APRIL 19, 2017. ADDITIONALLY, DEFEN-DANTS FAILED TO TREAT PLAINTIFF'S DRUG WITHDRAWALS.'

101. GRESS, NISWONGER AND ADAMS MALICIOUSLY AND DELIBERATELY SEIZED WHITE'S BRACE WITHOUT MEDICAL QUALIFICATION, AUTHORITY OR JUSTIFICATION AND DESPITE THE MEDICALLY CRITICAL NEED TO PREVENT LIFE-THREATENING INFECTION AND PAIN FROM ROTATION OF WHITE'S LEFT WRIST. ADDITIONALLY, THESE DEFENDANTS CONTINUE TO DELIBERATELY WITHHOLD PLAINTIFF'S PRESCRIPTION GLASSES KNOWING THEIR ACTIONS WERE CAUSING BLURRED VISION, EXCRUCIATING HEADACHES AND UNNECESSARY SUFFERINGS.

102. PLAINTIFF CONTINUES TO SUFFER INJURY AND HARM FROM THESE INSTANCES OF INDIFFERENCE. DEFENDANTS ACTIONS AND INACTIONS WERE THE PROXIMATE AND DIRECT CAUSE OF PLAINTIFF'S INJURIES AND HARMS.

## CLAIM IV
### 42 U.S.C. § 1983

FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, REFUSAL TO PROPERLY ASSIGN BUNKING AND ACCOMMODATE INMATES WITH MEDICAL RESTRICTIONS RESTRICTING UPPER BUNK/ TIER HOUSING.

103. PLAINTIFF REINCORPORATES BY REFERENCE PARA-GRAPHS 1 THRU 102, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A FOURTH CLAIM FOR RELIEF, ALLEGES:

104. CCDN, NAPHCARE, LVMPD, COKER, DELACRUZ, HOGAN, GOINS, WILLIAMSON, CADET, C. SMITH, JONES, KOMACSAR, GALICIA, CARDNER, GEBREY, PEOPLES, EVANGELISTA, PLAYER, AKHTAR, McCLAIN, YU, YADAO, E. ACEVEDO, GONZALES, VERTNER, CANTO, MURRIEL, JACKSON, VANDERWAAG, ALBERTO, GONZALEZ, MANDINE, TILAHUN, HALL, LAITA, TADEO AND CERTAIN DOES, AWARE OF WHITE'S SERIOUS AND CRITICAL MEDICAL NEEDS AND INABILITY TO OCCUPY UPPER BUNKS AND UPPER TIER DUE TO THE EXTREMITY OF HIS CONDITIONS AND STATUS, NONETHELESS HOUSED AND RETAINED HIM THERE REGARDLESS, INDIFFERENCING HIS HEALTH AND SAFETY.

105. DEFENDANTS KNEW, OR SHOULD HAVE KNOWN IN THE PROPER EXERCISE OF THEIR DUTY, THAT WHITE WITH A DAMAGED SPINE AND NECK, A IMMOBILE LEFT WRIST, BROKEN RIGHT HAND AND SEIZURE PATIENT, WAS AT RISK BEING ASSIGNED TO A UPPER BUNK. AS A RESULT, THE INDIFFERENT HOUSING SUBJECTED PLAINTIFF TO ENORMOUS AND PREVENTABLE PAIN, AGONY AND SUFFERING ASSOCIATED WITH CLIMBING THESE HEIGHTS.

106. THESE DEFENDANTS WERE FULLY AWARE THAT HOUSING ANY SEIZURE PATIENT ON TOP BUNK COULD PROVE CATASTROPHIC AND WAS INHERENTLY RISKY. PLAINTIFF WAS IN-JURED AND HARMED AS A RESULT OF THE DEFENDANTS INACTIONS AND ACTIONS. WHITE WAS SUBJECTED TO WANTON INFLICTION OF PAIN AND SUFFERING AND HIS RESPECTIVE CONDITIONS AGGRAVATED. ADDITIONALLY, WHITE HAD SEIZURES FROM HIS TOP BUNK INCURRING ADDITIONAL SERIOUS INJURIES INCLUDING A BROKEN RIGHT HAND AND LEFT SHOULDER INJURY DEFENDANTS REFUSED TO TREAT. DEFENDANTS ACTIONS AND INACTIONS DESCRIBED WERE THE PROXIMATE AND DIRECT CAUSE OF PLAINTIFF'S INJUR-IES, HARM AND SUFFERINGS.

## CLAIM V
### 42 U.S.C. § 1983

FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, PLACEMENT OF CRITICALLY IN-JURED INMATES INTO HARD CELLS ABSENT BEDDING FOR APPROXIMATELY 3 DAYS.

107. PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1 THRU 106, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A FIFTH CLAIM FOR RELIEF, ALLEGES:

108. COCN, NAPHCARE, LVMPD, CLARK, FERRY, MENDOZA, HOPKINS, COLEMAN AND CERTAIN DOES, AWARE AND KNOWLEDGEABLE OF THE SERIOUSNESS OF PLAINTIFF'S ACCIDENT-RELATED INJURIES AND IN ACCORDANCE WITH POLICY AND A LONG-STANDING CUSTOM, COMPLETELY INDIFFERENCED HIS HEALTH AND SAFETY AS WELL AS WELFARE BY MALICIOUSLY, DELIBERATELY, AND EGGREGIOUSLY PLACING HIM INTO A HARD CELL WITHOUT BEDDING OR PADDING FOR APPROXIMATELY 3 DAYS.

109. DEFENDANTS EASILY COULD HAVE FORESEEN THE END RESULT OF PLACING SAID CRITICALLY INJURED PERSONS UNDER SUCH HARSH, BARBARIC AND UNCONSTITUTIONAL LIVING CONDITIONS TO RESULT IN FURTHER PREVENTABLE DAMAGE, PAIN AND SUFFERING. DESPITE SUCH, DEFENDANTS NONETHELESS ACTED CONCERTEDLY AND INDIVIDUALLY TO PLACE PLAINTIFF THERE IRRESPECTIVE OF THE INJURIES AND CONSEQUENCES TO FOLLOW.

110. PLAINTIFF'S CONDITIONS WERE EXASCERBATED BY SAID HOUSING CAUSING HIM TO INCUR FURTHER INJURY, HARM, PAIN AND SUFFERING.

111. DEFENDANTS ACTIONS AND INACTIONS AS WELL AS THEIR CUSTOMS AND POLICIES WERE THE PROXIMATE AND DIRECT CAUSE OF PLAINTIFF'S INJURIES, HARMS, PAINS, AND SUFFERINGS.

## CLAIM VI
### 42 U.S.C. § 1983

FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, USE OF FORCE.

112. PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1 THRU 111, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A SIXTH CLAIM FOR RELIEF, ALLEGES:

113. COCN, LVMPD AND CERTAIN DOES FOSTERED AN ATMOSPHERE WHERE THE USE OF FORCE IN DETAINING SUBJECTS WAS JUSTIFIED AND OTHERWISE BECAME ACCEPTABLE, ALTHOUGH THE FORCE, IN REALITY, WAS UNJUSTIFIED AND EXCESSIVE. THIS PRACTICE ACTED AS A DE FACTO POLICY.

114. BASED ON THIS DE FACTO POLICY, WITHOUT FEAR OF DISCIPLINE, REVIEW OR CRITIQUE, FOR REASONS COMPLETELY UNJUSTIFIED AND UNPROVOKED, ON JUNE 05TH, 2016, JONES FORCEFULLY STRUCK WHITE IN HIS FACE CAUSING HYPER-EXTENSION OF HIS ALREADY INJURED NECK. ON OCTOBER 25, 2016, ALVARDO, IN THE PRESENCE OF HARDIN, GRABBED PLAINTIFF BY THE NECK PUSHING HIS FACE INTO THE WALL, APPLYING PRESSURE TO HIS INJURED NECK CAUSING A POP SOUND AND BURNING SENSATION WHILE VOICING RACIAL EPITHETS. ON OCTOBER 29, 2016, POLLARD DELIBERATELY, MALICIOUSLY AND SADISTICALLY PLACED PLAINTIFF IN EXCESSIVELY TIGHT HANDCUFFS CAUSING EXTREME PAIN AND NUMBNESS TO HIS HANDS. GIVEN THE FACT THAT THE LEFT CUFF WAS CUTTING INTO PLAINTIFF HE SOUGHT THAT THEY BE LOOSENED AND WAS REBUFFED BY POLLARD.

115. THESE SHOWINGS OF FORCE WERE COMPLETELY UNJUSTIFIED, UNPROVOKED AND UNNECESSARY. AT THE TIME FORCE WAS APPLIED, WHITE WAS FULLY COMPLIANT AND COOPERATIVE WITH ALL ORDERS DIRECTED TO HIM BY JONES, ALVARDO, HARDIN AND POLLARD. THERE WAS ABSOLUTELY NO NEED FOR FORCE AS PLAINTIFF WAS NOT ACTIVELY RESISTING NOR DISRUPTIVE.

116. PLAINTIFF SUFFERED HARM AND INJURY AND PAIN AND SUFFERING TO HIS NECK AND WAS MADE TO EXPERIENCE THE MOST INTENSE PAIN IN HIS LIFE. HE FURTHER SUFFERED INTENSE PAIN TO HIS LEFT HAND/WRIST CAUSED FROM POLLARD'S DELIBERATE APPLICATION OF EXCESSIVELY TIGHT HANDCUFFS.

117. JONES, HARDIN, ALVARDO AND POLLARD'S ACTIONS AND OTHER DEFENDANTS' DE FACTO POLICIES RATIFIED, AUTHORIZED, PROMULGATED AND ENFORCED WERE THE PROXIMATE AND DIRECT CAUSE OF WHITE'S INJURIES, HARMS AND SUFFERINGS.

## CLAIM VII
29 U.S.C. §794, 42 U.S.C. §12101

FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, VIOLATION OF THE ADA/RA.

118. PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1 THRU 117, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A SEVENTH CLAIM FOR RELIEF, ALLEGES:

119. TITLE II OF THE ADA, THE "PUBLIC ENTITY SECTION" PROVIDES THAT "NO QUALIFIED" INDIVIDUAL WITH A DISABILITY, SHALL BY REASON OF SUCH DISABILITY, BE EXCLUDED FROM PARTICIPATION IN OR BE DENIED BENEFITS OF THE SERVICES, PROGRAMS OR ACTIVITIES OF A PUBLIC ENTITY."

120. PLAINTIFF IS A QUALIFIED PERSON UNDER THE ADA WITH DISABILITIES, INTER ALIA, AS FOLLOWS:

A). RIGHT EAR DEAFNESS;
B). SEIZURE-DISORDER;
C). ASTHMA DISORDER;
D). PTSD;
E). PARANOID SCHIZOPHRENIA;
F). VALLEY FEVER INFECTION;
G). HEAD TRAUMA/CONCUSSION;
H). NECK AND SPINAL SPRAINS AND TRAUMA;
I). MOBILITY IMPAIRMENT OF LEFT WRIST;
J). BI-POLAR CONDITION;
K). MOBILITY IMPAIRMENT OF LEFT SHOULDER; AND,
L). A BROKEN RIGHT HAND.

121. EACH ABOVE MENTAL OR PHYSICAL IMPAIRMENT SUBSTANTIALLY LIMITED ONE OR MORE OF PLAINTIFF'S MAJOR LIFE ACTIVITIES, INCLUDING CARING FOR HIMSELF, PERFORM-ING MANUAL TASKS, SEEING, HEARING, EATING, SLEEPING, LIFTING, BENDING AND/OR CONCENTRATING.

122. EACH ABOVE MENTAL OR PHYSICAL IMPAIRMENT OF PLAINTIFF APPEARED IN RECORDS RETAINED BY LVMPD, HPD, HDC, CCDC, NAPHCARE AND CORIZON HEALTH AND HE WAS REGARDED AS HAVING EACH IMPAIRMENT SET FORTH, SUPRA.

123. ANY IMPAIRMENT LISTED, SUPRA, WHETHER EPISODIC OR IN REMISSION, SUBSTANTIALLY LIMITED MAJOR LIFE ACTIVITIES OF PLAINTIFF WHEN ACTIVE AS SET FORTH.

124. BY VIRTUE OF DISABILITY, HE WAS EXCLUDED FROM AND/OR DENIED BENEFITS OF SERVICES, PROGRAMS AND/OR ACTIVITIES BY MOERS, NAPHCARE, CORIZON HEALTH, COCN, LVMPD, HPD, COHN, GILLIS, HOGAN, POLLARD, GOINS, CADET, JONES, WILLIAMSON, C. SMITH, GALICIA, KOMACSAR, CLARK, FERRY, HOPKINS, MENDOZA, COLEMAN, SAAVEDRA, CALDWELL, CARDNER, GEBLEY, PEOPLES, EVANGELISTA, PLAYER, AKHTAR, McCLAIN, VU, YADAO, E. ACEVEDO, GONZALES, VERTNER, CANTO, MURRIEL, JACKSON, VANDERWAAG, ALBERTO, GONZALEZ, MANDING, TILAHUN, HALL, LATTA, TADEO AND CERTAIN DOES AS FOLLOWS:

A.    WHITE WAS DENIED AND EXCLUDED FROM PARTICIPATION IN ACTIVITIES AND SER-VICES OF BEING ASSIGNED TO A LOWER BUNK ON A LOWER TIER TO ENSURE HIS SAFETY, PROVIDE SAFE LIVING AND ACCOMMODATE HIS DISABILITY(IES);

B. WHITE WAS DENIED THE BENEFITS OF SERVICES, PROGRAMS AND/OR EXCLUDED FROM PARTICIPATION IN ACTIVITIES OF RECEIVING TIMELY SPECIALTY REFERRALS FOR MULTIPLE CONDITIONS AND DISABILITIES AND WAS NOT TIME ACCOMMODATED WITH SUCH REFERRALS TO TREAT HIS DISABILITIES;

C. WHITE WAS DENIED THE BENEFITS OF SERVICES AND EXCLUDED FROM PARTICIPATION IN ACTIVITIES OF RECEIVING ADEQUATE PAIN MANAGEMENT FOR HIS DIRE CONDITIONS AND DISABILITIES AND WAS NOT ACCOMMODATED WITH SAID SERVICES TO TREAT HIS DISABILITIES;

D. WHITE WAS DENIED THE BENEFIT OF SERVICES AND WAS EXCLUDED FROM PARTICIPATION IN ACTIVITIES OF RECEIVING HIS LEFT HAND BRACE TIMELY AS AN ASSISTIVE DEVICE FOR HIS LEFT HAND COCCI INFECTION CONDITION AND DISABILITY AND WAS NOT ACCOMMODATED FOR SAID DISABILITY UNTIL APRIL 19, 2017;

E. WHITE WAS DENIED THE BENEFIT OF SERVICES AND WAS EXCLUDED FROM PARTICIPATION IN ACTIVITIES OF RECEIVING HIS ANTI-FUNGAL & COCCI MEDICATION FOR HIS LEFT HAND COCCI INFECTION CONDITION AND DISABILITY AND WAS NOT ACCOMMODATED WITH SAID MEDICATIONS TO TREAT SUCH DISABILITY UNTIL AUGUST 25, 2016; AND,

F. WHITE WAS DENIED THE BENEFITS OF SERVICES AND WAS EXCLUDED FROM PARTICIPATION IN ACTIVITIES OF RECEIVING AND RETAINING IN HIS IMMEDIATE POSSESSION HIS ASTHMA INHALER SERVING AS AN ASSISTIVE DEVICE FOR HIS CONDITION AND DISABILITY.

125. PLAINTIFF WAS DISCRIMINATED AGAINST, DENIED EQUAL PROTECTION AND HIS CONSTITUTIONAL RIGHTS VIOLATED. EACH VIOLATION OF HIS ADA/RA PROTECTIONS WERE PURSUANT TO DE FACTO POLICIES, CUSTOMS, USAGES AND PROCEDURES WHICH WERE THE PROXIMATE CAUSE AND MOVING FORCE BEHIND THE VIOLATIONS.

126. PLAINTIFF WAS NOT PROVIDED MEANINGFUL ACCESS TO THE PROGRAMS, SERVICES AND ACTIVITIES THAT PERSONS WITH DISABILITIES ARE OTHERWISE ENTITLED TO. TO ANY EXTENT THAT PLAINTIFF WAS NOT COMPLETELY EXCLUDED FROM A PROGRAM, SERVICE OR ACTIVITY, HIS ACCESS WAS MADE UNUSUALLY DIFFICULT, PAINFUL AND INHERENTLY DANGEROUS BY DEFENDANTS' FAILURE TO ACCOMMODATE HIS DISABILITIES.

127. PLAINTIFF INCURRED INJURY AND HARM AS A RESULT OF DEFENDANTS' DISCRIMINATIONS, EXCLUSIONS AND FAILURES TO ACCOMMODATE.

128. DEFENDANTS SET FORTH IN PARAGRAPH 124, SUPRA'S ACTIONS AND INACTIONS DESCRIBED WERE THE PROXIMATE AND DIRECT CAUSE OF PLAINTIFF'S INJURIES, HARMS, PAINS AND SUFFERING AS WELL AS THEIR EXCLUSIONS AND DISCRIMINATIONS.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS AND URGES THE COURT TO AFFORD RELIEF AS FOLLOWS:

A. AFFORD A DECLARATORY JUDGMENT THAT THE ACTIONS AND POLICIES DESCRIBED, SUPRA, VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS;

B. AFFORD COMPENSATORY DAMAGES IN THE AMOUNT OF $2,500,000.00;

C. AFFORD NOMINAL DAMAGES IN THE AMOUNT OF $150,000.00;

D. AFFORD PUNITIVE DAMAGES IN THE AMOUNT OF $200,000.00;

E. TRIAL BY JURY; AND,

F. SUCH OTHER AND FURTHER RELIEF AS THIS COURT MAY DEEM JUST, SUITABLE AND EQUITABLE, INCLUDING ANY AND ALL COSTS ASSOCIATED WITH THE INSTALLATION AND PROSECUTION OF THIS ACTION.

DECLARATION

I DECLARE UNDER PENALTY OF PERJURY THAT
THE FOREGOING IS TRUE AND CORRECT.

DATED: 06/05/ 2019   BY:

(TONEY ANTHONY WHITE III)
PLAINTIFF IN PRO SE

34