TONEY A. WHITE
NDOC NO. 1214172
HIGH DESERT STATE PRISON
POST OFFICE BOX 650
INDIAN SPRINGS, NV,
89070

PLAINTIFF IN PRO SE

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| TONEY A. WHITE,<br>PLAINTIFF,<br>VS.<br>COUNTY OF CLARK, ET. AL.,<br>DEFENDANTS. | CIVIL ACTION NUMBER<br>2:16-CV-00734 RFB VCF |

PLAINTIFF'S JOINT APPENDIX OF EXHIBITS IN SUPPORT OF OPPOSITIONS TO LVMPD AND NAPHCARE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

VOLUME 1 OF 8 VOLUMES

EXHIBITS 1 THRU 10

PAGES 1 THRU 249

**Las Vegas Metropolitan Police Department**
**Detention Services Division**
**Las Vegas, NV**

**SOP 09.11.01**
**Issue Date 05/04/92**
**Annual Review 05/01/16**
**Revision Date 09/29/15**

STANDARD OPERATING PROCEDURE

SUBJECT FORCE, USE OF

POLICY

In accordance with appropriate statutory authority, Clark County Detention Center (CCDC), North Valley Complex (NVC), and Tucker Holding Facility (THF) staff may apply force in order to maintain the security of the facilities in incidences of justifiable self-defense, protection of others, protection of property, and prevention of escapes, and then only as a last resort. In no event, is physical force justifiable as punishment. In vesting staff with the lawful authority to use force for the public welfare, a careful balancing of all human interests is required. The level of force must reflect the totality of circumstances surrounding the immediate situation. The employee will select a level of force that is within the range of "objectively reasonable" options [Graham v. Connor, 490 U.S. 386 (1989)]. Department employees should use only that force that appears reasonably necessary to bring an incident under control, while protecting the lives of citizens or department employees. The employee shall only apply force in a "good faith effort to maintain or restore discipline." Any force used will be only that which is reasonably necessary to accomplish a lawful police task.

It is the policy of this department that officers hold the highest regard for the dignity and liberty of all persons and place minimal reliance upon the use of force. The department respects the value of every human life and that the application of deadly force is a measure to be employed in the most extreme circumstances.

REFERENCES

4th Edition ACA Standards for ALDF: 2B-01, 2B-02, 2B-03, 2B-04, 2B-07, 2B-08, 6A-07, 6C-04, 7B-08, 7B-10, 7B-10-1, 7B-14, 7B-15, 7B-16

LVMPD Department Manual:

4/102.16 Care and Control of Firearms
5/108.14 Firearms Training
5/108.16 Defensive Tactics
5/109.02 Critical Incident Review Process
5/109.04 Critical Incident Review Team
5/109.05 Civilian Firearms and Aerosol Defensive Spray (oleoresin capsicum)
5/109.06 Exposure to Pepper Spray
5/110.14 Reporting On-duty Injury, Job-Related Illness, and Occupational Exposure to Communicable Diseases
5/208.02 Authorized Firearms and Associated Equipment
5/208.03 Authorization to Carry Firearms
6/002.00 Use of Force Policy
6/002.01 Use of Force Procedure
6/002.02 Authorized Force Tools, Description, Requirements, Uses and Considerations
6/002.03 Reportable Use of Force
6/002.04 Post Use of Force Procedures

Legal Cases: Graham v. Connor, 490 U.S. 386 (1989)
***Kingsley v. Hendrickson, 576 U.S. (2015)***

RATIONALE

Las Vegas Metropolitan Police Department's (LVMPD) Use of Force Policy is intended to clearly set forth the philosophy of the department regarding using force and at the same time give specific guidance to officers so that they can appropriately make decisions regarding levels of control that may be used. Policy decisions have been made based on binding case law and by evaluating best practices.

***The LVMPD Use of Force Policy applies to all commissioned officers, but the legal standard specific to incidents involving use of force within a correctional pretrial facility are set forth in Kingsley v. Hendrickson, 576 U.S. (2015).***

OVERVIEW

This SOP prescribes guidelines for use of force ***in*** detention facilities. For additional information, reference LVMPD Policies 6/002.00, Use of Force; 6/002.01, Use of Force Procedure; 6/002.02, Authorized Force Tools, Description, Requirements, Uses and Considerations; 6/002.03 Reportable Use of Force.

For information on forced blood draws, reference SOPs #09.11.03,"Restraint Chair, Use of" and #13.00.00, "Medical Services."

DUTY TO INTERVENE

Any officer present and observing another officer using force is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, safely intercede to prevent the use of such excessive force. Officers shall promptly report these observations to a supervisor.

PROCEDURE

I. DEFINITIONS

| | |
|---|---|
| Approved Weapons | Approved weapons are those weapons meeting department specifications for which officers receive proficiency and safety training. Prior to the use of any approved weapon option, the officer, when practical, will communicate to other officers and the subject that the use of the option is imminent, and clearly and audibly announce the same to all personnel in the immediate area unless exigent circumstances prevent this from occurring. |
| Cuffing under Power | Cuffing under power is a tactic where a secondary officer handcuffs a subject while the ECD (being deployed by the primary officer) is cycling and the subject is in Neuro-Muscular Incapacitation (NMI). |
| Critical Incident Review Team (CIRT) | A team put in place to conduct administrative examination of uses of deadly force and other high-risk police operations, for the purpose of improving both individual and the agency's performance. |
| Deadly Force | The degree of force which is likely to produce death or serious bodily injury. Deadly force can also result from a force option being improperly applied. Deadly Force is not limited to firearms. |

| | |
|---|---|
| Force Transitions | The movement, escalation/de-escalation, from the application of one force type to another in conjunction with the "objectively reasonable" standard from Graham v. Connor, 490 U.S. 386 (1989). The officer must consider all the factors prior to using force and choose reasonable options based on the "totality of the circumstances" present.<br><br>The LVMPD Use of Force Policy applies to all commissioned officers, but the legal standard specific to incidents involving use of force within a correctional ***pretrial*** facility are set forth in ***Kingsley v. Hendrickson 576 U.S. (2015)***. |
| Force Investigative Team (FIT) | Conducts a criminal investigation to determine whether the use of deadly force was legally justified under criminal law. FIT also directs the investigation against a subject who either committed crimes which led to the use of deadly force or who has committed crimes against an officer. |
| Imminent Threat | An impending violent act or resistance that an officer reasonably believes will occur based on the totality of the circumstances. |
| Intermediate Force | A level of force that has the potential to cause injury or substantial pain, and is greater than low-level force. |
| Involved Officer | A commissioned officer or supervisor, who participated in, directed or influenced the application of the use of force. |
| Levels of Control | Levels of control are broad categories of influence and or force in identifiable, escalating stages of intensity. They are identified as low level force, intermediate force, and deadly force. |
| Low Level Force | Low level force is the level of force or control that is neither likely nor intended to cause injury. |
| Non-Deadly Force | The level of force required to compel compliance which is not intended to and is not known to create a substantial risk of causing death or serious bodily injury. |
| Officer Involved Shooting | An officer-involved shooting is an officer's discharge of a firearm at a person, with or without physical injury or the death of the person. |
| Officer Witness Monitor | An Officer Witness Monitor is a designated officer who is not involved in the use of deadly force. The responsibilities of the Officer Witness Monitor are to observe and prevent discussions regarding the incident among involved officer(s) and witness(s). |
| Public Safety Statement (PSS) | A PSS is a series of questions to obtain information and to determine if there is an immediate threat to public safety. It must be taken in a timely manner. (An example would be shots fired by an officer or a subject in the direction where the public may be in immediate danger.) The supervisor must take appropriate action to ensure public safety, based on the information received from the PSS. |
| Reasonable Force | An objective standard of force viewed from the perspective of a reasonable officer, without the benefit of 20/20 hindsight, and based on the totality of circumstances presented at the moment the force is used.<br><br>Officers may use reasonable force to:<br>1. Protect themselves<br>2. Protect others<br>3. Affect a lawful detention<br>4. Affect a lawful arrest<br>5. Conduct a lawful search |

| | |
|---|---|
| Reportable Force | Any use of force which is required to overcome subject resistance to gain compliance that results in death, injury or complaint of injury, complaint of continuing pain, or any use of force greater than low level force and any application of the Lateral Vascular Neck Restraint (LVNR)®. |
| Serious Bodily Injury | A bodily injury that creates a substantial risk of death causes serious, permanent disfigurement; or results in a prolonged loss or impairment of the functioning of any bodily member or organ. |
| Significant Force | Any force which results in treatment at a medical facility due to injuries or alleged injuries caused by any officer. Examples include, but are not limited to: skeletal fractures, injury or complaint of injury to a person's head or sternum area. All significant force is reportable force. |
| Use of Force Model | A visual guide describing the appropriate levels of force authorized to be used by an officer in response to the level of resistance being displayed by a subject. |
| Witness Officer | A commissioned officer or supervisor who did not participate in or directly influence the application of the use of force. |

## II. DETERMINING OBJECTIVELY REASONABLE FORCE

The United States Supreme Court decisions and interpretations of the Fourth Amendment of the United States Constitution, a commissioned officer may only use such force as is "objectively reasonable" under all of the circumstances. The standard that courts will use to examine whether a use of force is constitutional was first set forth in Graham v. Connor, 490 U.S. 386 (1989) and expanded by subsequent court cases. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. The reasonableness must account for the fact that officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving.

The reasonableness inquiry in reviewing use of force is an objective one: the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them. The officer's perception will be a consideration, along with other objective factors that may affect the reasonableness of force. These factors may include but are not limited to:

Graham v. Connor and other legal standards:

A. The severity of the crime(s) at issue.

B. Whether the subject posed an immediate threat to the safety of the officers or others.

C. Whether the subject was actively resisting arrest or attempting to evade arrest by flight.

D. The influence of drugs/alcohol or the mental capacity of the subject.

E. The time available to an officer to make a decision.

F. The availability of the officers/resources to de-escalate the situation.

G. The proximity or access of weapons to the subject.

H. The environmental factors and/or other exigent circumstances.

SOP 09.11.01 – Page 5

The officer will use a level of force that is necessary and within the range of "objectively reasonable" options. When use of force is needed, officers will assess each incident to determine, based on policy, training and experience, which use of force option will de-escalate the situation and bring it under control in a safe and prudent manner. Reasonable and sound judgment will dictate the force option to be employed. Therefore, the department examines all uses of force from an objective standard rather than a subjective standard. ***This standard was reinforced by the United States Supreme Court and applies specifically to a pretrial facility via Kingsley v. Hendrickson 576 U.S. (2015).***

III. USE OF FORCE MODEL

In use of force incidents, the officer will transition to differing degrees or types of force, including attempts to de-escalate. Force situations are dynamic and require an officer to continually assess the subject's actions to ensure a proportionate response. Officers shall modify their level of control in relation to the amount of resistance offered by a subject.

The graphic below is intended as a general guideline for an officer. The subject(s) actions will dictate the resistance level and officers will make an "objectively reasonable" force option choice.

Each bold force option within the Levels of Control represents the highest level of force option available; however, other force options should be considered to help de-escalate the situation.
ESCALATION
SUBJECT'S ACTIONS
LEVEL OF RESISTANCE
DE-ESCALATION
AGGRAVATED AGGRESSIVE
AGGRESSIVE
ACTIVE
PASSIVE
COMPLIANT
SUBJECT'S INTENT TO HARM
Officer Presence
Verbal Communications
Empty Hand Tactics (Takedowns, Escorts)
Handcuffs/Other Restraint Devices
Baton (As Escort Tool)
K-9
LOW LEVEL
INTERMEDIATE
DEADLY FORCE
DE-ESCALATION
OFFICER'S RESPONSE (Force Transition)
ESCALATION
LEVEL OF CONTROL

IV. LEVELS OF RESISTANCE

It is important for officers to bear in mind that there are many reasons a subject may be resisting arrest or may be unresponsive. The subject may not be capable of understanding the gravity of the situation. Officers must consider several factors when dealing with a non-compliant subject. A subject may be non-compliant due to a medical condition, mental, physical or hearing

LVMPD 000437

impairment, language barrier, drug interaction or emotional crisis, and have no criminal intent. This may not make the subject any less dangerous but it may require a change in tactics that will be more effective while maintaining officer safety, once these circumstances are known to the officer.

A. Compliant: A person contacted by an officer who acknowledges direction or lawful orders given and offers no passive/active, aggressive or aggravated aggressive resistance.

B. Passive Resistance: The subject is not complying with an officer's commands and is uncooperative but is taking only minimal physical action to prevent an officer from placing the subject in custody and taking control. Examples include: standing stationary and not moving upon lawful direction, falling limply and refusing to use their own power to move (becoming "dead weight", holding onto a fixed object, or locking arms to another during a protest or demonstration).

C. Active Resistance: The subject's verbal or physical actions are intended to prevent an officer from placing the subject in custody and taking control, but are not directed at harming the officer. Examples include; walking or running away, breaking the officer's grip.

-------------------------------------SUBJECT'S INTENT TO HARM-----------------------------------

D. Aggressive Resistance: The subject displays the intent to harm the officer or another person and prevent an officer from placing the subject in custody and taking control. The aggression may manifest itself through a subject taking a fighting stance, punching, kicking, striking, attacks with weapons or other actions which present an imminent threat of physical harm to the officer or another.

E. Aggravated Aggressive Resistance: The subject's actions are likely to result in death or serious bodily harm to the officer, themselves or another. These actions may include a firearm, use of blunt or bladed weapon and extreme physical force.

V. LEVELS OF CONTROL

When use of force is needed, officers will assess each incident to determine, based on policy, training and experience, which use of force option is believed to be objectively reasonable for the situation and bring it under control in a safe and prudent manner.

A. Low Level Force: Low level force is a level of force or control that is neither likely nor intended to cause injury. Examples are handcuffing a compliant arrestee for transport to detention facility or to prone a suspect out on a high-risk vehicle stop. This level of force includes:

1. Officer Presence
2. Verbal Communication
3. Empty Hand Tactics (takedowns)
4. Handcuffs/Other LVMPD Approved Restraint Devices
5. Baton (as escort tool)

6. LVNR® (level one-minimum restraint)

7. Canine

8. Blocking

9. Stationary Vehicle Immobilization Technique (pinching)

B. Intermediate Force: A level of force that has the potential to cause injury or substantial pain, and is greater than low-level force. This level of force requires a Use of Force Report and includes:

1. Empty Hand Tactics (takedown with injury, strikes, kicks)

2. Baton/Impact Weapons (jabs, strikes)

3. LVNR® (level two-medium restraint and level three-maximum restraint)

4. OC Spray

5. ECD

6. Low Lethality Shotgun (five yards or greater)

7. Canine

8. Precision Intervention Technique (PIT) (speeds 40 mph or below)

C. Deadly Force: Is that degree of force which is likely to produce death or serious bodily injury. Deadly force can also result from a force option being improperly applied. In order for the use of deadly force to be justified, at least one of the parameters and all elements must be present. This level of force requires a Use of Force Report. Examples include but are not limited to:

1. Baton (striking head, neck, sternum, spine, groin or kidneys)

2. Low lethality shotgun (fired at a distance less than five yards/SERT munitions have different capabilities), reference SOP #08.07.00, "Special Emergency Response Team (SERT).

3. P.I.T. (more than 40 mph)

4. Ramming

5. Firearms use (shots fired)

D. Parameters for Use of Deadly Force - An officer may use deadly force upon another person only when it is objectively reasonable to:

1. Protect himself or others from what is reasonably believed to be an imminent threat of death or serious bodily injury;

2. Prevent the escape of a fleeing felon who the officer has probable cause to believe has committed a violent felony crime and is an imminent threat to human life if escape should occur (NRS 171.1455). Officers will give some warning, if feasible, prior to the use of deadly force. Example: "Police! Stop or I will shoot!"

E. Elements of Deadly Force:

1. Ability: Ability exists when a person has the means or capability to cause grave injury, serious bodily harm or death to an officer or another. This may include, but is not limited to the following: the subject's physical ability, size, age, strength, combative skill, level of aggression, and any weapons in their immediate control.

2. Opportunity: Opportunity exists when a person is in a position to effectively resist an officer's control or to use force or violence upon the officer or another. Examples which may affect opportunity include relative distance to the officer or others and physical barriers between the subject and the officer.

3. Imminent Jeopardy: Based upon all the facts and circumstances confronting the officer, the officer reasonably believes the subject poses an imminent threat to the life of the officer(s) or other third parties and the officer must act immediately to prevent the death or serious bodily injury.

4. Preclusion: Lesser alternatives have been reasonably considered and exhausted prior to the use of deadly force, to include disengagement. Deadly force in response to the subject's actions must remain reasonable while based upon the totality of the circumstances known to the officer at the time force was applied.

## VI. DE-ESCALATION

Officers must exercise control of a violent or resisting subject to make an arrest, or to protect the officer, other officers, or members of the community from risk of imminent harm. Clearly, not every potential violent confrontation can be de-escalated, but officers do have the ability to impact the direction and the outcome of many situations they handle, based on their decision-making and the tactics they choose to employ.

When reasonable under the totality of circumstances, officers should gather information about the incident, assess the risks, assemble resources, attempt to slow momentum, and communicate and coordinate a response. Officers should use advisements, warnings, verbal persuasion, and other tactics and alternatives to higher levels of force. Officers shall perform their work in a manner that avoids unduly jeopardizing their own safety or the safety of others through poor tactical decisions.

A. Supervisor Responsibility:

1. Supervisors shall become involved in the management of an overall response to potential violent encounters by coordinating resources and officers' tactical actions.

2. Supervisors should possess a good knowledge of tactics and ensure that officers under their supervision perform to a standard.

3. Supervisors will acknowledge and respond to incidents in a timely manner where use of force is probable.

B. De-Escalation by Withdrawal:

1. Withdrawal to a more tactically secure area if needed.

2. Withdrawal may allow consideration or deployment of greater variety of force options.

VII. AUTHORIZED FORCE TOOLS DESCRIPTION, REQUIREMENTS, USES AND CONSIDERATIONS

A. With minimal exception, only department approved weapons and training techniques should be used. Uniformed officers will carry all tools and equipment required by the policies of the LVMPD. Officers should note that less lethal tools may result in a lethal outcome, or be ineffective even when used appropriately.

B. Low level and intermediate tools and techniques are intended as less than lethal force. However, in certain situations, such tools and techniques may be used in a deadly force incident. During low level and intermediate force incidents, officers should avoid striking subjects with objects on the head, neck, sternum, spine, groin, or kidneys.

C. The following are authorized force tools/restraints and techniques which may be used when objectively reasonable and otherwise permitted under LVMPD Policy 6/002.02, "Authorized Force Tools, Description, Requirements, Use and Considerations." Specialized units may have additional tools that are not covered in this SOP.

1. Presence and Verbal Communication:

Level of Control:
Low Level Force

Officers will, when and to the extent reasonably possible, attempt to use verbal communication skills to control subjects before resorting to physical control methods. Call the CCDC/NVC Control Room for assistance, whenever possible, before using physical control methods. The response to a scene by officers in sufficient numbers can be used to persuade the inmates that compliance with direction would be in their best interest.

2. Empty Hand Tactics:

Level of Control:
Low Level Force – takedowns (not likely to cause injury), escorts
Intermediate Level Force – takedowns, strikes, kicking
Deadly Force – takedowns, strikes, kicking

a. Approved Use:

1) These tactics will be used only in accordance with LVMPD policy and training.

2) Officers should only use tactics appropriate to the situation which have been taught by LVMPD Defensive Tactics Instructors (DTIs).

b. Additional Considerations:

1) Summon medical attention on use of an empty hand tactic and/or any incident where a subject is injured and/or complains of injury.

2) All strikes, punches, kicks, and/or any incident where a subject is injured or complains of injury, requires a reportable Use of Force Report in Blue Team.

3. Handcuffs, Flexible Handcuffs, or other Restraint Devices:

Level of Control:
Low Level Force

a. Approved Use:

Officers will only use LVMPD authorized or issued handcuffs. Handcuffs will be maintained in clean and working order. Use in accordance with SOP #09.11.02, "Restraints, Use of."

1) Moving in-custody subjects

2) In an attempt to minimize the risk of injury to officers and others during arrest situations, officers will handcuff all persons arrested as soon as possible

3) Suicidal persons

4) Detoxification subjects being transported

b. Disapproved Use:

If medical circumstances make it unreasonable to handcuff an arrestee, officers will refrain from handcuffing.

c. Tactical Considerations:

1) Officers will check handcuffs for tightness and double lock as soon as it is safe to do so prior to transport.

2) When a handcuffed subject first complains that handcuffs are too tight and/or are hurting the subject, the officer having custody of the handcuffed subject will, as soon as reasonably possible, check the handcuffs to make sure that they are not too tight. If handcuffs are too tight (per training) they will be loosened and double locked.

    3) Summon medical attention on use of an empty hand tactic and/or any incident where a subject is injured and/or complains of injury.

4) All strikes, punches, kicks, and/or any incident where a subject is injured or complains of injury requires a reportable Use of Force Report in Blue Team.

4. Baton/Impact Weapons:

Level of Control:
Low Level Force – when used as an escort tool
Intermediate Level Force – when used for jabbing or striking
Deadly Force – striking subjects on the head, neck, sternum, spine, groin or kidneys

A baton is a department authorized Expandable Straight Baton or Side Handle Baton. Batons will be used only in accordance with LVMPD policy and training. Batons are designed for blocking, jabbing, to apply control holds or passive/active escort techniques. They will be used only in accordance with department training. Batons will be maintained in clean and working order.

a. <u>Approved Use:</u>

1) This tool will be used only in accordance with LVMPD policy and training.

2) Blocking, jabbing, to apply control holds, or passive/active escort techniques (Example: stirring the pot).

b. <u>Disapproved Use:</u>

1) A subject who poses no imminent threat will not be struck with a baton or impact tool.

2) Officers are discouraged from using their firearm as an impact tool due to the possibility of an unintentional discharge.

3) During non-deadly force incidents, officers will use reasonable care to avoid striking subjects on the head, neck, sternum, spine, groin, or kidneys, as these strikes may constitute deadly force.

4) The use of instruments as a weapon for the purpose of striking or jabbing (e.g., flashlights, radio, etc.) other than department authorized batons, is strongly discouraged and acceptable only when other authorized force responses have been exhausted and are either unavailable or ineffective.

5) Officers must be able to articulate a compelling need to use any other device or object other than an authorized baton as an impact weapon.

    c. Additional Considerations:

1) Summon medical attention on all strikes with a baton/impact weapon and/or any incident where a subject is injured and/or complains of injury.

2) Notify a supervisor when a baton/impact weapon has been used.

3) Use of the baton for escort/control or "stirring the pot" is non-reportable.

4) All strikes or any incident where a subject is injured and/or complains of injury requires a reportable Use of Force Report in Blue Team.

5. Oleoresin Capsicum (OC): Refer to LVMPD Policy 5/109.06, "Exposure to Pepper Spray."

Level of Control:
Intermediate Level Force

a. Description:

OC spray is a non-lethal agent which causes inflammation of the skin and mucus membrane of a subject and has a natural base as opposed to a chemical base.

b. Inspection Requirement:

OC spray expiration date and serviceability will be checked.

c. Deployment Requirement:

1) When deploying, an officer will, if practical, announce a warning to the subject and other officers of the intent to deploy the OC spray if the subject does not comply with your commands. Example, "Do what I am telling you to do, or I will spray you with pepper spray."

2) Officer shall give the subject a reasonable opportunity to voluntarily comply.

d. Approved Use:

1) OC spray will be used only in accordance with LVMPD policy and training.

2) OC spray may be used when subject is engaging or displays the intent to engage in aggressive resistant behavior which may cause injury.

    3)  OC spray may be used on vicious or aggressive animals when those animals interfere with the safety of the officers or citizens.

    4)  OC spray may only be used in a protest or demonstration situation when authorized by an incident commander in response to imminent threat of harm.

e.   Disapproved Use:

    1)  Shall not be used on a subject inside a closed vehicle, unless an officer is attempting to secure an aggressive resistant subject in a patrol vehicle. OC is not intended to be used to force extraction from an enclosed area, unless utilized in a detention facility.

    2)  Shall not be used on passive resistant protestors.

    3)  Shall not be used other than as an aerosol/stream.

    4)  Shall not be used on a handcuffed subject unless the subject is displaying Aggressive Resistance.

f.   Tactical Considerations:

    1)  Whenever possible, should be used upwind and relatively close to the subject.

    2)  High capacity OC spray may be used by SERT as an intermediate level of control; however, SERT officers will assess the effect the device will have on subjects in the general area due to the volume of agent dispersed.

g.   Supervisory Consideration:

Incident commander may authorize use in a protest or demonstration incident in response to imminent threat of harm.

h.   Additional Considerations:

    1)  Summon medical attention to all use of OC spray and/or any incident where a subject is injured and or complains of injury.

    2)  Notify a supervisor when OC Spray has been used.

    3)  Inform detention personnel the subject has been exposed to OC Spray and ensure they have been screened by the detention facility medical staff.

    4)  The use of OC Spray on a subject requires a reportable Use of Force Report in Blue Team.

Note: In addition to the above, when OC Spray is used by a civilian department member, a patrol officer and supervisor will respond to the scene to assist with enforcement action.

6. LVNR®:

Level of Control:
Low Level Force – LVNR® level one (minimum restraint)
Intermediate Level Force – LVNR® levels two (medium restraint) and three (maximum restraint).

a. Description:

The LVNR® is a control technique in which the carotid arteries on the sides of the neck are compressed, restricting blood flow to the brain, causing the subject to pass out.

b. Approved Use:

1) This tool will be used only in accordance with LVMPD policy and training.

2) The LVNR® is a defensive tactic to quickly and safely stop active/aggressive resistance.

c. Disapproved Use:

1) Will not be used on subjects that have been exposed to OC spray or who are experiencing difficulty breathing.

2) Officers will not use any other arm bar technique that involves a neck restraint.

d. Tactical Considerations:

1) When applying the LVNR®, only the amount of force necessary to bring the subject under control will be used.

2) Upon the subject being brought under control the LVNR® will be relaxed.

e. Additional Considerations:

1) All uses of the LVNR® will be reported by completing a Use of Force Report in Blue Team.

2) The arresting or transporting officer will:

a) Notify a supervisor when the LVNR® has been attempted or used.

    b) Summon medical attention on all use of LVNR®, and/or any incident where a subject is injured and/or complains of injury.

c) Inform detention personnel the LVNR® has been applied on the subject and ensure they have been screened by the detention facility medical staff.

7. Electronic Control Device (ECD):

Level of Control:
Intermediate Force
An ECD is a Neuro-muscular Incapacitation device that disrupts the body's ability to communicate messages from the brain to the muscles causing motor skill dysfunction to a subject. The only ECD authorized by this department is the TASER®. Reference SOP #09.11.05, "Electronic Control Device (ECD)."

8. Precision Intervention Technique (PIT):

Level of Control:
Intermediate Level Force – speeds of 40 mph or below
Deadly Force – PIT is considered deadly force in the following instances:

a. At speeds of more than 40mph;

b. When used on motorcycles;

c. When used to stop a vehicle with deflated ties

d. When used on high center of gravity vehicles likely to roll over, such as vans, SUVs and jeeps;

e. In circumstances creating a substantial risk of death or serious bodily injury.

The use of PIT is governed by LVMPD Policies 6/002.02, "Authorized Force Tools, Description, Requirements, Use and Considerations," and 6/014.00, "Vehicular Pursuits."

9. Low Lethality Shotguns:

Level of Control:
Intermediate Level Force – when fired at a distance of five yards or greater
Deadly Force – when fired at a distance less than five yards

The low lethality shotgun should only be used against persons who are armed with a weapon that could cause serious injury or death to themselves or others or when a subject poses a significant threat to the safety of the officer or other persons. This includes, but is not limited to: an edged weapon, club, pipe, bottle, brick, etc.

The low lethality shotgun may be used as an option to deadly force only when circumstances allow the officer involved to bring an incident to a safe conclusion without unnecessary risk to the officers.

The low lethality shotgun will only be used by the SERT team, in accordance with their training. Use in accordance with SOP #08.07.00, "Special Emergency Response Team SERT."

Low lethality munitions will not be used in a civil unrest situation or housing unit unless authorized by a lieutenant or above. The authorized personnel must be trained in the use of low lethality munitions.

10. Chemical Agents:

Hand propelled and propelled chemical agents will only be used under the direction of an incident commander, or by SWAT or SERT during tactical operations.

11. Other Specialized Devices/Techniques:

Canine
(Low Level Force – no bites, Intermediate Level Force – with bites)
Blocking (Low Level Force)
Stationary Vehicle Immobilization Technique (Pinching) (Low Level Force)
Ramming (Deadly Force)

Only those officers assigned to units receiving specialized training in these tactics or tools are authorized to use them, as is true for any other tool or technique not listed in which officers have been trained and have been approved. Training and use and control of such methods are the responsibility of those specialized units involved. These methods should only be employed in a manner consistent with LVMPD Policy 6/002.02, "Authorized Force Tools, Description, Uses and Considerations."

VIII.   INSTRUMENTS USED TO STRIKE, JAB, OR CUT

The use of instruments as a weapon for the purpose of striking, jabbing or cutting (e.g., flashlights, knives*, radio, etc.) other than department authorized batons, is strongly discouraged and acceptable only when other authorized force responses are either unavailable or ineffective.

*Officers are not permitted to carry knives of any kind within the facility, except for the issued rescue knife (seat belt cutter). Reference SOP #09.14.01, "Employee Personal Property on Post."

IX.   FIREARM USE

Level of Control:
Deadly Force – Shots Fired

A. Inspection Requirement:

1. Ensure weapon is clean and functional at all times;

    2. Ensure weapon is loaded with department duty ammunition and not mixed with practice ammunition;

3. Officer is responsible to know how many rounds are loaded in the firearm and each magazine(s).

B. Deployment Requirement:

1. Before using a firearm, officers will, whenever feasible, identify themselves and state their intention to shoot. Example: "Police! Stop or I'll shoot!"

2. Officer shall give the subject a reasonable opportunity to voluntarily comply.

C. Approved Use:

1. This tool will be used only in accordance with LVMPD Policy 6/002.02, "Authorized Force Tools, Description, Uses and Considerations," and training.

2. Officers are to fire their weapons only to stop and incapacitate an assailant from completing a potentially deadly act.

3. To protect the officer or others from what is reasonably believed to be an imminent threat of death or serious bodily injury.

4. To prevent the escape of a fleeing felon who the officer has probable cause to believe has committed a violent felony crime and is an imminent threat to human life if escape should occur (reference NRS 171.1455 and Tennessee v. Garner, 471 U.S. 1(1985)).

5. Destroying Injured or Dangerous Animals - Officers may destroy an injured or dangerous animal under the following circumstances:

   a. In self-defense;

   b. To prevent serious harm to the officer or others; or

   c. When the animal is so badly injured as to require humane relief from further suffering.

NOTE: A seriously wounded or injured animal may be destroyed only after all attempts have been made to request assistance from the agency (Humane Society, Animal Control, Game Warden, etc.) responsible for the disposal of animals. The destruction of vicious animals involves the same rules set forth for self-defense and the defense and safety of others. (Reference LVMPD Policy 5/109.08 for an exception regarding the humane disposal of animals at resident locations.) Also, if the animal's owner is present, the owner will be allowed, at his option, to transport the animal to veterinary care.

D. Disapproved Use:

1. Officers are not authorized to draw or display their firearm, except for training at an approved firearm range, unless the circumstances create reasonable belief that it may be necessary to use the firearm in the performance of their duty.

2. Officers are not authorized to discharge their firearm:

   a. As warning shots;

   b. If it appears likely that an innocent person may be injured;

   c. Either at or from a moving vehicle, unless it is absolutely necessary to do so to protect against imminent threat to the life of the officer or others. The imminent threat must be by means other than the vehicle, itself:

      1) Officers will attempt to move out of the path of an oncoming vehicle, if possible, rather than discharge their firearm;

      2) Officers will not intentionally place themselves in the path of an oncoming vehicle and attempt to disable the vehicle by discharging their firearm;

      3) Officers will not discharge their firearm at a fleeing vehicle (a vehicle moving away from the officer) or its driver.

E. Tactical Considerations:

1. An officer's decision to draw or exhibit a firearm should be based on the tactical situation at hand and the officer's reasonable belief there is a substantial risk that the situation will escalate to the point where deadly force may be justified. Unnecessarily drawing or exhibiting a firearm may limit an officer's alternatives in controlling a situation, create unnecessary anxiety on the part of citizens, and result in an unwarranted or accidental discharge of the firearm.

2. Officers should shoot at the "center mass" for maximum stopping effectiveness and minimal danger to innocent bystanders.

3. Flashlights mounted to firearms will be used only for the purposes authorized and intended and will not be used routinely in the place of a hand-held flashlight.

F. Additional Considerations:

1. Summon medical attention on all use of a firearm and/or any incident where a subject is injured and/or complains of injury.

2. Notify LVMPD Communications and/or the CCDC/NVC Control Room of "Shots Fired!" not applicable for low lethality.

3. Notify a supervisor when a firearm has been used.

    4. Any intentional use of a firearm on a subject requires a reportable Use of Force Report in Blue Team.

X. FIREARMS DEPLOYMENT (DSD)

Within the confines of the CCDC, the NVC, and the THF, firearms deployment shall be authorized by a bureau lieutenant or above and limited to the following circumstances:

A. Staff deploying firearms shall be designated weapons carriers who are currently qualified to carry firearms pursuant to LVMPD policy.

B. The immediate use of firearms to stop an assailant shall be limited to situations where the presence of a weapon (firearm) has been confirmed or the firearm is actively being used to cause death or serious bodily injury.

C. The presence of a firearm shall not constitute justification for the immediate use of firearms.

D. SWAT will be the primary unit deployed, if time allows, when a potential for the use of deadly force exists within the confines of the CCDC, the NVC, and the THF.

XI. REPORTABLE FORCE INCIDENTS

A. The department reviews and/or investigates all reportable use of force incidents to determine their justification, as well as to correct any identifiable training deficiencies. Officers involved in reportable use of force or alleged use of force incidents will immediately notify their supervisor. If unavailable, the officer will notify another on-duty supervisor, and complete the Use of Force Report in Blue Team prior to the end of shift. Supervisors will complete a Citizen Contact for unfounded alleged use of force. Any exceptions must be approved by the supervisor. Supervisors will respond to each use of force incident in which reportable force is used, conduct an investigation and assist with the completion of the Use of Force Report. (NOTE: Acting supervisors are not authorized to complete this investigation).

B. A Use of Force Report is required by each officer involved in a use of force incident. Any civilian employee who uses force (empty hand, OC Spray and/or firearm) is required to complete a Use of Force Report in Blue Team. The report should include a detailed description on the level of force, tool and/or tactic used, to include its effectiveness or ineffectiveness. Each application of a reportable use of force tool/tactic must be separately justified and documented. Additional Blue Team reports may be required depending on the force application (examples are firearm discharge, rifle deployment (excluding SWAT/SERT) and vehicle pursuit).

C. All Use of Force Reports in Blue Team will be completely coordinated through the officer's chain of command and entered into IA Pro within 30 calendar days of the event. Internal Affairs Bureau (IAB) will provide a monthly report to the appropriate deputy chief listing all Use of Force Reports which have exceeded the 30 day limitation. Also refer to LVMPD Policies 6/002.03, "Reportable Use of Force" and 6/002.04, "Post Use of Force Procedures."

1. Use of Force Options NOT requiring a Use of Force Report (when no injury or complaint of injury occurs):

a. Low Profile Pat Down

b. High Profile Pat Down

c. Arm Lock

d. Standing Search

e. Routine Handcuffing

f. Felony Prone Handcuffing (Front and Rear)

g. Felony Prone Search Felony Kneeling

h. Baton Escort Techniques

i. Takedowns with no complaint of injury

2. Use of Force Options requiring a Use of Force Report in Blue Team includes but is not limited to:

a. Any use of force which is required to overcome subject resistance to gain compliance that results in death, injury or complaint of injury, complaint of continuing pain

b. Any takedown which causes injury or verbal complaint of injury

c. Empty hand tactics (takedown with injury, strikes, and kicks)

d. Baton takedowns (strikes, and jabs)

e. Use of OC Spray

f. ECD

g. LVNR® (Level 1, 2 and 3)

h. Canine (with bites)

i. Use of force with a vehicle:

1) Blocking (with intentional contact)

2) Stationary Vehicle Immobilization Technique (pinching – with contact between vehicles)

3) P.I.T. (used or attempted at speeds 40 MPH or below)

j. Use of a low lethality shotgun (five yards or greater)

k. In incidents where deadly force is used, CIRT will complete the appropriate reports.

3. The following incidents require a Firearm Discharge Report:

   a. Shots fired outside the firearm's range, excluding off-duty situations such as hunting or participating in competitive shooting.

   b. A firearm is discharged at a human being and/or an animal in self-defense, or to humanely euthanize an animal (excluding resident areas);

      1) CIRT will complete the Firearm Discharge Report in these incidents.

      2) When a resident area officer discharges a firearm at an animal either in self-defense or to humanely euthanize the animal, the resident officer will complete the Firearm Discharge Report.

Supervisors will respond, without delay to all potential reportable uses of force or alleged use of force. (Reference LVMPD Policy 6/002.04, "Post Use of Force Procedures," for supervisors' responsibilities).

D. Persons subjected to use of force will be closely observed for the need for medical attention.

E. Officers will obtain all available evidence at the scene to include, photographs of injuries or alleged injuries, if available video, audio, and suspect/witness statements. All deadly force incidents will be conducted in conjunction and with input of the Homicide Section. Supervisors will ensure that the preliminary investigation includes as many facts that can be gathered concerning the incident.

F. Any supervisor receiving a complaint of injury from a use of force incident from a shift other than their own, needs to complete a preliminary investigation, complete with a subject interview, photographs and contact information, for proper entry into Blue Team. Blue Team entries need to be completed by the responsible parties. Completed preliminary investigation should be forwarded to the responsible chain of command.

G. In order to assist the department in the analysis and gathering of use of force data, all Use of Force Reports will have an Event Number. The officer is to call 702-828-3802 and supply the dispatcher with the following information:

   1. The officer's name and P#.

   2. The officer's assignment within the Detention Services Division (DSD).

   3. Inform the dispatcher that this is a "request for a Use of Force Report." The officer will utilize the "400 code" of "463" (investigation pending.)

   4. Inform the dispatcher to clear the event, using the following code:

      a. "C." Meaning no response by patrol or detective to CCDC, NVC or THF unless response is necessary by homicide. An incident or crime report will be filed by the officer.

      b.  "K." Meaning report other than incident or crime report will be filed, only need the event number for the Use of Force Report.

H.  All Use of Force Reports within the division will be reviewed by each level in the chain of command up through and including the Deputy Chief, DSD.

I.  A copy of all Use of Force Reports which involve the use of an ECD will be sent to the Administrative Lieutenant, Staff Administration Operations Bureau (SAOB), who is keeping statistics on ECD utilization within this division.

J.  The reports should be compiled by the end of shift.

K.  Applicable Reports - Any Use of Force Report, Officer's Report, DSD iTAG Incident or Violation Reports will contain the following:

    1.  Inmate's name, ID number.

    2.  Time and exact place of incident.

    3.  A description of incident.

    4.  Any information relevant to incident.

    5.  Reasons for the degree of force used.

    6.  Results of such force.

    7.  Medical treatment needed and obtained, if any; name of medical personnel who provided treatment.

    8.  Where inmate is re-housed when appropriate.

    9.  When applicable, reason for not notifying supervisor prior to using force.

## XII.  INVESTIGATIVE RESPONSIBILITIES: USE OF NON-DEADLY FORCE

Non-deadly force requiring a Use of Force Report but not resulting in death or serious bodily injury will be investigated by the officer's chain of command. Note: Acting supervisors are not authorized to complete this investigation.

A.  All reportable uses of force on a subject, regardless of visible injury, will be photographed and downloaded into Blue Team. If the Crime Scene Investigations Section (CSI) responds and documents the injuries, or if for some reason the photos cannot be downloaded into Blue Team, articulate this in the report, to indicate where the photos can be located.

B.  Officer Responsibilities:

    1.  Notify his/her respective immediate supervisor when a reportable non-deadly use of force occurs.

2. Complete the Use of Force Report in Blue Team and all other required reports connected to the incident when reportable force is used (See Section XI.A2).

    a. Include a synopsis of the incident

    b. Ensure each of the prongs of Graham v. Connor and the Objectively Reasonable Force factors are addressed (See Use of Force, 6/002.00; III).

3. If there are any injuries to an officer complete an Occupational Injury/Illness Report and an Officer's Report.

4. Forwards the Use of Force Report and any other required reports to the investigating supervisor via Blue Team, sending a copy to their immediate supervisor.

5. For additional ECD requirements refer to LVMPD Policy 5/110.10 "Occupational Exposure to Blood or Other Potentially Infectious Materials" and SOP #09.11.05."Electronic Control Device (ECD)." For additional requirements concerning a use of force involving a canine or a vehicle, refer to LVMPD Policy 6/002.04 "Post Use of Force Procedures."

C. Supervisor Responsibilities:

1. Ensure medical assistance has been requested when applicable.

2. Responds to the scene without unnecessary delay, if unable to respond, requests an alternate supervisor at the same level or higher respond to the scene.

3. Document investigation in a Citizen Contact (CC) in Blue Team when alleged use of force is determined to be unfounded.

4. Ensure the level of force used is a use of non-deadly force.

5. Notify the CCDC/NVC Control Room, the bureau lieutenant or watch commander, to ensure proper notifications are made.

6. Interview the subject, officer(s), medical personnel and witnesses who claim to have firsthand knowledge of the incident. Witness statements should be documented on a voluntary statement (or recorded, and are obtained by an uninvolved party).

7. Ensure photographs are taken and placed into Blue Team, of the subject(s), the scene and officer(s) involved and collect any evidence related to the use of force.

8. Check the surrounding area (e.g. CCDC/NVC Control Room) for any video of the incident.

9. Viewing of the Third Party Video Prior to Giving Statements:

An officer shall be given the opportunity to review third party surveillance video when the video depicts the officer's actions during a reportable use of force incident. For the purpose of this policy, third party surveillance video is considered as video recorded and made available by third party security systems, video captured from cellphones, iPads, etc., and/or video recorded by hand held cameras at CCDC, which we are in legal possession of and are able to legally view.

The immediate supervisor (or investigating supervisor) will:

    a. Permit the officer to review only their own actions as depicted by the third party surveillance video. If multiple officers are shown on the third party surveillance video using force, it's necessary that each officer view only their own actions - not the actions of the officers - before doing his/her Use of Force Report;

    b. Ensure the third party video is impounded as evidence and noted in Blue Team.

10. Review all applicable reports in Blue Team to ensure accuracy and completeness.

    a. Document how use of force has been determined to be justified and in adherence to procedure;

    b. Document any training deficiencies identified and how they were corrected;

    c. Document if misconduct is identified and how it has been addressed.

    d. If necessary, ensures that the employee completes Part I of the Occupational Injury/Illness/Exposure Report (LVMPD 26), or ensures entire form is completed if employee is unable to complete.

    e. Completes Part II of the Occupational Injury/Illness Report (LVMPD 26) during the same tour.

    f. Assign the re-bookings, maintenance reports, and other connected reports as needed.

11. Determine whether involved area needs to be secured due to:

    a. Preservation of the crime scene.

    b. Damage or maintenance problems.

    c. Lack of determination that the area involved is free of contraband, weapons, escape tools, or decontamination.

12. Notifies the lieutenant or watch commander when an ECD has been used.

13. Notifies lieutenant or watch commander when significant force was used or alleged.

14. For additional ECD requirements refer to SOP #09.11.05, "Electronic Control Device (ECD)." For additional requirements concerning a use of force with a vehicle, refer to LVMPD Policy 6/002.04 "Post Use of Force Procedures".

D. Lieutenant Responsibilities:

1. Respond to the scene when significant force is used. If unable to respond, requests an alternate supervisor at the same level respond to the scene.

2. Ensures interviews, photographs and reports are properly completed. Completes review of the Use of Force Report and all attached documentation and evidence in Blue Team to ensure accuracy and completeness.

3. Notifies the IAB lieutenant if significant force is used.

4. The on-duty bureau lieutenant where the incident occurred will report all incidents requiring a Use of Force Report to the bureau commander having primary responsibility. Incidents where there is no significant force used or resulting in no significant injury shall be reported no later than the next business day to the administrative staff of the division. Incidents where there is an injury caused by significant force (e.g., detainee has to be treated by a physician immediately, or taken outside CCDC, NVC, or THF for treatment for his/her injury), the bureau commander having primary responsibility will be notified immediately and given a verbal report of the incident, any injuries sustained, and the type of force used.

5. Completes a package of all pertinent reports not connected to Blue Team and any applicable video as well as a cover sheet from the bureau lieutenant and forwards it to the appropriate bureau commander. The reports shall be due no later than the conclusion of the tour of duty.

6. Ensures that all appropriate reports have been forwarded to the appropriate offices, sections, and bureaus.

7. Makes other notifications through the chain of command as directed by the appropriate bureau commander.

E. Bureau Commander Review of Use of Force Incidents:

1. Complete the Use of Force Administrative Review in Blue Team and forward to IAB within 30 days of date of incident.

2. This review will include at a minimum an analysis of:

   a. Incident overview (bureau lieutenant's briefing)

   b. Training

c. LVMPD Communications/notification

d. Adherence to policy and procedures

3. The analysis will attempt to determine what led to the incident and what, if anything could be done to avoid the repetition of such an incident.

4. Each respective bureau commander will affect all necessary changes to policy and practice, as indicated by the review process and any other pertinent findings of any independent investigation or review.

XIII. INVESTIGATIVE RESPONSIBILITIES: USE OF DEADLY FORCE OR FORCE INVOLVING SERIOUS BODILY INJURY:

It is the policy of this department to conduct a fair, impartial and thorough investigation of all uses of deadly force for the interest of the officer, the department and the community alike.

A. Primary Responsibilities in a Deadly Force Investigation:

Incidents of deadly force, whether or not they result in a fatality, and/or incidents resulting in serious bodily injury will be investigated by the Homicide Section/FIT (Force Investigation Team) and the CIRT (Critical Incident Review Team). Refer to LVMPD Policy 6/002.04 "Post Use of Force Procedures."

B. Involved/Witness Officer Responsibilities:

1. Ensure life safety of others.

If needed, will request medical assistance through the CCDC/NVC Control Room.

2. Ensure the scene is safe and secure and separates potential witnesses.

3. Notify his/her respective immediate supervisor when a deadly or potentially deadly use of force occurs.

4. Officer Statements:

a. Involved Officer: An officer or supervisor, who participated in, directed, or influenced the application of the use of force.

Involved officers <u>may</u> provide a recorded statement to FIT investigators. If given, involved officer statements should be taken at least 48 hours after the incident by FIT investigators. Note: The 48 hours may be waived by the involved officer.

b. Witness Officer: An officer or supervisor who did not participate in or directly influence the application of the use of force.



Witness officers shall provide a recorded statement to FIT investigators. An officer who refuses to provide such information shall be deemed to be in violation of LVMPD Policies 4/104.04 "Obedience and Insubordination" and 4/104.14 "Duty to Provide Statements." Witness officer statements will be taken at a date, time and location determined by FIT investigators.

C. Supervisor Responsibilities:

1. Responds to the scene without unnecessary delay. Upon notification of a deadly force incident, whether or not death occurs, and/or an incident resulting in serious bodily injury, notifies the watch commander, the officer's lieutenant and bureau commander.

2. Any officer or supervisor assigned, involved, or arrived on the scene of a use of force investigation shall not leave until released by the supervisor in charge of the event.

3. The supervisor first on scene will act as Incident Commander (per LVMPD Policy 5/213.06 "Major Incident and All Hazard Plan") until relieved by a bureau lieutenant or watch commander and will:

   a. Ensure medical attention is provided for those in need;

   b. Coordinate the search for outstanding suspects;

   c. Ensure the immediate crime scene is secured and protected;

   d. Oversee the identification and isolation of witnesses;

   e. Ensure witness officer(s) and involved officer(s) are separated and placed in a secure and safe environment, with a witness monitor.

   f. Contact the CCDC/NVC Control Room and advise the type of incident and request that notifications be made;

   g. When practical, only the involved officer and a supervisor should be present during the Public Safety Statement (PSS). If multiple officers are involved, the PSS should be done separately with each involved officer, by the same supervisor. The questions below will be read directly from the PSS card to the officer. A supervisor will write down the officer's response. The PSS will be documented and maintained by the supervisor until provided to a FIT detective. No unauthorized card or form will be used for the PSS documentation (refer to LVMPD Policy 6/002.04 "Post Use of Force Procedures").

4. In the case of deadly force, whether or not it results in a fatality, and/or an incident resulting in serious bodily injury, requests the Homicide Section to be notified. Notifies the CIRT through LVMPD Communications.

5. Incident Commander Responsibilities:

   a. Designate a Command Post;

   b. Establish the outer perimeter, the staging area, and the media staging area;

   c. Identify and separate civilian witnesses;

   d. Identify and separate officer witnesses;

   e. Assign an officer witness monitor(s) and explain their duties to them, which are:

      1) To ensure that involved officers and witness officers do not discuss the incident being investigated.

      2) The monitor shall allow the officer's attorney and association representative to communicate privately with the officer.

      3) The monitor will not talk to the officer about the facts and circumstances of the incident.

      4) Remain with the officer until firearms countdown is completed.

   f. Ensure all notifications are made (refer to Section XIV of this policy).

   g. Designate a location for the initial briefing. Only essential personnel will attend the briefing (refer to LVMPD Policy 6/002.04 "Post Use of Force Procedures," on essential personnel and what will be included in the briefing).

D. Police Employee Assistance Program (PEAP) Assistance:

A PEAP member responds to use of force incidents resulting in death, serious injury, where death could have resulted or any intentional discharge of a firearm at a human being. PEAP arranges for a psychological counseling of involved employee(s) by a qualified psychologist and advises the appropriate chain-of-command of the employee's readiness to return to duty.

E. Homicide Section Will:

1. Conduct a thorough, objective investigation of the incident, using accepted investigative procedures and techniques (refer to LVMPD Policy 6/002.04 "Post Use of Force Procedures.")

2. Complete the Use of Force Report in Blue Team.

## XIV. NOTIFICATIONS BY LVMPD COMMUNICATIONS

The lieutenant ensures LVMPD Communications has made the appropriate notifications. The following guidelines for notifications are to be made by LVMPD Communications dependent upon the type of incident:

A. Use of Deadly Force or Force Involving Serious Bodily Injury:

1. The officer's immediate supervision (sergeant, lieutenant, and captain);
2. The watch commander (and area lieutenant);
3. Violent Crimes Section;
4. FIT;
5. Office of Internal Oversight Bureau OIO Commander;
6. CIRT;
7. CSI Section;
8. Risk Management Section;
9. PEAP;
10. Respective collective bargaining unit

B. Property Damage Incident: The Criminalistics Bureau for non-injury or property damage incidents, if necessary for rebooking.

C. Vehicle Incident: The officer's immediate supervisor and the Traffic Bureau.

D. Unintentional discharge or accidental discharge of a firearm at anything other than a person, or animal shoots:

1. The officer's immediate supervision (sergeant, lieutenant, and captain);
2. The watch commander (and area lieutenant);



3. The officer's bureau commander;

4. CSI Section;

5. CIRT will investigate any unintentional discharge of a firearm that occurs during a police operation, such as the inadvertent discharge of a shotgun while deploying it in response to a high-risk call, and/or when officer discharges firearm at an animal.

6. IAB will investigate any accidental discharges that occur not as the result of a police operation, such as an unintentional discharge of a shotgun while inspecting it at an area command parking lot.

7. Risk Management Section (when injury or property damage result);

8. PEAP;

9. Respective collective bargaining unit

E. Use of Force with a Vehicle:

1. PIT over 40 MPH and ramming (resulting in death or serious bodily injury):

   a. The officer's immediate supervision (sergeant, lieutenant and captain)

   b. The watch commander and area lieutenant

   c. CIRT

   d. FIT

   e. OIO Bureau Commander

   f. Traffic Bureau/Fatal Detail

   g. Risk Management Section

   h. CSI Section

   i. PEAP

   j. Respective collective bargaining unit

2. PIT at speeds below 40 MPH (when contact is made):

   a. The officer's immediate supervisor

   b. The watch commander and area lieutenant

   c. An on-duty Traffic Bureau supervisor

    F. Officer Representation: The Homicide Section lieutenant, Robbery/Homicide Bureau commander, or the Investigative Services Division (ISD) commander will ensure officer(s) involved in shooting incidents have been informed of their right to have either their bargaining association representative, or another representative of their choice, present with them during any phase of the investigation.

## XV. INVESTIGATIVE RESPONSIBILITIES

Incidents of Deadly Force or wherein Serious Bodily Injury Results: The involved officer(s) are placed on relief of duty status by the immediate supervisor (completes LVMPD 117, Notice of Relief of Duty), for any incident involving the use of deadly force or wherein serious bodily injury results. (Supervisors will place other officer(s) in relief of duty status at the direction of PEAP. This will be done based on all the facts and circumstances known to the PEAP members and only for the well-being of that employee.) FIT ensures the officer's weapon (if used in a deadly force incident) is impounded by the Criminalistics Bureau and a loaner weapon is provided by the Homicide Section, if appropriate. The supervisor also notifies the bureau commander in writing regarding the relief of duty and rearming the officer. The identity of department employees involved in deadly force incidents is not released to the public or media for 48 hours. The lead investigator will complete the Use of Force Report in Blue Team and forward it to IAB lieutenant and the officer's chain of command.

Fatal/Near Fatal Incident: FIT of the Homicide Section investigates all deaths and serious injuries resulting from the use of force (including in-custody incidents) and incidents involving intentional shootings at human beings and submits a written report of the findings to the sheriff through the ISD commander. The ranking FIT detective present has command of the investigation. All media releases concerning the incident will be made by the FIT lieutenant.

For more information, reference LVMPD Policy 6/002.04 "Post Use of Force Procedures."

## XVI. MEDICAL SCREENING

Whenever an officer applies a use of force option upon a subject that results in a visible injury or complaint of injury, the officer will monitor the subject and immediately summon medical attention. When requesting medical attention, the officer will provide the nature of the injury for responding medical personnel. The involved inmates shall be screened by medical personnel and be observed as often as deemed prudent based on the medical judgment and recommendations of medical personnel. If necessary, document on an Inmate Observation Sheet in order to detect changes in the inmate's behavior or physical condition as a result of injuries that may have been sustained. All reportable uses of force on a subject regardless of visible injury will be photographed and downloaded into OnBase.

Medical attention will be summoned for the following use of force applications regardless of visible injury or complaint of injury:

A. Baton/Impact Weapons- Any strikes to the head, neck or groin area

B. OC Spray- Direct exposure to the facial area

C. LVNR®- When applied

D. ECD- Probe strikes to the head, neck or groin area

E. Use of Canine- All bites

F. Use of Force with a Vehicle:

1. Precision Intervention Technique- Over 40 MPH
2. Blocking- Contact with an occupied vehicle
3. Stationary Vehicle Immobilization Technique (Pinching) - All
4. Ramming - All

G. Use of Force with a Firearm:

1. Low Lethality Shotgun- All strikes
2. Handgun/Shotgun ("OO" Buck & Slug)/Rifle- Any discharge

Reference SOP #13.00.00, "Medical Services."

CHARLES L. HANK III, DEPUTY CHIEF
DETENTION SERVICES DIVISION

CLH:*tn*

**Las Vegas Metropolitan Police Department**
**Detention Services Division**
**Las Vegas, NV**

**SOP 14.00.00**
**Issue Date 04/10/1986**
**Annual Review 06/01/16**
**Revision Date 07/08/15**

## STANDARD OPERATING PROCEDURE

SUBJECT INMATE REQUESTS/GRIEVANCES AND COMPLAINTS/GRIEVANCES AGAINST STAFF

### POLICY

A viable complaint process is available to inmates in the Clark County Detention Center (CCDC) and North Valley Complex (NVC) to allow systematic redress of conditions relating to confinement, prompt attention to medical and health-related concerns, and to initiate investigations of alleged officer misconduct against those persons incarcerated and to inform the complainants of the results of the investigations. This complaint process will ensure that the department's standards of conduct are adhered to and maintain a high degree of professionalism in the discharge of duties. The process will protect officers from unjust and malicious charges when they perform their duties correctly.

### REFERENCE

4th Edition ACA Standards for ALDF: 2A-27, 3A-01, 6A-07, 6B-01, 6C-18

LVMPD Department Manual: 5/101.26 Maintenance of Values and Ethics

### OVERVIEW

This procedure prescribes guidelines and procedures for inmates' requests and grievances and complaints/grievances against staff.

All inmate requests and grievances shall receive written, signed responses within a stated period of time. This policy encourages internal problem solving at the level of most direct inmate contact; offers the facility a means for continuous review of administrative policy and decision; allows for the acquisition of written documentation of complaints for subsequent administrative review; reduces the number of legal problems emanating from the inmate population; and functions as the proper method for appeal of Classification Committee and Conduct Adjustment Board (CAB) dispositions.

### PROCEDURES

I. INFORMAL RESOLUTION

Informal resolution between the inmate and staff member is encouraged. If the inmate cannot obtain an informal solution and wishes to further address the request/grievance, the housing unit officer shall notify the floor sergeant. Depending on the urgency of the complaint, a corrections officer or floor sergeant will attempt to informally resolve, at their level of authority, most requests and grievances.

II. FORMAL INMATE REQUEST/GRIEVANCE

A. Instructions to the Inmate:

If an inmate cannot resolve his/her request or grievance through informal contact with staff, he/she may wish to file a formal grievance for administrative remedy.



B. Officer's Responsibility:

1. Provide the inmate with the Inmate Request/Grievance Form. Inmates on the ground floor and cots will also be given golf pencils.

2. Instruct the inmate to write his/her complaint or request in the space provided and assist him/her as necessary.

3. Accept the completed form from the inmate and retrieve golf pencils from inmates on the ground floor. The receiving officer should ensure the inmate has notated whether the form is either a request or a grievance and ensure the content is of appropriate nature. If the request/grievance cannot be understood or is derogatory language, the officer should ***document on the request/grievance that the inmate was instructed to rewrite their request/grievance on another form and resubmit the corrected form to the officer. The Officer will assist the inmate and ensure that his/her request is turned in and routed properly. The officer will send the original request/grievance form to the Policy and Procedures (P&P) Section for grievance tracking.***

4. The receiving officer shall print his name, P#, time and date legibly and provide the inmate with the acknowledgment (the pink copy of the form).

5. Inform the inmate of their ID# and have it written on the form. If the request involves property issues, in addition to the ID#, also place the property # on the form.

6. Route the form through proper channels of command to the designated addressee if housing unit officer is unable to resolve request/grievance. The officer shall attempt to resolve all request/grievances first before routing them. All complaints of excessive force, loss of free time, linen problems, housing problems, hygiene, safety, sanitation, sexual harassment, discrimination, fear, and staff misconduct and any other grievances not resolved at the officer level, will be investigated/reviewed by the sergeant and responsible platoon lieutenant before the Inmate Request/Grievance Form is processed through the chain of command. (See Section VI of this SOP.)

7. Grievances that are not resolved by the officer or sergeant will be forwarded through the chain of command for resolution. The final step in resolution is the Deputy Chief, Detention Services Division (DSD).

8. Inmates may address grievances through the chain of command to get resolution to unresolved grievances. The inmate should provide documentation attached to the grievance showing he/she has attempted to resolve the grievance through the chain of command. The officer will forward these grievances to the sergeant who will initial and forward through the chain of command until the grievance is resolved.

C. Sergeant:

1. Each supervisor, or acting supervisor, will annotate every Inmate Request/Grievance Form to indicate that it was reviewed and an attempt was made at resolving the Request/Grievance. This will be done by writing, at the

3,41

bottom of the form, their initials and P# (legibly) before forwarding up the chain of command.

2. Each grievance concerning use of force, hygiene, safety, sanitation, sexual harassment, discrimination, fear, or staff misconduct will be investigated by the supervisor and answered or forwarded up the chain of command as determined by the supervisor.

D. Response:

Facility staff will act on the matter and provide a written response to the inmate within 72 hours of the time the inmate filed the grievance with the officer, excluding weekends and holidays.

E. Urgent or Emergency Request:

When the complaint is of an urgent nature and threatens the inmate's immediate health and welfare, reply and action must be immediate. The floor sergeant shall be advised and become involved in such instances.

F. Disposition:

When the proper course of action is determined, the Request/Grievance Forms will be completed and signed (legibly with P#), by the appropriate individual. If the Request/Grievance Form is marked as a request, the original (white in color) will be placed in an inter-departmental mail envelope (1000-miler) and routed to the DSD Records Bureau. If the Request/Grievance Form is marked as a grievance, the original (white in color) will be placed in an inter-departmental mail envelope (1000-miler) and routed to the P&P. P&P will enter the grievance information in the Grievance Tracking Program and forward the grievance to the DSD Records Bureau to be placed in the inmate's file. The yellow copy will be returned to the inmate with a response.

III. <u>CITIZEN REVIEW BOARD COMPLAINT FORM</u>

A. Inmates requesting to make a complaint to the Citizen Review Board (CRB) will be provided with the CRB Complaint Form. The form is available at the end of this SOP. The form is available in English and Spanish. (<u>Citizen's Review Board Complaint Form</u>)

B. The housing unit officer will assist the inmate with the form and provide an ink pen if needed.

C. Completed CRB Complaint Forms will be placed in an inter-departmental mail envelope addressed to the Citizen Review Board and placed in the outgoing mail by the receiving officer.

IV. <u>LAS VEGAS JUSTICE COURT INTAKE SERVICES INMATE REQUEST FOR ASSISTANCE</u>

A. For an inmate who may wish to resolve an issue or ask a question pertaining to a Las Vegas Justice Court Case(s).



1. The housing unit officer will provide the inmate with the Las Vegas Justice Court (LVJC) Inmate Inquiry Form and instruct him/her to complete the form. Assist the inmate, if necessary. The following procedure will be followed:

   a) For security reasons, Inmate Inquiry Forms must be submitted to the court through the US Mail. For additional information regarding inquiries on research record information or court documents, see the back of the Inmate Inquiry Form. Responses from the court to the inmate's correspondence will be returned via the US Mail. Inmate inquiry correspondence should not be sent through the county's inter-office mail system. Any inmate inquiry documents received by this means will be returned unopened.

   b) Where an inmate request requires the payment of a LVJC fee (as outlined on the form), the inmate must pay the appropriate charge, unless a judge has issued an order allowing the inmate to proceed in Forma Pauperis (without fee). Inquiries submitted without the fee, will be returned pending submittal of the fee.

   c) To submit an Inmate Inquiry Form to LVJC, inmates should submit to CCDC Inmate Accounts the following:

      1) A completed LVJC Inmate Inquiry Form.

      2) A $5.00 or $10.00 (depending on the number of documents requested) Money Release Form addressed to the Las Vegas Justice Court. The inmate must specify amount.

      3) A stamped envelope addressed to Las Vegas Justice Court, PO Box 552511, Las Vegas, NV 89155-2511.

      4) Include a self-addressed stamped envelope for response.

      5) Inmates Accounts staff will mail the packet.

   d) Any unused fees will be REFUNDED and returned to the address given on the Inmate Inquiry Form from the LVJC.

2. The court will not provide information to inmates on inquiry requests for transportation, future court dates, or questions about the status of their case. Information on these matters should be obtained from sources such as CCDC, the Clark County Public Defender's Office, the inmate's counsel, or the Victim Information and Notification Everyday (VINE®) Service at 1-888-268-VINE or 1-888-268-8463 using the inmate seven-digit ID# when prompted. If the ID# is less than seven digits, add zeros to the front of the digits.

B. Request additional forms as needed, through the use of the Supply Requisition Form.



V. APPEAL PROCESS FOR CLASSIFICATION

Inmate:

A. Will fill out a grievance form in the time allotted reference SOPs #18.01.00, "Classification" and #15.04.00, "Inmate Discipline."

B. Will send the Grievance Form for CAB appeals to the Captain, Central Booking Bureau (CBB) or designee, and to the Classification Committee for custody level appeals (first step).

The appeal must be submitted, in writing, within five working days of the CAB hearing and must state specific reasons for the appeal.

C. Second level of appeal is to the Deputy Chief, DSD or designee, who will be an independent authority:

1. The appeal must be submitted, in writing, within five working days of receipt of the CBB captain's response, and must state specific reasons for the appeal.

2. The decision of the Deputy Chief, DSD or designee is final and binding.

3. For additional information reference SOPs #18.01.00, "Classification" and #15.04.00, "Inmate Discipline."

VI. INMATE COMPLAINTS/GRIEVANCES AGAINST STAFF

A. Complaints can be received via an Inmate Request/Grievance Form by any officer or supervisor within the DSD.

B. Specific Responsibilities:

1. Officer:

a) Receives complaint from inmate.

b) Any complaint that alleges DSD employee misconduct against an inmate will be forwarded to the appropriate floor sergeant immediately.

2. Floor Sergeant:

a) Complaint will be reviewed and investigated by a sergeant or above.

1) Every attempt should be made to resolve the complaint at this level.

2) If the complaint is resolved, the Inmate Request/Grievance Form will be completed and signed by the floor sergeant and distributed normally.

b) If the complaint is not resolved by the floor sergeant, the grievance will be forwarded to the appropriate platoon lieutenant.

c) If the complaint (allegation) includes an accusation of a violation of department policy, procedure, rule, regulation, or local, state, or federal law, the floor sergeant will document the complaint on a Statement of Complaint (SOC), LVMPD Form 272, and handle in accordance with LVMPD Department Manual 5/101.26, "Maintenance of Values and Ethics."

d) Forward a copy of the SOC to the appropriate platoon lieutenant.

3. Bureau Lieutenant:

a) The complaint will be reviewed by the appropriate platoon lieutenant.

1) Every attempt will be made to resolve the complaint at this level.

2) If the complaint is resolved, the Inmate Request/Grievance Form will be completed and signed by the responsible platoon lieutenant and distributed normally.

3) If the complaint is not resolved or the responsible bureau lieutenant determines that the allegation is a violation of department policy, procedure, rule, regulation, local, state, or federal law, the responsible platoon lieutenant will complete a SOC, LVMPD Form 272, and handle in accordance with LVMPD Department Manual 5/101.26, "Maintenance of Values and Ethics."

b) Forward a copy of the SOC to the appropriate bureau commander.

4. Bureau Commander:

Reviews the complaint.

C. Investigation of complaint will be handled in accordance with LVMPD Department Manual 5/101.26, "Maintenance of Values and Ethics."

***CHARLES L. HANK III***, DEPUTY CHIEF
DETENTION SERVICES DIVISION

***CLH:cc***

Attachments: <u>CRB English Complaint Form</u>
<u>CRB Spanish Complaint Form</u>

**Las Vegas Metropolitan Police Department (LVMPD)**
**Citizen Review Board (CRB) Complaint Form**

**COMPLAINT INFORMATION:**
Title: Mr.○ Mrs.○ Ms.○
Complainant Name: ______________________________
Contact Mailing Address: ______________________________
City: ______________ State: __________ Zip: __________
Email Address (Optional): ______________________________
Contact Phone # (Home): ______________________________
Contact Phone # (Work): ______________________________
Ethnicity (Optional): ______________ DOB: ______________
Last Four Digits of Social Security Number: ______________
If in custody, Facility and Inmate ID#: ______________________________
Out of Custody Address & Phone: ______________________________

************************************************************************************************

**INCIDENT INFORMATION:**
Location of incident: ______________________________

Date of Incident: ______________ Time of Incident (if known): ______________

Name & Badge # of Accused Officer(s): ______________________________

***Statement of Complaint:***

Please state in exact detail what occurred, names of all witnesses and police officers who observed the incident, name(s) of officers who engaged in alleged misconduct and what misconduct occurred, what injuries, if any, you suffered and all other facts related to the incident. Do not include unsubstantiated information, such as gossip or rumor. Attach any reports or documentation, such as photographs, medical or police reports, etc. which relate to the incident. You may submit this complaint online or it may be mailed, faxed, or emailed to: **Office of the Executive Director, Citizen Review Board, 330 S. Third Street, Suite 670, Las Vegas, NV 89101, fax number 702-382-7426, email crbinfo@clarkcountynv.gov**

**Specify any personal information you want redacted from information provided to the subject officer.**

**SWORN STATEMENT OF COMPLAINANT: I HEREBY REQUEST the Board investigate the conduct alleged in this complaint and take appropriate action, as authorized by law. I hereby state under penalty of perjury that I am the complainant in this complaint, that I have prepared, read, and fully understand all matters set forth in this complaint, that these proceedings are confidential as provided by law and that all information provided in this complaint is true and correct. (Please be advised that by signing this document you waive privacy and confidentiality in regards to records of criminal history and such other information as is necessary to verify the allegations of your complaint.) The information being requested on this form is to enable us to collect all background information and reports necessary to make a determination on the complaint.**

Print Name: ______________ Signature: ______________ Date: __________

**DESCRIPTION OF INCIDENT:**
(Attach additional sheets as needed and sign the bottom of each additional page.)

************************************************************************************************

**CITIZEN REVIEW BOARD USE ONLY**

| Date Received: | Allegations: |
|---|---|
| Case No.: | Status: |

39

**Las Vegas Departamento de Policía Metropolitana (LVMPD)**
**Junta Ciudadana de Revisión (CRB) Formulario de Queja**

**Demanda de Información:**
Titulo: Sr.o Sra.o Srta.o
Denunciante nombre: ______________________________
Denunciante Direccion de correo: ______________________________
Cuidad: ________________Estado: ____________ Código Postal: ____________
Direccion de correo electronico (opcional):______________________________
Telephono (casa):______________________________
Telephono (trabajo):______________________________
Fecha de nacimiento: ____________
Si en custodia, instalaciones y numero de indentificaion interno: ______________________
Nombre y numero de placa de los oficiales aculados: ______________________________

**Información de Incidente:**

**Lugar del incidente:** ______________________________

Fecha del incidente: ______________ Hora del incident (si se conoce):______________

Nombre y Numero de placa de los oficiales acusados:______________________________

**Declaración de la Denuncia:**
Por favor, especificar en detallo exacto lo que ocurrió, los nombres de todos los testigos y agentes de policia que observaron el incidente, en nombre (s) de los agentes implicados en la supuesta mala conducta y lo que ocurrió la mala conducta, lo que las lesiones, lo ¿Ha sufrido, en su caso y todos los demás hechos relacionados con el incidente. No incluyen información sin fundamento, como el chisme o rumor. Adjuntar todos los informes o documentación, como fotografías, informes médicos o policiales, etc. que están relacionados con los archivos que se relaciona con el incidente. Usted puede presentar su queja en línea o se puede enviar por correo, fax o e-mail a: Oficina del Director Ejecutivo, Ciudadano Junta de Revisión, 330 S. Tercera Calle, Suite 670, Las Vegas, NV 89101, fax 702-382-7426, correo electrónico crbinfo@clarkcountynv.gov

**Especificar cualquier información personal que desee redactada a partir de información proporcionada a la official.**

**Declaración Jurada del Denunciante: Por la presente solicito la junta investigar la conducta alegada en la presente queja y tomar medidas apropiadas, según lo autorizado por la ley. Por la presente declaro, bajo pena de perjurio que soy el autor de esta queja, me han preparado, leer y entender todas las cuestiones identificadas en la presente queja, que estos procedimientos son confidenciales conforme a lo dispuesto por la ley y que toda la información proporcionada en esta queja es verdadera y correcta. (Por favor, tenga en cuenta que al firmar este documento usted renuncia a la privacidad y confidencialidad con respecto a los registros de antecedentes penales y demás información que sea necesaria para verificar las alegaciones de su queja.) La información que se solicita en este formulario es para que podamos recoger todos los antecedentes y los informes necesarios para tomar una determinación sobre la queja.**

Escriba el nombre: ______________Firma: __________________ Fecha: __________

**Descripción del Incidente**:
(Adjunte hojas adicionales si es necesario y firmar la parte inferior de cada página adicional.)

**Revisión De Los Ciudadanos El Uso Bordo Sólo**

| Date Received: | Allegations: |
|---|---|
| Case No. | Status: |

# L V M P D
# interoffice
## MEMORANDUM

**To** : Deputy Chief Hank III
**From** : Sgt. L. Xan Weir
**Subject** : AN-41-15
**Date** : 7/8/2015

*The attached AN-41-15 contains:*

**SOP 09.11.04** **HAND RESTRICTING TUBES**
*Annual Review:* Per Lt. Lepore, page 2, H, add additional location were tubes are kept.
*Approved by:* Capt. Baker, Lt. Lepore, Lt. Peralta, and Sgt. Gurule

**SOP 11.05.00** **FOOD SERVICES**
*Annual Review:* No Changes.
*Approved by:* Capt. Suey, Lt. Kelso, and CO Randall Brown, Kitchen Liaison

**SOP 14.00.00** **INMATE REQUESTS/GRIEVANCES AND COMPLAINTS/GRIEVANCES AGAINST STAFF**
*Annual Review:* Per Capt. Baker, page 2, B, add verbiage. *Approved by:* Capt. Suey, Capt. Teel, Lt. Kelso, and Lt. Meyer

**SOP 19.03.00** **INMATE WORKER PROGRAM (SENTENCED AND VOLUNTEER)**
*Annual Review:* Per Sgt. Albright, page 7, E, change verbiage. Page 8, c, add 'sergeant or designee'; Per Sgt. Neville, page 4, III, change '260' to '350'. Page 8, c, add verbiage. Page 10-11, I, remove entire DSD Maintenance Workers section. Page 16, 3, add verbiage. Page 12, F, 2 and 3, change verbiage; Per Sgt. Weir, page 6-7, C and D, update referenced SOP and updated link. Page 7, F, 6, changed verbiage. Page 9, i, change verbiage. Page 11, J, 4, change verbiage. Correct grammar throughout.
*Approved by:* Capt. Baker, Lt. Flippo, Sgt. Albright, and Sgt. Neville.

# LAS VEGAS METROPOLITAN POLICE DEPARTMENT

**July 2, 2015**

**ADMINISTRATIVE NOTICE** **REFERENCE: AN-41-15**

**TO:** **Detention Services Division Personnel**

**SUBJECT:** **Revised SOP's**

Attached are current revision/deletion and/or new SOP(s). Existing pages, the entire SOP(s) or GO/PO(s) in lieu of the revisions are obsolete and shall be removed and destroyed.

The most current "Revision Date" supersedes all others.

Copies for the post are available through the SOP icon under DSD Applications on all computers.

**REVISIONS AND/OR NEW SOP'S**

| # | | SOP# | RVSD DATE | NO. OF PAGES | REPLACE |
|---|---|---|---|---|---|
| 1 | Hand Restricting Tubes | 09.11.04 | 07/08/15 | 2 | All Pages |
| 2 | Food Services | 11.05.00 | 07/08/15 | 5 | All Pages |
| 3 | Inmate Requests/Grievances and Complaints/Grievances Against Staff | 14.00.00 | 07/08/15 | 8 | All Pages |
| 4 | Inmate Worker Program (Sentenced and Volunteer) | 19.03.00 | 07/08/15 | 18 | All Pages |

Text that is in ***bold, italics*** indicates the changes and/or additions.

CHARLES L. HANK III, DEPUTY CHIEF
DETENTION SERVICES DIVISION

CLH:cc

**Claudia Clark**

| | |
|---|---|
| **From:** | DSD Policy and Procedures |
| **Sent:** | Wednesday, July 08, 2015 1:31 PM |
| **To:** | Cassandra Mack; Deborah Finn; Kathy Terry; Martina Geinzer; Toni Bolton; Stephanie Roose; 'asb@co.clark.nv.us'; 'TREID@LVPPA.com'; 'Melody.molinaro@naphcare.com'; 'Kendra.Ngadjou@naphcare.com'; 'Sharilyn.Ethridge@naphcare.com'; 'Juancho.trinidad@naphcare.com' |
| **Subject:** | AN-41-15 |
| **Attachments:** | AN-41-15 Revised SOPs.pdf |

Attached is AN-41-15

Please keep a hard copy of the current SOP(s) for your records/SOP book and discard any previous copies.

Please feel free to contact our office if you have any questions.

Thank you,

**Policy and Procedures Section**
LVMPD/Detention Services Division
702-671-1583
702-383-3164 Fax
DSDPolicyandProcedures@lvmpd.com

***LVMPD Security Notice***

*This e-mail is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited*



**Claudia Clark**

**From:** DSD Policy and Procedures
**Sent:** Wednesday, July 08, 2015 1:41 PM
**To:** DSD_EVERYONE
**Subject:** AN-41-15
**Attachments:** AN-41-15.pdf

*The attached AN-41-15 contains:*

**SOP 09.11.04** **HAND RESTRICTING TUBES**
*Annual Review:* Per Lt. Lepore, page 2, H, add additional location were tubes are kept.
*Approved by:* Capt. Baker, Lt. Lepore, Lt. Peralta, and Sgt. Gurule
*H:\DSD\StandardOperatingProcedures\SOP's\09.11.04.pdf*

**SOP 11.05.00** **FOOD SERVICES**
*Annual Review:* No Changes.
*Approved by:* Capt. Suey, Lt. Kelso, and CO Randall Brown, Kitchen Liaison
H:\DSD\StandardOperatingProcedures\SOP's\11.05.00.pdf

**SOP 14.00.00** **INMATE REQUESTS/GRIEVANCES AND COMPLAINTS/GRIEVANCES AGAINST STAFF**
*Annual Review:* Per Capt. Baker, page 2, B, add verbiage.
*Approved by:* Capt. Suey, Capt. Teel, Lt. Kelso, and Lt. Meyer
*H:\DSD\StandardOperatingProcedures\SOP's\14.00.00.pdf*

**SOP 19.03.00** **INMATE WORKER PROGRAM (SENTENCED AND VOLUNTEER)**
*Annual Review:* Per Sgt. Albright, page 7, E, change verbiage. Page 8, c, add 'sergeant or designee'; Per Sgt. Neville, page 4, III, change '260' to '350'. Page 8, c, add verbiage. Page 10-11, I, remove entire DSD Maintenance Workers section. Page 16, 3, add verbiage. Page 12, F, 2 and 3, change verbiage; Per Sgt. Weir, page 6-7, C and D, update referenced SOP and updated link. Page 7, F, 6, changed verbiage. Page 9, i, change verbiage. Page 11, J, 4, change verbiage. Correct grammar throughout.
*Approved by:* Capt. Baker, Lt. Flippo, Sgt. Albright, and Sgt. Neville.
*H:\DSD\StandardOperatingProcedures\SOP's\19.03.00.pdf*

44

**Las Vegas Metropolitan Police Department**
**Detention Services Division**
**Las Vegas, NV**

**SOP 18.01.00**
**Issue Date 10/11/84**
**Annual Review 07/01/17**
**Revision Date 07/29/16**

STANDARD OPERATING PROCEDURE

SUBJECT CLASSIFICATION

POLICY

A system of inmate classification shall be provided within the Clark County Detention Center (CCDC) and the CCDC/North Valley Complex to determine inmate custody level, housing assignment, participation in programs, and to ensure a safe and secure environment for inmates and staff. Classification and evaluation will be assessed without discrimination concerning race, color, creed, political opinion, handicap, or national origin. There will be no sex discrimination except that required by law regarding housing placement. This procedure is reviewed at least annually and updated as necessary.

REFERENCES

4th Edition ACA Standards for ALDF: 1A-05 2A-19, 2A-21, 2A-22, 2A-25, 2A-27, 2A-28, 2A-29, 2A-30, 2A-31, 2A-32, 2A-33, 2A-34, 2A-35, 2A-36, 2A-37, 2A-38, 2A-40, 2A-42, 2A-44, 2A-46, 2A-47, 2A-48, 2A-49, 7D-19, 7D-20, 7D-21

LVMPD Department Manual: 5/206.24 Informants and Associated Funds Management.

Nevada Revised Statute: 62B.330

"National Standards to Prevent, Detect, and Respond to Prison Rape," August 2012: 28 C.F.R. Part 115.15, 115.33. et. Seq.

OVERVIEW

This procedure prescribes guidelines and procedures for the classification of all inmates within the CCDC and NVC.

I. CLASSIFICATION OF INMATES

A. Classification Screens:

1. The classification officer assigned to booking will be responsible for filling out the Detention Services Division (DSD) Intake Classification Questionnaire.

   The inmates are to be asked all questions on the questionnaire to include history of sexual abuse and sexual assault. This will occur within 24 hours (not to exceed 72 hours).

2. The booking nurse and mental health staff will conduct screenings and will notify the classification officer located in booking if an inmate has a medical or mental health concern that affects classification.

B. Classification Codes: A system of classification codes will be established in the procedures for classification of inmates at the CCDC and NVC.


C. Completion of Classification ScreensClassification Officer located in Booking:

1. Will screen each inmate for prior charges and current charges. All homicide suspects will be interviewed by psych services during the booking process.

2. Screen past inmate history in computer

3. Classify inmate to an appropriate custody level in *ELITE*.

4. Enter all appropriate advisories in *ELITE* and ensure that the Inmate Locator Card is annotated if needed.

5. For inmates who warrant protective custody, administrative *housing, intensive protective custody, youthful offender protective custody, maximum custody*, or other special or immediate housing, determine appropriate housing, enter housing in computer, and have inmate moved. Write an *ELITE report* and enter any advisories into *ELITE*. Criteria for assigning appropriate housing and custody level:

   a. Age

   b. Sex (male or female)

   c. Nature of charge (felony or misdemeanor, violent or nonviolent)

   d. Court status:

      1) Pretrial or sentenced (Stateor County)

      2) En route *NDOC* (Nevada *Department of Corrections*)

      3) Parole violation

   e. Institutional behavior (past and present)

   f. Previous criminal history

   g. Previous victim of sexual assault, or previous perpetrator of sexual assault.

   h. Likelihood for victimization: Lesbian, Gay, Bisexual, Transgender, Intersex (LGBTI) and Gender Nonconforming inmates have particular vulnerabilities

   i. Medical/Mental condition (past and present)

   j. Disturbance group or security threat goup affiliation/association.

   k. Particular attention should be paid to any indication that inmate is presently suicidal or has a past history of suicide attempts or selfmutilation.

   l. Additional information may include stability in community (how long in city), education level, and substance abuse history.

D. *Field Interview Cards:*

1. *Any officer who suspects inmates of being gang members may, when they have time, complete Field Interview Cards (FI Cards). The officer must ensure the following information is noted on the FI card:*

    a. *Specific gang affiliation or association with a member*

    b. *How gang membership was determined (e.g. self-admitted, gang tattoos, jail interview)*

    c. *There must be three criteria used to consider an inmate a gang member as outlined in S.O.P. 18.01.01 section 1A through 1B.*

2. *FI cards are located in the Detention Gangs/Special Investigation Unit (DGSIU) and Classification Office.*

3. *Completed FI cards will be forwarded to DGSIU.*

4. *Photos may be attached if immediate attention is needed.*

E. Orientation:

All inmates housed at the CCDC will receive an initial orientation while housed on the booking floor. This orientation will provide information on facility rules, regulations, sexual assault/*misconduct* information and answer basic inmate questions. If an inmate cannot read, orientation materials are read to the inmate by a staff member, or are provided through the use of video. For inmates who do not speak English, interpretive services are provided. All inmates with disabilities (e.g., limited English proficient, deaf, visually impaired, limited reading skills, etc.) will have access to the inmate orientation process using appropriate accommodations. Reference SOP #16.03.00, "Telephones; Use by Inmates", SOP #16.03.01, "Telephone Use; Hearing Impaired Inmates" and SOP #16.03.02, "Language Line Services." Inmates verify, by signing the back of the inmate locator card, the receipt of their Inmate Orientation Information Sheet which gives information about the rules, disciplinary procedures, and sexual assault/*misconduct* information. The sheet informs the inmate that rules are posted in the housing units and Inmate Handbooks are available for checkout from the housing unit officer. The Inmate Orientation Information Sheet will be passed out to inmates by Post 18, as they are moved up to housing assignments.

F. Classification Committee:

1. Comprised of:

    a. Classification *Sergeant* – chairperson

    b. One member of the classification staff (alternating members)

    c. Staff psychologist (for input only)

2. The Classification Committee shall assign classification levels of special housing inmates.

G. Custody Levels:

1. Maximum:

a. Maximum control of the inmate is necessary for the safety and security of the facility. Criteria include but are not limited to:

1) Escape risk as revealed by documented, verifiable information

2) Disruptive behavior in this facility, or documented in other facilities

3) Mentally ill and whose behavior prohibits housing in the mental health unit

4) Under sentence of death, life sentence without possibility of parole, or when inmate is found guilty of murder, by jury, (when District Attorney is seeking the death penalty) before sentencing

5) Institutional behavior (past and present)

6) Own request - All requests referred to Classification Committee for review

7) Security threat group

b. Maximum and disciplinary inmates will be allowed access to programs and privileges based on their classification and in a manner that will not jeopardize the safety and security of the facility.

*2. Close Security:*

*a. Close Security custody is for those inmates who require close supervision but less restriction of movement than maximum inmates. Close Security custody inmates are allowed all privileges and access to programs depending upon their behavior and the threat posed to the safety and security of the institution. Criteria include but ae not limited to:*

*1) Criminal history demonstrates a propensity for violence but does not pose a threat to staff or inmates at this time*

*2) Inability to control behavior in a large group setting*

*3) Charged or sentenced for violent offense*

*4) Institutionalized behavior*

*5) Require room housing behind closed doors (under demonstrated sustained appropriate behavior may be allowed to participate in open dorm incentive module)*

3. Close:

   a. Close custody is for those inmates who require close supervision but less restriction of movement than ***close security*** inmates. Close custody inmates are allowed all privileges and access to programs depending upon their behavior and the threat posed to the safety and security of the institution. Criteria include but are not limited to:

      1) Criminal history demonstrates a propensity for violence but does not pose a threat to staff or inmates at this time

      2) ***Ability to adhere to the rules and demonstrate acceptable behavior in a large group setting***

      3) Charged or sentenced for violent offenses

      4) Institutionalized behavior

      5) ***May be housed in an open dorm setting***

4. Medium:

   a. Medium custody is for those inmates who require a lower level of supervision and less restrictive movement than close custody inmates. Medium custody inmates require little restriction from full participation in facility programs and activities based upon their needs and the needs of the institution. Criteria include but are not limited to:

      1) Criminal history and institutional behavior indicate that inmate is not likely to become involved in acts of violence or become disruptive.

      2) Ability to adhere to facility rules and regulations

      3) Ability to get along in a large groupliving situation

      4) Generally cooperative with staff

***H. Sentenced Inmate Workers***

1. Medium custody-Sentenced Inmates (Orange CCDC Uniform Shirt):

   a. Medium custody is assigned to those inmates who have been sentenced to serve county time and have been selected for a work program. Medium custody inmates are allowed full participation in facility programs based upon their program needs and the needs of the facility.

   b. Criteria for assigning medium custody level, in addition to sentence and work requirements include, but are not limited to:

      1) Mental and physical conditions do not preclude assignment to work. Handicapped inmates (wheelchair, crutches) will be assigned general duties that can be performed in a safe, satisfactory manner.

No inmate will be given authority or control over another inmate in work assignments or other situations.

2) Inmate has demonstrated willingness and ability to follow instructions.

3) Inmate is able to work with others.

4) Institutional behavior and attitude indicate the inmate will not be a disruptive influence in the work area.

c. If the inmate is removed from worker status, the orange CCDC uniform shirt will be confiscated and a blue uniform shirt will be issued.

2. Close-Sentenced Inmates (LimeGreen CCDC Uniform Shirt):

a. Close custody is for those inmates who have been sentenced to serve county time and have been selected for a work program. This will include all close custody male, female, and protective housing units. Close custody inmates are allowed full participation in facility programs based upon their program needs and the needs of the facility. Close custody inmates will only be delegated to work in their assigned housing units. These inmates will be issued lime green CCDC uniform shirts to designate their worker status.

b. Criteria for assigning a close custody level, in addition to sentence and work requirements include, but are not limited to:

1) Mental and physical conditions do not preclude assignment to work. Handicapped inmates (wheelchair, crutches) will be assigned general duties that can be performed in a safe, satisfactory manner. No inmate will be given authority or control over another inmate in work assignments or other situations

2) Inmate has demonstrated willingness and ability to follow instructions

3) Inmate is able to work with others

4) Institutional behavior and attitude indicate the inmate will not be a disruptive influence in the work area.

c. If the inmate is removed from worker status, the lime green CCDC uniform shirt will be confiscated and a blue uniform shirt will be issued.

3. Reclassification

Any change in the inmate's legal status, physical condition, mental condition, or status that may affect the classification and work assignment of the inmate, may necessitate a change in custody or housing. The classification officer and the supervisor will review and make the necessary changes.

For additional information concerning sentenced inmate workers, reference SOP #19.03.00, "Inmate Worker Program (Sentenced)."



I. Special Housing Status:

*1. This type of housing for inmates may override the classification level. Special status modules may have several types of classification. In addition to the custody level, consideration for the need of special housing will be as follows:*

a. Protective Custody.

1) The following are specific types of protective custody inmates. These inmates will be given the privileges of their assigned custody status. For example if the inmate is classified as maximum custody or close custody that inmate would receive the privileges assigned to that classification status.

a) Maximum Protective Custody – MAX PC. These are maximum custody inmates that have also been placed in protective custody status. These inmates can only be moved by classification.

b) Male Intensive Protective Custody – MIPC. These are male protective custody inmates. Classification may assign two intensive protective custody inmates to the same cell. That cell is to be exercised separately from other inmates.

c) Female Intensive Protective Custody – FIPC. These are female protective custody inmates. Classification may assign two intensive protective custody inmates to the same cell. That cell is to be exercised separately from other inmates.

d) Material witness

e) Informant

f) Charges of a nature likely to provoke hostilities by other inmates

g) Law enforcement officer or other occupations, to include all arrestees whose occupation involves the pursuit, capture and incarceration of criminal offenders. This will be checked on a case by case basis, and reviewed by the chain of command.

h) ***Lesbian, gay***, bisexual, ***transgender***, intersex (LGBTI), and gender nonconforming inmates who exhibit aggressive tendencies or request PC status due to an *in*ability to adapt to general population housing due to sexual preference. In deciding whether to assign a transgender or intersex inmate to a housing location for male or female inmates, and in making other housing and program assignments, Classification may not assign the inmate to a housing location based on genitala alone.

51

Classification must consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

i) Gang affiliation, if of a nature likely to provoke hostilities by other inmates.

j) Medical/*Detox*

k) Mental Health

l) ***Medical*** Isolation

m) Disciplinary.

n) Administrative ***Housing***

o) Special Investigation Reviews (Reference SOP 18.01.01, "DSD Gangs/Special Investigations Unit")

Inmates placed on Special Investigation Review will be housed in the appropriate ***administrative*** housing unit pending Special Investigation Review. Inmates with Special Investigation Reviews will be given the privileges of their assigned custody status. Special Investigation Review may be placed on inmates by any classification officer or gangs/special investigations officer.

p) Sexual predators

J. ***Youthful Offender.***

1. NRS 62B.330 sets forth the acts which will result in a person under the age of 18 being excluded from the jurisdiction of the Juvenile Court. Only ***youthful offenders*** fulfilling the proper state requirements are accepted into custody.

2. Custody and Housing for ***Youthful Offenders*** under 18 years of age:

   a. Upon initial entry into the CCDC, all inmates 17 years old or younger, who have been certified as adults, will be booked, screened, and processed.

   b. Mental health and medical will evaluate all ***youthful offenders*** and give any recommendations on their housing to the classification officer.

   c. Classification officer located in booking, will interview the ***youthful offender*** to determine housing, custody status, and classification.

3. Criteria for classification of ***youthful offenders.***

   a. ***Youthful offenders*** should be reviewed for criminal history and current charges.

b. ***Youthful offenders*** will be interviewed by classification officers who will assess their classification level based on their age, size, and maturity level.

c. ***Youthful offenders*** will be interviewed and evaluated by mental health staff.

4. The classification officer will arrange for relocation to the ***Youthful Offender*** Unit. Information gathered by the officer will be enteredn ***ELITE***.

5. If a classification officer is unavailable, upon completion of the booking process, male inmates will be housed in the ***Youthful Offender*** Unit, use Classification Code JCS (Juvi Male Requiring Special Consideration). Female inmates will be housed in the Administrative Unit, use Classification Code FJS (Juvi Female Requiring Special Housing). Any housing assignment in this area will be written on an ***ELITE report*** and forwarded to the Classification and Mental Health Sections. Upon receiving the report, classification staff will schedule each inmate for a Classification Committee interview. Information obtained during the interview will be entered on an ***ELITE report*** at this time. These inmates will be classified and housed as follows:

a. No ***youthful offender*** will be placed in a housing unit in which he or she will have sight, sound, or physical contact with any adult inmate through the use of a shared day room or other common space, shower area or sleeping quarters, unless for the safety and security of the inmate or the facility. The inmate will be classified and housed in the ***Youthful Offender*** Unit unless a court orders otherwise.

b. Officers assigned to the ***Youthful Offender*** Unit will contact classification and/or mental health if the ***youthful offender*** is not adjusting. Should it appear that the inmate would not benefit from programs offered in the ***Youthful Offender*** Unit and needs to be separated; the inmate will remain in the ***Youthful Offender*** Unit using Classification Code JSP (Juvi Male Requiring Special Consideration). If the inmate continues to show negative behavior and needs to be separated, the inmate may be housed in an administrative ***housing*** unit, ***after approval is received from the Classification Sergeant.*** Use Classification Code JSP (Juvi Male Requiring Special Consideration), pending a Classification Review

c. Special care will be taken when evaluating inmates fifteen (15) years and younger for appropriate housing.

d. These inmates will be afforded all of the privileges allowed to non-disciplinary inmates housed in these units.

e. Each inmate housed in this category will be reviewed by classification staff every seven days to evaluate their status. Mental health staff will also evaluate inmate and continue with follow up visits as deemed necessary by the chief psychiatrist.

f. ***Youthful offenders*** classified as disciplinary status will remain in the ***Youthful Offender*** Unit, when appropriate. They will be exercised separately or with similar ***youthful offenders***, with the same privileges and restrictions as other disciplinary inmates.

    g. Maximum custody status in disciplinary housing unit, exercised separately or with similar *youthful offenders* with the same privileges and restrictions as other maximum custody inmates.

II. REPORTING RESPONSIBILITIES

A. Officer:

1. Classification shall be notified, and an ***ELITE*** report shall be used to note the following conditions:

a. Illness and injury.

b. Mental state.

c. Aggressive behavior (excluding facility rule violations)

d. Intoxication level (excluding facility rule violations)

e. Necessity to *reclassify to* special housing (excluding facility rule violations).

f. Death row inmates.

g. Inmates sentenced to death, life sentence without possibility of parole, or when inmate is found guilty of murder, by jury, (when District Attorney is seeking the death penalty) before sentencing, reference SOP #08.08.00, "Suicide Risks."

h. Inmate request for protective custody because of harges.

i. DNHW-Do Not House With Advisories:

1) Notate in report name of officer in classification that was notified with the information.

2) A Special Investigation Inmate Contact Report shall be used to document use of inmate as a "source of information" if confidentiality is of concern. Contact the DSD Gangs/Special Investigations Unit (DGSIU) sergeant for direction on how to handle report. See Section VI below.

3) An ***ELITE*** Violation Report shall be used to document any informal rule violations (level 1 rule violations) - any behavior that constitutes a level 1 rule violation where the officer takes disciplinary action of any kind.

4) An ***ELITE*** Conduct Adjustment Report (CAR) shall be used to document any formal rule violations (level 2 or 3 rule violations).

5) Reports shall be routed to the Classification Section and when applicable to the DGSIU.

III. AUTHORITY FOR MOVES INTO AND FROM THE MENTAL HEALTH HOUSING UNIT

A. The mental health housing unit is used as a housing unit under the direction of mental health staff.

B. The criteria for an inmate to be housed in the mental health housing unit are under the guidance of the mental health staff, with concurrence from classification staff. Mental health staff have specialized knowledge to make the decisions on inmates housed in the unit.

C. Charges are supposed to be considered before inmates are moved into the mental health housing unit. However, if any staff member feels there are inmates in this unit whose charges should preclude them from being there, then mental health staff and/or classification should be contacted to verify if the housing in question is appropriate.

IV. AUTHORITY AND RESPONSIBILITY FOR MOVES FROM THE ***RESTRICTIVE*** HOUSING UNIT

A. The ***restrictive*** housing unit has multiple classifications of inmates at all times.

B. When the psychiatrist evaluates the inmates in the ***restrictive*** housing unit, he/she will flag the inmates who are approved to be moved out of the unit based on mental health issues

C. Medical will flag inmates to be moved to rooms/***bunks*** in the medical housing unit or other appropriate housing.

D. Inmates ***requiring mental health housing will be*** flagged by the psychiatrist ***and*** be moved to the ***appropriate*** mental health housing unit.

E. Classification will be responsible for verifying available rooms and moving inmates.

F. If there are no rooms available in the units designated, then the psychiatrist will flag who can be moved to those units when room becomes available. The list of inmates who can be moved will be provided to classification for room assignments.

G. If booking needs a room in the ***restrictive*** housing unit the shift lieutenant has the authority to move inmates that are flagged as necessary.

H. If the shift lieutenant makes a move, classification and the mental health nurse in booking must be consulted to make sure there are no unknown factors to consider for security reasons.

I. If no one currently housed in the ***restrictive*** housing unit is flagged for possible movement and booking needs a room, then the shift leutenant can still move inmates.

J. Special Investigation Reviews can be moved to the appropriate ***administrative*** housing unit, housed alone. Any other move of Special Investigation Reviews must be approved by the DGSIU sergeant or officers.

K. ***Inmates moved to temporary housing for a suicide watch will adhere to SOP 08.08.00 Suicide Risks.***

1. There will be no moves of ***acutely suicidal*** watches from the ***restrictive*** housing unit without the psychiatrist's consent, unless there is an extreme need for room in the unit.

55



2. If an *acutely suicidal* watch *inmate* is moved out of the *restrictive* housing unit then there will be two officers assigned in the housing unit where the inmate was moved.

3. In an emergency, the inmate could also be moved to the North Tower mental health housing units, but the inmate would be placed on a psych review and housed a lone until the psychiatrist can evaluate.

4. If any moves of this type are made, the names of the classification officer and the booking mental health nurse will be put in the incident report. The mental health nurse will notify the psychiatrist for further evaluation

   a. ***405Z Clearance & Awareness Sheet:***

      1) ***When an inmate is cleared from suicide watch in Restrictive Housing or other designated suicide watch housing areas, the mental health staff will complete the 405Z Clearance & Awareness Sheet.***

      2) ***The responsible floor sergeant will contact the classification sergeant to ensure the inmate is being cleared to the appropriate housing. The final decision will be based on the information provided by the mental health provider combined with the known institutional behavior of the inmate.***

      3) ***Once completed, this informational sheet will be affixed to the back of the Inmate Locator Card for the duration of the inmate's lodging at CCDC/NVC. The purpose is to provide awareness for both commissioned and civilian staff in regards to an inmate's most recent suicidal behavior.***

      4) ***In the event an inmate is placed back on suicide watch, the previous 405Z Clearance & Awareness Sheet will be discarded and a new sheet will be completed once the inmate is cleared by the mental health staff. This informational sheet will be affixed to the back of the Inmate Locator Card.***

      5) ***The housing unit officer receiving an inmate with the 405Z Clearance & Awareness Sheet shall incorporate this information into their briefing with relieving officers.***

## V. CLASSIFICATION MOVES FOR HOUSING UNITS/WHEN APPLICABLE

### A. Classification

1. The Classification Section's sergeant runs a daily count, at the beginning of each shift, to check for vacancies.

2. If the count is close to, or over the facility's rated bed capacity, the Classification Section's sergeant or designee willnotify the classification lieutenant.

3. If there is a need to house inmates in booking longer than 24 hours, the Captain of the Central Booking Bureau (CBB) will be notified by the classification lieutenant or designee.

4. The booking lieutenant or designee will notify their bureau commander.

5. The bureau commanders will give a course of action:

   Fill as many beds at the North Valley Complex (NVC) as allowed.

B. Inmate Moves

1. Classification Officer

   a. Identify special and disciplinary inmates to be moved.

   b. Notify housing unit officer of inmates to be moved to disciplinary and special housing, and out of the same.

   c. Identify all empty beds within the facility.

   d. Assign designated inmates to empty bed in appropriately classified housing unit.

   e. As inmates are moved, the housing unit officer will update ***ELITE*** per procedure.

2. Post 18A or 18B will re-house inmates from booking to intake housing unit as identified by classification officer.

   a. The classification officer will identify all empty bunks and give the list to the Post 18A/18B officer.

   b. The Post 18A/18B officer will pull a seniority list from Reports ***ELITE*** External as needed. Classification, in conjunction with Post 18 and the booking sergeant, if necessary, will evaluate the needs of the booking floor at this time. Inmates that have been here for a <u>minimum</u> of 18 hours or more only will be eligible for movement. Any inmates 24 hours or over will move first. If special conditions arise that requires inmates to be moved outside of this time frame, the classification officer will get approval for the move from the booking sergeant. In circumstances when housing is available, inmates that have not reached the minimum 18 hours may be assigned to the available bunks without the booking sergeant's approval.

   c. Post 18A/18B will assign designated inmates to empty bunks ***using the Reserve Beds function in ELITE for*** unit housing.



SOP 18.01.00 – Page 14

Medical/Mental Health Assessment
Inmate Booked into CCDC
Screened by Pre-Trial
Classified by Classification
Placed in Appropriate Housing Cells
Moved to Appropriate Housing Unit or Cots
Refer to Housing Classification Chart on the DSD Intranet
Not Guilty
Moved to Appropriate Housing Unit
If Removed Can Reapply After 90 Days

LVMPD 000490

58

VI. CLASSIFICATION REVIEWS

A. Staff Requests

1. Classification Review (or Class Review) is a pocess by which the officers observe some type of behavior that does not fit within the norm. The officer will contact a classification officer for possible re-assessment

2. The Class Review process is not a disciplinary process, nor should it be used as a substitute. This is a procedure for classification to review formal feedback on inmates who need to be reclassified.

3. When a field services officer/field services supervisor has notified classification of an inmate who is: Sentenced to death, given a life sentence without possibility of parole, or when the inmate is found guilty of murder, by jury, (when District Attorney is seeking the death penalty) before sentencing. Reference SOP #09.18.00, "Field Services; Related Duties."

When the classification officer is notified by the Field Services Section (FSS) of any of the above sentences/verdicts, the classification officer will notify psych services to ensure psychological evaluation is conducted before re-housing in maximum custody unit.

B. Periodic Classification Re-assessment

1. After initial assignment of custody levels and special housing, Classification Section is responsible for periodic re-assessment of same as outlined in the following schedules:

| CUSTODY LEVEL | RE-ASSESSMENT SCHEDULE |
|---|---|
| Maximum | Every seven days for the first two months and every 30 days or as needed thereafter |
| ***Close Security*** | ***As needed*** |
| Close | As needed |
| Medium | As needed |
| **SPECIAL HOUSING STATUS** | **RE-ASSESSMENT SCHEDULE** |
| Protective Custody | Every seven days for the first two months and every 30 days or as needed thereafter |
| Medical/***Detox*** | Daily |
| ***Mental Health*** | Daily |
| ***Restrictive*** | Daily |
| Disciplinary | Daily |
| ***Youthful Offender*** | ***Every seven days*** |
| Administrative | Will be reviewed within 72 hours. See Section VI |
| Special Investigation Reviews | Every seven days for the first two months and every 30 days or as needed thereafter |

59

C. The Classification Section is responsible for reviewing and bringing to the attention of the classification sergeant, on a daily basis, any new information relevant to the classification process from sources such as the following.

1. Violation reports
2. Disciplinary actions
3. *Psych Behavior/Psych Review reports*
4. Staff input
5. Daily newspaper or news reported by other forms of media (TV, radio, etc.).

D. Classification Committee Review

1. Each morning a classification officer will pull the reclassification reports for assessment.
2. The classification officer will:
   a. Identify inmates in booking who have not been classified within 24 hours.
   b. Review each inmate and pull all pertinent information. The officer will then go over the facts and make a determination.
   c. Give package to Classification Committee to review within 24 hours for all class review, protective custody, and maximum inmates including, but not limited to:
      1) Classification screen
      2) Medical and mental health information
      3) Criminal history
      4) Institutional behavior (past if applicable)
   d. When reviewing past institutional behavior, it might be necessary to contact previous jails or prisons for any information. When reviewing inmate history, pay attention to past incarcerations. If an inmate has a history of prison incarceration in another state, or there is reason to believe he has been previously incarcerated (self-reports, tattoos, etc.), check NCIC and Triple I.
   e. When field services officer has notified classification of an inmate who is: Sentenced to death, given life sentence without possibility of parole, or when inmate is found guilty of murder, by jury, (when District Attorney is seeking the death penalty) before sentencing. Reference SOP #09.18.00, "Field Services; Related Duties."

60

E. ***MAX Housing*** Committee (for MAX custody inmates only)

1. Consists of the Classification Section's sergeants and disciplinary officers, the DGSIU sergeant, and the STB administrative lieutenant or designee. The committee will meet weekly to determine the status of inmates who have met the prerequisites to be removed from MAX custody.

2. After reviewing all pertinent information, the ***MAX Housing*** Committee will:

   a. Continue the inmate's present custody level
      OR
   b. Assign a lower custody level

3. Review of commissary allowance for MAX custody inmates:

   a. MAX Intel, MAX PC, MAX sanctions (life sentences on orders to produce), and MAX Psych: ***$20.00*** General Commissary Form.

   b. Any MAX inmate who has been adjudicated guilty by the Conduct Adjustment Board (CAB) for a level 2 or 3 violation, or any inmate re-classified to MAX custody as a result of a CAB/Classification Committee will be limited to ordering commissary from the short form for a minimum of 60 days.

   c. Inmates returning to MAX Intel, MAX PC, MAX sanctions (life sentences on orders to produce), and MAX Psych from disciplinary status will not be allowed to order from the commissary long form until they have gone 60 days without a level 2 or 3 violation.

   d. The Classification Committee will evaluate each MAX inmate's status during their re-assessment period. The classification officer will identify and place a "Canteen Alert" on the Offender Alerts file in ***ELITE*** limiting the inmate to a Commissary Short Form.

VII. <u>ADMINISTRATIVE ***HOUSING***</u>

A. Bureau Lieutenant:

The bureau lieutenant and above, or the Classification Committee, may place an inmate in administrative ***housing*** on a review status, if there is reasonable cause to believe that the inmate is an escape risk or a threat to life, property, self, staff, other inmates, or to the security and the orderly operation of the facility. This is not a disciplinary measure. Inmate(s) placed in this classification will retain the same privileges as inmates in the general population. The only exception is the bodily movement restrictions necessitated by the nature of their custody confinement.

B. Custody Status:

1. The Classification Committee will review the custody level and special housing, according to re-assessment schedules and make necessary housing changes. (Reference attached <u>Classification Committee Review Form</u>)





2. Decisions:

   The decisions outlined will be reviewed within 72 hours. Housing an inmate in ***administrative housing*** without an assigned custody status, in excess of 72 hours, must be approved by the Captain, Staff ***Administration*** Operations Bureau (SAOB).

C. Maximum:

1. All ***maximum custody*** inmates assigned to an administrative housing unit will be classified as ***MAX***.

2. The Classification Committee will conduct periodic classification reassessment of inmates assigned to administrative ***housing***, as stated in section VI. B.1., of this policy.

3. After 60 days, the Classification Committee will review the inmate's institutional and behavioral history.

   a. If the inmate has not received any disciplinary in the past 60 days his/her classification may be changed to ***close security*** status.

   b. ***If approved, the inmate must be housed with another inmate for the first 30 days.***

4. If a maximum status inmate receives a CAR and is found guilty by the CAB, the Classification Committee will review the inmate's custody level.

5. An inmate placed on an Intel Hold that has been cleared for general population, after review by the DGSIU supervisor, will not be required to complete the down-class process prior to being rehoused to general population.

VIII. INMATE APPEAL OF CUSTODY LEVEL

A. Notification:

1. Inmate will be notified verbally of custody status if other than ***general population*** upon initial assignment.

2. Inmate will be notified whenever custody level is changed during the Classification Review Committee.

B. Appeals Process:

1. An inmate may contest his/her assigned custody level at any time by submitting an appeal as follows:

   a. First Level of Appeal:

      1) Classification Committee is the first level of appeal. The inmate may submit an inmate request/grievance form to that group explaining why he/she believes his/her assigned custody level is inappropriate.

       2) Classification Committee will review all pertinent data and, within five working days from receipt of appeal, provide the inmate with a written decision either upholding or denying same.

3) The inmate may proceed to the second level of appeal, if not satisfied with the decision of the Classification Committee.

b. Second Level of Appeal:

1) The Captain, SAOB, is the second level of appeal. The inmate may submit an inmate request/grievance form to the captain explaining why he believes his assigned custody level is inappropriate.

2) Appeal must be submitted within five working days after receipt of Classification Committee decision.

3) The Captain, SAOB, will process the appeal and within five working days after receipt, provide the inmate with a written decision upholding or denying same.

4) The inmate may proceed to the third and final level of appeal if not satisfied with the decision of the Captain, SAOB.

c. Third and Final Level of Appeal:

1) The Deputy Chief, DSD is the third and final source of appeal. The inmate may submit an Inmate Request/Grievance Form to the Deputy Chief, DSD, explaining why he believes his/her assigned custody level is inappropriate.

2) Appeal must be submitted within five working days after receipt of decision of the Captain, SAOB.

3) The Deputy Chief, DSD will process the appeal within five working days after receipt and provide the inmate with a written decision upholding or denying same.

4) The decision of the Deputy Chief, DSD is final and binding.

IX. CLASSIFICATION – CONFIDENTIAL REPORT FOR INMATES TRAVELING TO *NDOC*

A. This report contains information pertaining to classification and housing of an inmate. Medical, suicidal tendencies, and housing as a result of displayed psychological impairment.

B. DSD Records Bureau delivers groups of reports for inmates leaving CCDC for *NDOC*.

C. Prior to the date Records Bureau needs the reports returned, classification staff will complete the report/check list.

D. The staff person completing the report needs to query the computer.

E. Disciplinary behavior can be found in all of the programs in #C above.

1. All factors on the sheet need to be checked "yes" or "no."

2. Any conduct ***adjustment*** reports in ***ELITE*** should be opened and read (on page three, for each violation) to confirm the Board's findings are guilty before noting it on the report.

3. Rule violations upheld with a finding of guilty should be noted, especially any involving violence, threats to staff or other or escape potential.

4. Informal reports, e.g., ***ELITE*** information, or violation reports should be reviewed to check for relevant information. Not all relevant, disciplinary information results in a CAR.

5. All fighting, assaulting, and battery violations should be followed by the first and last name of the other participant or victim and his/her ID number (e.g., "DNHW..." or other advisory).

F. Suicidal information, including stays in 2C for a suicide watch must be noted.

1. If the computer reflects time spent in 2C, determine if the inmate was there for suicide watch; check the computer movement entry and any ***ELITE reports*** for information.

2. If the reason for a stay in 2C cannot be determined, note the 2C housing anyway and put "report unavailable." The suicide question should be answered "Unknown" if this information is not available.

G. List any and all enemies, determined either from the result of a CAR, ***ELITE*** information, or violation reports, or advisory for "DNHW." Include the enemies' full names and ID#s if possible. These can be listed under "additional comments."

H. Put the inmate's race, sex, and age in the upper right hand corner. The officer should legibly sign and date the report when completed.

I. If the inmate has been to ***NDOC*** prior to the current report, there may be a copy of the previous ***NDOC*** report in the computer. If so, note on the current report "***NDOC*** month/year."Only information generated since that report needs to be included on the current report.

X. <u>NOTIFICATION FOR USE OF AN INMATE AS A "SOURCE OF INFORMATION" WITHIN CCDC AND NVC</u>

A. In this SOP, the term "source of information" refers to an inmate within CCDC/NVC who provides information of value to law enforcement or information of allegations of misconduct (inmate or staff).

B. Often times, information that inmates provide to staff is important to the satisfactory completion of an investigation. Within the CCDC and NVC, the use of an inmate as a "source of information" does not mean that the inmate is established as an informant. For information concerning informants refer to LVMPD Department Manual 5/206.24.



C. In order to avoid abuse and minimize adverse impact to inmates and staff, a staff member who, through the normal course of his/her activities, obtains information of value to law enforcement or allegations of misconduct will notify DGSIU (verbally and in writing) and his/her immediate supervisor.

Staff members are not to establish personal relationships with an inmate; this can compromise objectivity and is not in the best interest of the department. Contact will be of a strictly professional nature.

D. The following procedures will be followed before and during the use of an inmate as a "source of information:"

1. The inmate will not be interviewed without a same gender staff member present. The staff member will make a record of the incident – see attached Special Investigations Inmate Contact Report.

2. The DGSIU supervisor will advise the staff member that their report has been recorded and will be acted upon.

3. The DGSIU supervisor will give the staff member direction on how to further handle the situation.

Note: This section is specific to how the facility handles an inmate as a "source of information." This section does not remove or replace any requirement or abilities for staff to communicate and make decisions in the operation of their area of responsibility.

*RICHARD SUEY*, DEPUTY CHIEF
DETENTION SERVICES DIVISION

*RS:tn*

Attachment: <u>Classification Codes</u>
<u>Classification Committee Review</u>
<u>Special Investigations Inmate Contact Report</u>

65

CLASSIFICATION CODES

| CODE | DESCRIPTION |
|---|---|
| CAM | CAPTAIN AUTHORIZED MOVE ONLY |
| CHD | CLASS HOLD, DO NOT MOVE UNTIL APPROVED BY CLASS |
| FCS | FEMALE CLOSE ***SECURITY*** CUSTODY INMATE |
| FJS | JUVI FEMALE REQUIRING SPECIAL HOUSING |
| FJX | JUVI FEMALE MAXIMUM CUSTODY |
| FMX | FEMALE MAXIMUM CUSTODY INMATE |
| FNT | FEMALE ***CLOSE CUSTODY INMATE*** |
| FPC | FEMALE PROTECTIVE CUSTODY INMATE |
| FPS | FEMALE PSYCH HOUSING |
| FSN | FEMALE SENTENCED WORKER |
| FSO | FEMALE SENTENCED WORKER, ***OUTSIDE CLEARED*** |
| FST | ***FEMALE*** MEDIUM ***CUSTODY INMATE*** |
| FVW | FEMALE MEDIUM VOLUNTEER WORKER |
| FXPC | FEMALE MAXIMUM/PROTECTIVE CUSTODY INMATE |
| JCS | JUVI MALE CLOSE QUALIFIED, GEN POP |
| JSP | JUVI MALE REQUIRING SPECIAL CONSIDERATION |
| MCS | MALE CLOSE ***SECURITY*** CUSTODY INMATE |
| MJX | JUVI MALE MAXIMUM CUSTODY |
| MMX | MALE MAXIMUM CUSTODY INMATE |
| MNT | MALE ***CLOSE CUSTODY INMATE*** |
| MPC | MALE PROTECTIVE CUSTODY INMATE |
| MPS | MALE PSYCH HOUSING |
| MS2 | MALE LEVEL 2 CLEARED WORKER |
| MSN | MALE SENTENCED WORKER |
| MSO | MALE SENTENCED WORKER, OUTSIDE CLEARED |
| MST | ***MALE*** MEDIUM ***CUSTODY INMATE*** |
| MVW | MALE MEDIUM VOLUNTEER WORKER |
| MXPC | MALE MAXIMUM/PROTECTIVE CUSTODY INMATE |
| MIPC | MALE INTENSIVE PROTECTIVE CUSTODY INMATE |
| FIPC | FEMALE INTENSIVE PROTECTIVE CUSTODY INMATE |



CLARK COUNTY DETENTION CENTER

CLASSIFICATION COMMITTEE REVIEW

HOUSING:_________ DATE:____________________

NAME:__________________________________ ID#:____________________

Your custody status in this institution was reviewed by the Classification Committee and, based on the criteria listed below; your custody status is as follows:

| CUSTODY LEVEL | STATUS/HOUSING | |
|---|---|---|
| ____ MAXIMUM | ____ INTAKE | ____ RESTRICTIVE-ADMIN. |
| ____CLOSE ***SECURITY*** | ____ PROTECTIVE CUSTODY | ____ RESTRICTIVE-***MENTAL HEALTH*** |
| ____***CLOSE*** | ____ SENTENCED WORKER | ____ ***MEDICAL ISOLATION*** |
| ____***MEDIUM*** | ____ GENERAL HOUSING | ____ MEDI***CAL*** |
| | ____ DISCIPLINARY | ____ ***MENTAL HEALTH*** |
| | ____ ADMIN.***HOUSING*** | ____SPECIAL INVESTIGATION EVAL. |

REASON

| | | |
|---|---|---|
| ____ ESCAPE POTENTIAL | ____ 16 YRS. & OVER ***YOUTHFUL OFFENDER*** | ____ DEATH ROW INMATE |
| ____ GANG AFFILIATION | ____ 16 YRS. & UNDER ***YOUTHFUL OFFENDER*** | ____HIGH PROFILE CASE |
| ____ NATURE OF CHARGES | ____ VICTIM OF IN-CUSTODY CRIME | ____INMATE REQUEST |
| ____ THREAT TO SECURITY | ____ INSTITUTIONAL BEHAVIOR | |
| ____ PER MEDICAL/***MENTAL HEALTH*** | | |
| ____ LAW ENFORCEMENT REQUEST | | |

COMMENTS:

If you wish to appeal this decision, you havefive days in which to submit a written appeal to the Classification Committee on an Inmate Request Form (Kite).

______________________________ ____________________

Classification Committee Member Date:

White – Classification Yellow - Inmate's Copy



LAS VEGAS METROPOLITAN POLICE DEPARTMENT

## SPECIAL INVESTIGATIONS
## INMATE CONTACT REPORT

---

DATE: ____________________

INMATE CONTACTED: ______________________________ LVMPD ID#: __________

START TIME: ____________

END TIME: ____________

REASON FOR CONTACT: ______________________________________________

CONTACTED BY: ___________________________________________________

RECORDED: ______________________________________________________

DETAILS: ________________________________________________________

_______________________________________________________________

_______________________________________________________________

_______________________________________________________________

_______________________________________________________________

_______________________________________________________________

_______________________________________________________________

# CLARK COUNTY DETENTION CENTER

# INMATE HANDBOOK

**Las Vegas Metropolitan Police Department**
**Detention Services Division**
**Policy and Procedures**

**Revised: May 2014**

2

LVMPD 000533

70